**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| The Altman Group, Inc., | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-2193 (SLS) |
| Federal Crop Insurance Corporation, et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**PRODUCERS AGRICULTURE INSURANCE COMPANY'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 8

BACKGROUND ................................................................................................................... 9

PROCEDURAL HISTORY.................................................................................................. 11

ARGUMENT........................................................................................................................ 11

    I.        Plaintiff Cannot Establish that ProAg is Subject to the Personal Jurisdiction of This Court ........................................................................................................................12

    II.       Venue is Improper for All of Plaintiff's Claims.......................................................14

    III.      The Claims Specifically Against FCIC Should Be Dismissed As to ProAg for Failure to State a Claim, Pursuant to Rule 12(b)(6) ................................................16

        A.       Claims Against FCIC Fail to State a Claim that FCIC Failed in its Duty to Ensure that ProAg was Compliant with the FCIA............................................... 18

        B.       The FCIA Does Not Create a Private  Right of Action for Agents Against AIPs................................................................................................ 20

    IV.      The Court Lacks Subject Matter Jurisdiction as to All Contractual Claims..........21

    V.       The Court Should Exercise its Discretion to Dismiss  the Matter as an Improper Use of Declaratory Judgment................................................................................23

    VI.      In the Alternative, the Court Should Compel Arbitration  Based on the Claims Against ProAg and Stay Proceedings .................................................................27

CONCLUSION..................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Am. Ins. Co. v. Fed. Crop Ins. Corp.*,
209 F. Supp. 3d 343 (D.D.C. 2016), aff'd, 732 F. App'x 5 (D.C. Cir. 2018) .........................19

*Alexander v. Sandoval*,
532 U.S. 275 (2001).................................................................................................................18

*Am. Farm Bureau v. U.S. EPA*,
121 F. Supp. 2d 84 (D.D.C. 2000) ...........................................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................17

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*,
793 F. Supp. 2d 124 (D.D.C. 2011) ....................................................................................21, 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).................................................................................................................14

*C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*,
310 F.3d 197 (D.C. Cir. 2002)..................................................................................................22

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*,
993 F.3d 880 (D.C. Cir. 2021)..................................................................................................24

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 .............................................................................................................................28

*Cort v. Ash*,
422 U.S. 66 (1975)...................................................................................................................18

*Crane v. N.Y. Zoological Soc'y*,
894 F.2d 454 (D.C. Cir. 1990)..................................................................................................12

*Dougherty v. McKee*,
No. 16-5052, 2017 WL 2332591 (D.C. Cir. Feb. 2, 2017)........................................................17

*Dougherty v. United States*,
156 F. Supp. 3d 222 (D.D.C. 2016) ..........................................................................................17

*Empire Healthchoice Assur., Inc. v. McVeigh*,
　547 U.S. 677 (2006)...................................................................................................22

*Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*,
　355 A.2d 808 (D.C. 1976) ...........................................................................................12

*Est. of Abtan v. Blackwater Lodge & Training Ctr.*,
　611 F. Supp. 2d 1 (D.D.C. 2009) ................................................................................16

*FiberLight, LLC v. Nat'l R.R. Passenger Corp.*,
　81 F. Supp. 3d 93 (D.D.C. 2015) ................................................................................24

*Gibson v. Liberty Mut. Grp., Inc.*,
　778 F. Supp. 2d 75 (D.D.C. 2011) ..............................................................................25

*Gilmer v. Interstate/Johnson Lane Corp.*,
　500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)................................................27

*Glenn v. Thomas Fortune Fay*,
　222 F. Supp. 3d 31 (D.D.C. 2016) ..............................................................................24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　564 U.S. 915 (2011)...............................................................................................12, 13

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
　545 U.S. 308 (2005)....................................................................................................22

*Gunn v. Minton*,
　568 U.S. 251 (2013)....................................................................................................22

*Heckler v. Chaney*,
　470 U.S. 821 (1985)....................................................................................................24

*Herbert v. Sebelius*,
　925 F. Supp. 2d 13 (D.D.C. 2013) ..............................................................................15

*Hill v. Wackenhut Servs. Int'l*,
　865 F. Supp. 2d 84 (D.D.C. 2012) ..............................................................................27

*International Shoe Co. v. Washington*,
　326 U.S. 310 (1945)....................................................................................................13

*Jones Bros. Bakery v. United States*,
　411 F.2d 1282 (Ct. Cl. 1969) .....................................................................................26

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*,
　786 F. Supp. 2d 240 (D.D.C. 2011) .......................................................................13, 14

4

*Lozano v. Civiletti*,
　89 F.R.D. 475 (D.D.C. 1980) ............................................................................................. 15

*McManus v. District of Columbia*,
　530 F. Supp. 2d 46 (D.D.C. 2007) ...................................................................................... 21

*Moore v. Motz*,
　437 F. Supp. 2d 88 (D.D.C. 2006) ...................................................................................... 12

*Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*,
　460 U.S. 1 (1983) ................................................................................................................ 27

*Organic Consumers Ass'n v. R.C. Bigelow, Inc.*,
　314 F. Supp. 3d 344 (D.D.C. 2018) .................................................................................... 22

*President v. Vance*,
　627 F.2d 353 (D.C. Cir. 1980) ........................................................................................... 24

*Savage v. Bioport, Inc.*,
　460 F. Supp. 2d 55 (D.C. Cir. 2006) .................................................................................. 13

*Shearson/American Express Inc. v. McMahon*,
　482 U.S. 220 (1987) ............................................................................................................ 28

*Speelman v. United States*,
　461 F. Supp. 2d 71 (D.D.C. 2006) ...................................................................................... 21

*Texas Neighborhood Servs. v. United States Dep't of Health & Hum.*,
　875 F.3d 1 (D.C. Cir. 2017) ................................................................................................ 26

*United Therapeutics Corp. v. Vanderbilt Univ.*,
　278 F. Supp. 3d 407 (D.D.C. 2017) ............................................................................. 12, 14

*Westinghouse Elec. Co. LLC v. Korea Elec. Power Corp.*,
　694 F. Supp. 3d 48 (D.D.C. 2023) ...................................................................................... 18

*Wilton v. Seven Falls*,
　515 U.S. 277 (1995) ............................................................................................................ 24

**Rules and Statutes**

7 C.F.R. § 400.169 .................................................................................................................... 19

7 C.F.R. § 457.8(b) ................................................................................................................... 11

7 U.S.C. §§ 1501–1524 ............................................................................................................... 9

7 U.S.C. § 1506(d) ................................................................................................... 15, 16, 21, 22

7 U.S.C. § 1507(c)(2)..................................................................................................10

7 U.S.C. § 1507(c)(3)..................................................................................................10

7 U.S.C. § 1508(b)(7) ..................................................................................................11

7 U.S.C. § 1508(c)(9)..................................................................................................11

7 U.S.C. § 1508(k) ......................................................................................................10

7 U.S.C. § 1515.....................................................................................................10, 19

9 U.S.C. § 2..................................................................................................................27

9 U.S.C. § 3......................................................................................................9, 27, 28

9 U.S.C. § 4......................................................................................................9, 27, 28

28 U.S.C. 1391(b)(1) ..................................................................................................15

28 U.S.C. § 1331....................................................................................................21, 22

28 U.S.C. § 1391(b) ....................................................................................................15

28 U.S.C. § 1391(b)(2) ................................................................................................16

28 U.S.C. § 1391(c) ....................................................................................................15

28 U.S.C. § 1391(e) ....................................................................................................15

28 U.S.C. § 1391(e)(1) ................................................................................................15

28 U.S.C. § 2201....................................................................................................21, 22

D.C. Code § 13-422 ....................................................................................................13

D.C. Code § 13-423 ....................................................................................................13

Declaratory Judgment Act ..........................................................8, 12, 22, 24, 27

Fed. R. of Civ. P. Rule 12(b)(1)....................................................................................8

Fed. R. of Civ. P. Rule 12(b)(2)....................................................................................8

Fed. R. of Civ. P. Rule 12(b)(3)....................................................................................8

Fed. R. of Civ. P. Rule 12(b)(6)........................................................................8, 12, 16

Federal Arbitration Act ......................................................................................9, 27, 28

Federal Crop Insurance Act ..................................................................................................8, 9

**Other Authorities**

Conference Report on the Federal Crop Insurance Act of 1980, H.R. Rep. No. 96-
    1272 (1980)...............................................................................................................20

Defendant, Producers Agriculture Insurance Company ("ProAg" or "Defendant"), by and through counsel, hereby submits this memorandum in support of its motion to dismiss Plaintiff's, The Altman Group, Inc. ("Altman" or "Plaintiff"), complaint pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, ProAg moves to compel arbitration and stay proceedings.

## **INTRODUCTION**

Plaintiff's action is a transparent attempt to sidestep binding contractual terms and rates that it knowingly accepted when it agreed to act as an agent of ProAg in selling crop insurance plans under the Federal Crop Insurance Act ("FCIA" or the "Act"). In an attempt to escape these binding contractual terms, years after accepting them, Plaintiff resorts to asserting claims ostensibly under the Declaratory Judgment Act in a scattershot approach—asserting a series of procedurally and legally deficient claims in hopes that something might stick. This tactic reflects an effort to repackage straightforward contractual disputes as declaratory relief claims, despite the clear presence of an arbitration clause requiring such disputes to be resolved through arbitration.

As set forth below, Plaintiff's allegations fail for the following reasons: (i) this Court lacks personal jurisdiction as to ProAg, (ii) venue is improper, (iii) the Complaint fails to state a claim against ProAg as to causes 2, 4, 6, and 8, and (iv) the Complaint fails to establish subject matter jurisdiction as to causes 1, 3, 5, and 7. In an attempt to circumvent these failures and avoid its contractual obligations, Plaintiff inappropriately attempts to abuse the Declaratory Judgment Act to manufacture jurisdiction where none exists. Finally, even if Plaintiff's claims were cognizable, Plaintiff's claims are, nevertheless, subject to the parties' agreed-upon arbitration clause, mandating arbitration for all of the claims in the Complaint.

Accordingly, each of these counts should be dismissed against ProAg as a matter of law, and *with prejudice*. Alternatively, pursuant to Sections 3 and 4 the Federal Arbitration Act ("FAA"), the Court should issue an order compelling arbitration and staying this case until such arbitration proceedings are concluded.

### BACKGROUND

Pursuant to the FCIA, The Federal Crop Insurance Corporation ("FCIC") operates the federal crop insurance program through private insurance companies known as Approved Insurance Providers ("AIPs"), such as ProAg. *See, generally*, Federal Crop Insurance Act, 7 U.S.C. §§ 1501–1524. These AIPs enter into a Standard Reinsurance Agreement ("SRA") with FCIC, which governs their obligations and compensation, including the payment of administrative and operating subsidies ("A&O") Compl. ¶¶ 2–5, 27, 44–45.[1] FCIC, through the Risk Management Agency ("RMA"), is responsible for regulating the program and ensuring compliance with the FCIA and SRA. Compl. ¶¶ 3, 30–35, 141–142.

Altman, a crop insurance agency, entered into a Crop Insurance Agency Agreement (the "2017 Agreement") with ProAg on June 21, 2017, to sell and service crop insurance policies underwritten by ProAg in Texas and surrounding states. Compl. ¶¶ 6–7, 22–24, 71–72. The Agreement was succeeded in 2020 by a new Crop Insurance Agency Agreement, (the "2020 Agreement") executed on October 8, 2020. The 2017 and 2020 Agreements (collectively, "Agreements") contain essentially the same terms. The Agreements incorporated the terms of the FCIA, FCIC regulations, and the SRA. Compl. ¶¶ 74, 186–187. Altman was compensated under commission schedules issued by ProAg. The relevant schedules include:

---

[1] The Complaint states that the 2011 SRA remains effective today. Compl. ¶ 27. As a matter of clarity, the 2011 SRA is no longer in force. Rather the SRA is renewed annually, and the terms of the SRA have largely remained the same. *Compare* 2011 SRA, Ex. A *with* 2023 SRA, Ex. B.

- December 9, 2021: A Multiple Peril Commission Schedule, which generally provided for 80% of the A&O as commission, but included a Texas-specific clause reducing commissions by 50% based on loss ratios. Compl. ¶¶ 6, 76–78, 317.

- November 16, 2023: A new Multiple Peril Commission Schedule, reducing Altman's commission to 5% of the A&O. Altman alleges this 2023 Multiple Peril Commission Schedule was invalid as it modified the Agreements without mutual written consent. Compl. ¶¶ 12, 88–90, 136–138.

While the FCIA provides the statutory framework for the federal crop insurance program, the terms between ProAg and Plaintiff are set forth pursuant to the binding Agreements. Notably, there is no existing contractual agreement between Plaintiff and FCIC and, in any event, the FCIC establishes no private right of action for any agent or policyholder with whom an AIP contracts nor does the FCIA. Nevertheless, despite the FCIA's inapplicability to what is purely a contractual dispute, Plaintiff's Complaint attempts to rely on the FCIA to support its requests for declaratory judgment. Central to the Complaint is 7 U.S.C. § 1507(c)(3), which has no applicability to agreements between AIPs and any independent or captive insurance agents they may contract with to deliver federal crop insurance. Rather if the FCIC Board desires to contract directly with agents for the sale and service of federally-subsidized crop insurance policies, then it requires the Board to "reasonably compensate[]" them for their services. Plaintiff also invokes 7 U.S.C. § 1507(c)(2), which directs the FCIC to contract with private entities to deliver crop insurance and to focus its efforts on regulatory oversight. Additional statutory provisions include 7 U.S.C. § 1508(k), which governs the payment of A&O to AIPs, and 7 U.S.C. § 1515, which requires FCIC to maintain program integrity and take remedial action when necessary. Plaintiff further references 7 U.S.C. §§ 1508(b)(7) and (c)(9), which authorize FCIC to limit coverage based on insurance risk, and 7

10

C.F.R. § 457.8(b), which reserves to FCIC the authority to reject applications where risk is deemed excessive.

## PROCEDURAL HISTORY

On July 9, 2025, Plaintiff filed its Complaint against the FCIC and ProAg, seeking declaratory judgment: (1) that the 2023 Multiple Peril Commission Schedule is invalid; (2) that FCIC has an affirmative duty to ensure that AIPs take actions to be in compliance with the Act; (3) that ProAg violated the SRA by selectively cancelling policies; (4) that FCIC failed in its obligation to ensure that ProAg is compliant with the Act and SRA; (5) that the 2023 Multiple Peril Commission Schedule rates are not compliant with the SRA; (6) that FCIC failed to ensure that the 2023 Multiple Peril Commission Schedule was compliant with section 507(c)(3) of the Act; (7) that the 2021 Multiple Peril Commission Schedule commission reductions were unlawful; and (8) that FCIC failed to ensure that the 2021 Multiple Peril Commission Schedule complied with section 507(c)(3) of the Act.

ProAg filed consent motions to extend time to respond to the Complaint on September 12, 2025, November 13, 2025, and December 9, 2025. ECF No. 7, 12, 14. This court granted each motion, setting the final deadline for January 15, 2026. ECF No. 14. This Motion to Dismiss is now timely filed for the Court's consideration.

## ARGUMENT

This matter should be dismissed in its entirety for multiple independent reasons, each of which is sufficient on its own to warrant dismissal. First, Plaintiff fails to establish that ProAg is subject to personal jurisdiction in the District of Columbia. Second, venue is improper under the applicable statutory provisions, as none of the alleged conduct by ProAg occurred in this District. Third, Plaintiff asserts claims against ProAg that seek relief solely from FCIC and, therefore, must

be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for relief as to ProAg. Fourth, the remaining claims are, in substance, contractual disputes disguised as requests for declaratory relief and, therefore, fall outside the scope of this Court's subject matter jurisdiction. Fifth, even if jurisdiction were proper, the Court should exercise its discretion under the Declaratory Judgment Act to dismiss Plaintiffs claims, as the claims are not suited for declaratory relief and would result in piecemeal litigation.

Finally, and in the alternative, all claims against ProAg are subject to binding arbitration under the parties' Agreements, and the Court should compel arbitration and stay proceedings accordingly.

## I.   Plaintiff Cannot Establish that ProAg is Subject to the Personal Jurisdiction of This Court

"The Plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). In establishing a factual basis, the "[p]laintiff must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations." *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) (citations omitted). Personal jurisdiction may be general or specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Furthermore, recognizing the "need to have 'unfettered access to federal departments and agencies,'" D.C. Courts have long held that "[e]ntry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 417 (D.D.C. 2017) (quoting *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976)) (holding that the exception applies even when maintaining an office in the District for the purposes of contacting the government).

The Supreme Court has held that general jurisdiction may only be asserted over a corporation "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 317 (1945)). To establish this, the D.C. Code requires that corporations be "domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. D.C. Courts have consistently held that "[i]f a defendant does not reside within or maintain a principal place of business in the District of Columbia, then the District's long-arm statute, D.C. Code § 13-423, provides the only basis in which a court may exercise personal jurisdiction over the defendant." *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 60 (D.C. Cir. 2006).

Absent general jurisdiction, "[t]he Court must engage in a two-part inquiry to determine whether it may exercise specific personal jurisdiction over non-resident defendants. First, the Court must determine whether jurisdiction may be exercised under the District of Columbia's long-arm statute, D.C. Code section 13–423 (2001). Second, the Court must determine whether the exercise of personal jurisdiction would satisfy the requirements of due process." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 266-67 (D.D.C. 2011). The District's long-arm statute allows specific jurisdiction "based upon conduct" arising from a person within the District. D.C. Code § 13-423. The due process prong requires "'minimum contacts' with the District of Columbia such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Lans*, 786 F. Supp. 2d at 266-67. "The defendant must have 'purposefully directed his activities at residents of the forum, and the litigation results from alleged

13

injuries that arose out of or relate to those activities.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)).

Plaintiff cannot meet its burden of establishing this Court's personal jurisdiction over ProAg. Other than baldly alleging that ProAg does business with a District of Columbia entity through the execution of an agreement with a federal agency, Plaintiff makes no allegation that ProAg transacted or acted within the District in any way. Further, ProAg is not incorporated nor does it maintain any place of business, let alone its principal place of business, within the District. Additionally, Plaintiff does not allege that any District of Columbia resident suffered harm, and any purported injury to Plaintiff arising from ProAg's conduct occurred entirely outside the District. Plaintiff's only allegation for establishing personal jurisdiction over ProAg is that "ProAg has executed a Standard Reinsurance Agreement with FCIC, so it is doing business with a District of Columbia entity and, therefore, subject to the personal jurisdiction of the District Court for the District of Columbia." Compl. ¶ 19. However, in no way does Plaintiff demonstrate that the execution of the SRA ever occurred in the District. Nevertheless, even if so, precedent is clear that presence within the District for the purposes of actions with the Government "is not a basis for the assertion of in personam jurisdiction." *United Therapeutics*, 278 F. Supp. 3d at 417.

Accordingly, as ProAg is not incorporated, does not maintain a presence within, and has not acted in any way within the District, Plaintiff cannot establish that ProAg is subject to the personal jurisdiction of this Court. Therefore, the Court should grant this motion to dismiss with prejudice as to all of Plaintiff's claims.

## II. <u>Venue is Improper for All of Plaintiff's Claims</u>

Pursuant to the Federal Rules of Civil Procedure, venue is proper in either "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving

14

rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). In reviewing a motion to dismiss for improper venue, the court may resolve the motion on the basis of the complaint alone, or, as necessary, examine facts outside the complaint that are presented by the parties, while drawing reasonable inferences in favor of the plaintiff. *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17–18 (D.D.C. 2013).

In its argument, Plaintiff does not explain how venue is proper pursuant to 28 U.S.C. § 1391(b). Instead, plaintiff only argues that venue is "proper under 28 U.S.C. §§ 1391(c) and (e) and 7 U.S.C. 1506(d)." Compl. ¶ 21. Plaintiff's arguments are insufficient to establish venue for the following reasons.

First, while 28 U.S.C. § 1391(c) establishes the rule for analyzing "residency" for venue purposes; the section does not establish venue itself, which is determined under 28 U.S.C. 1391(b)(1). Nevertheless, as discussed above, ProAg does not reside nor maintain a presence within the District. Accordingly, venue is not proper against ProAg under 28 U.S.C. 1391(b)(1) as a resident of the District.

Second, 28 U.S.C. 1391(e) establishes venue against an officer or employee of the United States, of which ProAg is neither. Further, the statute is clear that "[a]dditional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." 28 U.S.C. § 1391(e)(1); *Lozano v. Civiletti*, 89

F.R.D. 475, 478 (D.D.C. 1980) (holding that venue was not proper against Texas residents despite being proper against the government under specific statute).

Third, 7 U.S.C. 1506(d) is specific in that it establishes the right to sue "the Corporation" in the District of Columbia or any district where plaintiff resides. In no way does the statute reference, nor contemplate establishing venue for any other party. Moreover, this Court has held that "it is not persuaded that the contractual relationship between [non-government defendant] and the [U.S. government] is alone sufficient to render the District of Columbia a suitable venue for any litigation tangentially connected to that relationship." *Est. of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 9 (D.D.C. 2009).

Finally, Plaintiff is unable to demonstrate that "a substantial part of the events or omissions" occurred in the District, therefore, failing to establish venue pursuant to 28 U.S.C. § 1391(b)(2). Indeed, aside from bare assertions that ProAg does business with a District of Columbia entity through the execution of an agreement with a federal agency, Plaintiff cites not one action by ProAg within the District. Instead, all alleged actions involving ProAg are in Texas, where venue is proper for Plaintiff, ProAg, and the FCIC. *See, e.g.*, Compl ¶¶ 138 (arguing for relief due to alleged non mutual written consent of the Multiple Peril Commission Schedule applicable to policies in Texas), 165-68 (arguing that ProAg was allegedly refusing to accept new policies in Texas), 302-15 (arguing that ProAg unreasonably applied a Texas exception to the Multiple Peril Commission Schedule to reduce compensation to Plaintiff). Accordingly, as venue for claims against ProAg is improper, this Court should dismiss all claims against ProAg.

### III. The Claims Specifically Against FCIC Should Be Dismissed As to ProAg for Failure to State a Claim, Pursuant to Rule 12(b)(6)

In causes of action 2, 4, 6, and 8, Plaintiff requests declarations that FCIC failed to enforce the FCIA. *See* Compl. ¶¶ 140-55, 170-83, 244-279, 320-351. In each of these claims, Plaintiff fails

16

to identify any relief from ProAg, instead only requesting declarations enforceable as to FCIC, despite lacking any identified right of action against FCIC or that it followed any administrative process. It is a well-settled principal of law that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The relief requested must establish a cause of action against each defendant. *See Dougherty v. United States*, 156 F. Supp. 3d 222, 235 (D.D.C. 2016), aff'd sub nom. *Dougherty v. McKee*, No. 16-5052, 2017 WL 2332591 (D.C. Cir. Feb. 2, 2017) (dismissing claims against separate defendants when no cause of action existed for the injunctive relief that Plaintiff sought).

In its second cause of action, Plaintiff seeks "a declaration that **FCIC has an affirmative** duty to ensure that AIPs, including ProAg, are, at all times, acting in conformation of the Act" and that if any AIP fails to comply, that "FCIC must take such actions as are necessary to force compliance." Compl. ¶¶ 153-55 (emphasis added).

In its fourth cause of action, Plaintiff seeks a declaration that "**FCIC has violated** its obligation to ensure that ProAg is in compliance with the Act" and that "FCIC must take such affirmative actions … as are necessary to ensure that ProAg is not circumventing the requirement that AIPs accept applications." Compl. ¶¶ 181-83 (emphasis added).

In its sixth cause of action, Plaintiff seeks a declaration that "**FCIC failed in its duty** to require that ProAg pay Altman agent compensation in amounts that are compliant with section 507(c)(3)" and must take all actions to enforce compliance. Compl. ¶¶ 277-79 (emphasis added).

In its eighth cause of action, Plaintiff seeks a declaration that "**FCIC has failed in its duty** to ensure that the Multiple Peril Commission Schedule, dated December 9, 2021, is in compliance

17

with the requirements of section 507(c)(3)" and ensure that the loss ratio is not used in future crop years. Compl. ¶¶ 347-48 (emphasis added).

### A. Claims Against FCIC Fail to State a Claim that FCIC Failed in its Duty to Ensure that ProAg was Compliant with the FCIA

To support these causes of action against FCIC, Plaintiff primarily relies upon sections 507(c)(2) and 515 of the Act to assert that FCIC has "an affirmative duty … to ensure that all program participants, including AIP, are in conformance of the Act." Compl. ¶ 142 (citing section 507(c)(2)); 148 (citing section 515). However, those sections do not create a private right of action against FCIC to enforce the Act. To determine whether a private right of action exists, courts review four factors:

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' ..., that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Westinghouse Elec. Co. LLC v. Korea Elec. Power Corp.*, 694 F. Supp. 3d 48, 52-53 (D.D.C. 2023), appeal held in abeyance, No. 23-7130, 2025 WL 384451 (D.C. Cir. Jan. 31, 2025), and dismissed, No. 23-7130, 2025 WL 634795 (D.C. Cir. Feb. 25, 2025) (quoting *Cort v. Ash*, 422 U.S. 66, 98 (1975)). Further, the Supreme Court has been clear that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Here, none of the factors apply: (i) Plaintiff is not within any benefited class under the cited statutes; (ii) there is no indication of legislative intent to create a cause of action; (iii) there is no evidence of any scheme to create a remedy for Plaintiff's claims; and (iv) Plaintiff's claims as to ProAg are traditionally brought under state law.

18

Section 507(c)(2) requires FCIC to contract with private companies "to avoid duplication by the Federal Government of services that are or may readily be available in the private sector and to enable the Corporation to concentrate on regulating the provision of insurance under this subtitle." Section 515 establishes the development of a compliance regime administered by FCIC, but does not provide a right of action for private parties to enforce compliance. *See, generally*, 7 U.S.C. § 1515. Instead, disputes involving the Act and the SRA are required to follow administrative processes pursuant to 7 C.F.R. § 400.169 (establishing a process for disputes involving the SRA); *see Ace Am. Ins. Co. v. Fed. Crop Ins. Corp.*, 209 F. Supp. 3d 343, 350 (D.D.C. 2016), aff'd, 732 F. App'x 5 (D.C. Cir. 2018) (must exhaust administrative actions).

Moreover, nowhere does the FCIA give Plaintiff a right of action against FCIC to enforce compliance of the FCIA under section 515. Indeed, as the Complaint says, section 515 requires FCIC and the AIPs to work together to handle compliance and gives FCIC remedies to ensure compliance – not private-party actions against FCIC. *See* Compl. ¶¶ 148-152. Nothing in the FCIA could be inferred to give private parties a right of action. The FCIA is simply devoid of any right of action by private individuals against FCIC to enforce the FCIA.

Even if section 507(c)(2) and 515 did create a right of action against FCIC, Plaintiff's claims still fail as a matter of law. For a private right of action, a plaintiff must be within the class the statute seeks to benefit. However, section 507(c)(2) governs the relationships between FCIC and AIPs, not the relationship with agents. The relationship between agents is governed by section 507(c)(3), which sets the terms for FCIC contracting through agents (including rates and indemnification by FCIC). However, in this case, Plaintiff has not contracted with FCIC, and therefore, there is no relationship. Accordingly, there is no right of action for Plaintiff's claims.

19

**B.  The FCIA Does Not Create a Private
Right of Action for Agents Against AIPs**

Even if Plaintiff did have a valid cause of action against FCIC under these sections, nothing in the sections, nor the identified causes of action, state any request for relief from ProAg—nor could they, as the FCIA does not create a private right of action for Plaintiff.

While section 507(c)(3) sets the terms and conditions for FCIC in contracting through agents, it **does not set terms and conditions for relationships between AIPs and agents**. Instead, Section 507(c)(3) states the terms for compensation and indemnification for contracts between the Board and agents. For instance, the statute explicitly states that "the **Board shall provide such agents and brokers indemnification**." (emphasis added). Nowhere in section 507(c)(3) is there any discussion of the requirements of AIPs. This is further supported by the conference committee report when enacting the FCIA, which states that "The House amendment provides **that the Board shall**, to the maximum extent possible, provide agents and brokers reasonable compensation for sales and renewals of Federal crop insurance … The conference substitute adopts the House provision with a modification clarifying that compensation for agents and brokers will be made from premiums paid by farmers for crop insurance coverage, but that agent and broker compensation will not be included in computing premium rates." Conference Report on the Federal Crop Insurance Act of 1980, H.R. Rep. No. 96-1272, at 13–14 (1980) (Conf. Rep.) (emphasis added).

Instead, as the Complaint acknowledges, the requirements for ProAg are stipulated under the SRAs. Compl. ¶ 4. Notably, while revised annually, the SRAs have **never** included any requirement parroting section 507(c)(3). Instead, the SRA sets explicit instructions for compensation under the SRA, which include (1) that "[a]ll compensation paid by the Company or

20

its MGA shall be in writing, and provided to FCIC upon request" and (2) the AIP "**shall not pay total compensation in excess of 80 percent of the total amount of A&O subsidy**."

Nevertheless, even if section 507(c)(3) did govern the relationship between AIPs and agents, the section still lacks any private right of action for Plaintiff's claims for the same reason that there is no right of action against FCIC. Nowhere does the Act provide for a private right of action regarding AIP obligations under the FCIA, nor could one be inferred. Indeed, the four factors discussed above weigh even more in favor of finding no private right of action, as Plaintiff's claims against ProAg are contractual in nature, and, thereby, traditionally relegated to state law.

Accordingly, as causes of actions 2, 4, 6, and 8 lack any claim for relief as to ProAg, they should be dismissed.

### IV. The Court Lacks Subject Matter Jurisdiction as to All Contractual Claims

A court must dismiss a case when it lacks subject matter jurisdiction. *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 793 F. Supp. 2d 124, 127 (D.D.C. 2011) (citing *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007)). "It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court must construe the allegations in the Complaint liberally but 'need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions.'" *Id.* (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). "Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. U.S. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

In its Complaint, Plaintiff argues that this Court has jurisdiction pursuant to "28 U.S.C. §§ 2201 and 1331 and 7 U.S.C. § 1506(d)." Compl. ¶ 17. However, it is a "well-established rule that the Declaratory Judgment Act," 28 U.S.C. § 2201, "is not an independent source of federal

21

jurisdiction." *C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002). Further, as discussed above, 7 U.S.C. § 1506(d) creates an avenue for action against FCIC (assuming a legally sufficient claim, of which there is none), not private individuals. Accordingly, the only remaining question is whether each claim raises a federal question pursuant to 28 U.S.C. § 1331. As discussed below, Plaintiff inappropriately frames causes of action 1, 3, 5, and 7 in the form of declaratory judgments, rather than as contractual disputes, in an attempt to subvert its requirement to demonstrate that this court has jurisdiction.

"To determine whether a case arises under federal law, courts apply the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344 (D.D.C. 2018) (cleaned up). It is not enough that a claim invokes federal law, as the Supreme Court has emphasized just "a small category" in which a state claim becomes a federal issue "because federal law is a "necessary element of the [] claim for relief." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)). It is only when the dispute is "centered on" the federal statute such that the "question qualifie[s] as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *Id.* at 700-01 (further holding that state courts are "competent to apply federal law"). Accordingly, "[f]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

The first cause of action argues that the 2023 Multiple Commission Schedule is invalid due to the lack of Altman's consent. Compl. ¶¶ 138-39. The third cause of action alleges that ProAg

refused to accept new policies from agents, raising questions of fact, not of law. Compl. ¶¶ 166-68. The fifth cause of action requires a contractual review of the 2023 Multiple Peril Commission Schedule to determine whether there was reasonable compensation. Compl. ¶¶ 240-43. The seventh cause of action requires determining whether a contractually agreed exception in the 2021 Multiple Peril Commission Schedule was valid or not. Compl. ¶¶ 317-19. Each of these claims requires reviewing not federal issues **but** the contractual relationship and factual disputes between ProAg and Altman. Furthermore, resolving the validity of the contractual disputes in this matter would not lead to any controlling effect in future cases.

Therefore, despite Plaintiff's contentions that these claims require resolving federal issues, the actual disputes for each of these are contractual and factual in nature.[2] Accordingly, this Court should dismiss causes 1, 3, 5, and 7 for lack of subject matter jurisdiction.

### V.   The Court Should Exercise its Discretion to Dismiss the Matter as an Improper Use of Declaratory Judgment

"In order to issue declaratory relief, a court must first determine that there is a 'case or controversy' within the meaning of Article III of the United States Constitution and the Declaratory Judgment Act. This inquiry should focus on 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 35 (D.D.C. 2016). "Importantly, even when a

---

[2] The Complaint is replete with first-person narratives from Plaintiff's counsel, indicating she will be required to be a witness in this case for certain claims. *See*, *e.g.*, Complaint, ¶ 108: "On July 24, 2024, the undersigned counsel spoke to Heather Manzano, Deputy Administrator for RMA, regarding Altman's problems with ProAg drastically cutting commissions to 5 percent and that ProAg was cherry picking policies to be moved to other AIPs and she stated that RMA's concern is with the farmers, not the agents, and farmers have not been complaining of any disruptions in service." Although ProAg is not asserting that this renders the Complaint insufficient at this stage, to the extent any of the Complaint survives, Plaintiff's counsel may be required by law to recuse herself or amend the Complaint.

suit satisfies the jurisdiction prerequisites, the Act gives courts discretion to determine 'whether and when to entertain an action.'" *Id.* (quoting *Wilton v. Seven Falls*, 515 U.S. 277, 282 (1995)). "Thus, a court may dismiss a declaratory action for equitable, prudential, or policy arguments." *Id.* at 35-6. "In the D.C. Circuit, two criteria are ordinarily relied upon: 1) whether the judgment will serve a useful purpose in clarifying the legal relations at issue, or 2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* at 36 (citing *President v. Vance*, 627 F.2d 353, 364 n.76 (D.C. Cir. 1980)). "Ultimately, the purpose of the Declaratory Judgment Act is to allow the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings. . . . Where declaratory relief would cause a case to be tried piecemeal, or that only particular issues will be resolved without settling the entire controversy, a court should not exercise its discretion in favor of granting it." *Id.* (citations omitted).

In cases involving the enforcement of statute, the Supreme Court has long held that agencies maintain "complete discretion … to decide how and when they should be exercised." *Heckler v. Chaney*, 470 U.S. 821, 835 (1985). The D.C. Circuit has consistently upheld these principles, stating "a Commission decision that rests even in part on prosecutorial discretion cannot be subject to judicial review." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 993 F.3d 880, 884 (D.C. Cir. 2021). D.C. Courts have additionally found it reasonable to dismiss declaratory judgment claims brought by plaintiffs against the government and a private party when "claims raise issues of public importance that are better decided in the context of a fully-litigated case." *FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 117 (D.D.C. 2015) (declining to use its discretion to hear cases the result of which would significantly implicate Amtrak's current operations). Here, allowing Plaintiff's claims to go forward would require an

24

inappropriate review of FCIC's discretion in enforcing the FCIA. Further, it would lead to significant effect on public issues as it would lead to drastic changes in relationships between FCIC, AIPs, and agents, as well as the implementation of the FCIA.

Moreover, in cases including what are essentially contractual claims over compensation, D.C. courts have routinely dismissed declaratory judgment claims. For example, in *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, the plaintiff sought a declaratory judgment regarding its right to feeds under the parties' contract. 793 F. Supp. 2d 124, 125 (D.D.C. 2011). The court held that it would not exercise its discretion "because the dispute appears to involve both factual and legal issues." *Id.* at 132. Further, in *Gibson v. Liberty Mut. Grp., Inc.*, the court dismissed claims, which plaintiffs alleged were legal in nature to determine methodology for calculating appraisal and lost costs under contract, stating that:

> [w]hile Plaintiffs may dress up their factual contentions in different legal raiment, it does not change the underlying nature of the claim …. The questions raised by all counts are purely factual ones regarding proper compliance with the policy, the method used to calculate the losses, and the ultimate value of the losses. Such questions are not appropriate for declaratory relief, but are best reserved for the finder of fact.

778 F. Supp. 2d 75, 79 (D.D.C. 2011).

Despite Plaintiff's claim that there are no issues of fact in this case, Compl. ¶ 6, several of Plaintiff's allegations require a factual determination. For example, Plaintiff alleges that ProAg entered Altman's offices, reviewed Altman's policies and demanded that high loss ratio policies be moved to another AIP. ¶¶ 83-84. The Complaint further alleges that ProAg made "threats" that failure to do so would result in "the possibility of these bad loss ratios causing Altman to lose its contract with ProAg." Compl. ¶ 85. Moreover, Plaintiff alleges that ProAg was "cherry-picking" policies. Compl. ¶¶ 177-78. Plaintiff further alleges that this was ProAg effectively "cancelling policies of eligible policyholders." Compl. ¶ 164.

25

As another example, Plaintiff's first cause of action is simply a dispute on whether the 2023 Multiple Peril Commission Schedule is valid under the Agreement. *See* Compl. ¶¶ 138-39. In addition, the fifth and seventh causes of action each respectively focus on whether the rates within the 2021 and 2023 Multiple Peril Commission Schedules were applicable and or reasonable. *See* Compl. ¶¶ 241-43, 317-319.

Finally, Plaintiff's claim that the determination of "reasonable compensation" is purely a legal issue is incorrect. Courts have consistently treated similar issues as a factual question determined by the finder of fact. *See, e.g.*, *Texas Neighborhood Servs. v. United States Dep't of Health & Hum*. Servs., 875 F.3d 1, 6 (D.C. Cir. 2017) (holding that it is the grantee's responsibility of demonstrating that compensation to employees was reasonable); *Jones Bros. Bakery v. United States*, 411 F.2d 1282, 1285 (Ct. Cl. 1969) ("In determining whether the claimed deductions were or were not properly allowable as reasonable compensation, the court is dealing with a question of fact that must be decided in the light of all the facts and circumstances involved in the case."). Plaintiff's own argument underscores this, asserting that reasonable compensation equals 80% of A&O—mischaracterizing FCIC's 80% cap as a minimum. See Comp. ¶¶ 199–200. If FCIC intended to replace the reasonable compensation standard with a minimum compensation requirement, the Standard Reinsurance Agreement would have said so, rather than explicitly preserving the cap as a ceiling. Thus, in the event that the Court finds the Act does apply to Plaintiff's claims, determining reasonable compensation requires a factual analysis.

To allow Plaintiff's claims to go forward would be to ignore the clear indications of what this case really is—a contractual suit requiring determinations of fact and review of Plaintiff's breach of contract claims. Yet, Plaintiff never alleges a breach of contract as there was none. Plaintiff was compensated in full according to the contracts they executed or, with respect to the

26

2023 amended schedule, after receipt of which they continued to place business with ProAg and in so doing accepted the compensation as being reasonable. This action would, therefore, attempt to use the Declaratory Judgment Act to avoid bringing its case where it is contractually required to do so (*i.e.*, in arbitration or a Texas court). Accordingly, this court should exercise its discretion and grant Defendant's motion to dismiss.

### VI. In the Alternative, the Court Should Compel Arbitration Based on the Claims Against ProAg and Stay Proceedings

The FAA establishes that "A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA allows any party to petition any U.S. district court, which would have jurisdiction, "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Upon being satisfied that an issue is referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Courts have consistently held that the FAA "manifest[ed] a 'liberal federal policy favoring arbitration agreements.'" *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 90 (D.D.C. 2012) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). Accordingly, the FAA "creates a strong presumption in favor of enforcing arbitration agreements, and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983)). "That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (quoting *Shearson/American Express Inc. v. McMahon*, 482

U.S. 220, 226 (1987)). At no point does the FCIA override the FAA for causes of action between private parties.

All of Plaintiff's causes of action against ProAg derive from the 2017 Agreement or 2020 Agreement, and the accompanying Multiple Peril Commission Schedules. In each version, the Agreements are explicit that they are subject to arbitration, as evident in multiple places within the Agreements. First, on the first page of the Agreements, prior to discussing any terms and in bold letters, the Agreements state in bold capital letters: "**THIS AGREEMENT IS SUBJECT TO ARBITRATION**." *See* Crop Insurance Agency Agreement (Aug. 20, 2020), Ex. C (emphasis in original).

Second, Article VIII of the Agreements outlines that ProAg and Altman "**will resolve any dispute between them arising under this Agreement by binding arbitration under the rules of the American Arbitration Association**." *Id*. (emphasis in original). Nowhere in the FCIA or the Agreements is arbitration precluded.

Thus, if the Court does not dismiss the Complaint in its entirety, there can be no dispute that Plaintiff's causes of action against ProAg are subject to Arbitration. Accordingly, pursuant to Sections 3 and 4 of the Federal Arbitration Act, this Court should issue an order to compel arbitration and stay proceedings until such arbitration has occurred.

## CONCLUSION

In conclusion, as to ProAg, this Court should dismiss the Complaint in its entirety and *with prejudice*. In the alternative, this Court should compel arbitration and stay proceedings until such arbitration has concluded.

Dated: January 15, 2026                    Respectfully submitted,

                                           PRODUCERS AGRICULTURE
                                           INSURANCE COMPANY


                                            /s/ Thomas A. Coulter
                                           Thomas A. Coulter (DC Bar No. 436423)
                                           Brian W. Stolarz (DC Bar No. 466160)
                                           Ian L. Slingsby (DC Bar No. 90018654)
                                           Norton Rose Fulbright US LLP
                                           799 9th Street NW, Suite 1000
                                           Washington, DC 20001
                                           Telephone: (202) 662-0200
                                           thomas.coulter@nortonrosefulbright.com
                                           brian.stolarz@nortonrosefulbright.com
                                           ian.slingsby@nortonrosefulbright.com

                                           *Counsel for Defendant Producers Agriculture
                                           Insurance Company*

29

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2026, a true and correct copy of the foregoing was electronically served on all counsel of record through the Court's CM/ECF system.


       /s/ Ian L. Slingsby
       Ian L. Slingsby (DC Bar No. 90018654)