UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ALTMAN GROUP, INC.,

     Plaintiff,

  v.

FEDERAL CROP INSURANCE
CORPORATION, et al.,

     Defendants.

Civil Action No. 25-2193 (SLS)

**MOTION TO DISMISS AND**
**<u>MEMORANDUM IN SUPPORT THEREOF</u>**

# TABLE OF CONTENTS

Table of Contents...................................................................................................................... i

Table of Authorities ................................................................................................................. ii

Background ............................................................................................................................... 1

    I.      The Federal Crop Insurance Program .................................................................... 2

    II.    Plaintiff's Allegations Regarding Commission Payments and Cancelled Contracts ...................................................................................................................................... 5

    III.   Plaintiff's Claims ..................................................................................................... 5

Legal Standards ....................................................................................................................... 8

    I.      Rule 12(b)(1).............................................................................................................. 8

    II.    Rule 12(b)(6)............................................................................................................. 9

    III.   Rule 8 ....................................................................................................................... 10

Argument ............................................................................................................................... 10

    I.      The Court Lacks Subject Matter Jurisdiction. ....................................................... 10

    II.    The Complaint Fails to Meet Rule 8(a)'s Standards for Short and Plain Statement of the Claims. ......................................................................................................... 17

    III.   Plaintiff Does Not Allege a Proper Cause of Action. ........................................... 20

 Conclusion ............................................................................................................................. 21

## TABLE OF AUTHORITIES

*Ali v. Rumsfeld*,
  649 F.3d 762 (D.C. Cir. 2011) ................................................ 11, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................ 9, 10, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................ 9, 10

*Brown v. Califano*,
  75 F.R.D. 497 (D.D.C. 1977) ................................................ 10, 18

*Buck v. Am. Airlines, Inc.*,
  476 F.3d 29 (1st Cir. 2007) ................................................ 20

*California v. Texas*,
  593 U.S. 659 (2021) ................................................ 11

*Ciralsky v. CIA*,
  355 F.3d 661 (D.C. Cir. 2004) ................................................ 10, 17, 20

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................ 8, 9

*Harris v. Bessent*,
  775 F. Supp. 3d 164 (D.D.C. 2025) ................................................ 11

*DaimlerChrysler Corp. v. Cuno*,
  547 U. S. 332 (2006) ................................................ 14

*Davis v. United States*,
  499 F.3d 590 (6th Cir. 2007) ................................................ 20

*Est. of Mickens v. U.S. Bank Nat'l Ass'n*,
  Civ. A. No. 18-928 (KBJ), 2021 U.S. Dist. LEXIS 146470 (D.D.C. Aug. 5, 2021) ................................................ 18

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ................................................ 14

*Fletcher v. Dep't of Just.*,
  17 F. Supp. 3d 89 (D.D.C. 2014) ................................................ 14

*Gully v. First Nat'l Bank*,
  299 U.S. 109 (1936) ................................................ 12

*Gunn v. Minton*,
  568 U.S. 251 (2013) ................................................ 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ................................................ 8

*Lane v. Pena*,
    518 U.S. 187 (1996) ................................................................................................................ 14

*Nat'l Ass'n of Home Builders v. Salazar*,
    827 F. Supp. 2d 1 (D.D.C. 2011) ........................................................................................... 17

*Nat'l Whistleblower Ctr. v. Dep't of Health and Hum. Servs.*,
    839 F. Supp. 2d 40 (D.D.C. 2012) .................................................................................... 15-16

*Nichols v. Holder*,
    828 F. Supp. 2d 250 (D.D.C. 2011) ........................................................................................ 20

*Reed Elsevier, Inc. v. Muchnick*,
    559 U.S. 154 (2010) .................................................................................................................. 8

*Renal Physicians Ass'n v. Dep't of Health and Hum. Servs.*,
    489 F.3d 1267 (D.C. Cir. 2007) ............................................................................................. 16

*Schilling v. Rogers*,
    363 U.S. 666 (1960) ................................................................................................................ 11

*Skelly Oil Co. v. Phillips Petrol. Co.*,
    339 U.S. 667 (1950) ................................................................................................................ 11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .................................................................................................................. 9

*Thomas v. Wilkins*,
    61 F. Supp. 3d 13 (D.D.C. 2014) ............................................................................................ 11

*Toumazou v. Turkish Republic of N. Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014) ............................................................................................. 18

*Town of Chester v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017) .................................................................................................................. 9

*Transmission Agency of N. Cal. v. FERC*,
    495 F.3d 663 (D.C. Cir. 2007) ............................................................................................... 15

**Statutes**

5 U.S.C. § 702 ................................................................................................................ 12, 13

7 U.S.C. § 1501 ................................................................................................................. 1, 2

7 U.S.C. § 1506 ................................................................................................. 12, 11-12, 14

7 U.S.C. § 1507 ......................................................................................................... 3, 15, 20

7 U.S.C. § 1508 ......................................................................................................... 4, 5, 14

7 U.S.C. § 1515 .............................................................................................................. 4, 20

7 U.S.C. § 1502 .................................................................................................................... 2

28 U.S.C. § 1331 .......................................................................................................... 11, 12

28 U.S.C. § 2201 ................................................................................................. 1, 11, 13, 20

**Federal Rules of Civil Procedure**

Rule 8 ........................................................................................... 1, 10, 17, 18, 19, 20

Rule 12 ..................................................................................................................... 8, 9

Defendant, the Federal Crop Insurance Corporation ("FCIC" or the "Federal Defendant"), respectfully submits this memorandum in support of its motion to dismiss the Complaint (ECF No. 1) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court should dismiss all claims against the Federal Defendant because it lacks subject matter jurisdiction over Plaintiff's claims, as Plaintiff has failed to identify a source of jurisdiction beyond the Declaratory Judgment Act, 28 U.S.C. § 2201, which does not itself confer jurisdiction. No alternative source of jurisdiction exists. Moreover, Plaintiff does not identify a waiver of sovereign immunity that would allow it to sue the Federal Defendant. Plaintiff also lacks standing because it has not shown an injury fairly traceable to the allegedly unlawful conduct challenged. Finally, the Court does not have subject matter jurisdiction to order the requested relief. If the Court reaches the merits, the Court should dismiss the complaint because of its failure to comply with Rule 8 and because it fails to rely on any recognized cause of action. In sum, where the Court lacks jurisdiction over this action, and where Plaintiff's claims are meritless even if they were justiciable, the Court should grant the Federal Defendant's motion and dismiss the complaint as to it.

## BACKGROUND

In this suit, The Altman Group, Inc. ("Altman" or Plaintiff), a crop insurance agent, challenges the compensation level an insurance company pays it to sell federally subsidized crop insurance. The relevant policies were issued subject to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501 *et seq*., and reinsured by the FCIC. As to the Federal Defendant, Altman improperly seeks a series of declaratory judgments, essentially demanding that the FCIC set a compensation rate higher than the one it currently receives. Altman also sues private Defendant Producers Agriculture Insurance Company ("ProAg"), the party responsible for paying the agent compensation under the private contract that is at the heart of this private dispute.

I.        **The Federal Crop Insurance Program**

Federally subsidized crop insurance provides a safety net for farmers to protect against certain risks, such as natural disasters and market fluctuations. Congress enacted the FCIA "to promote the national welfare by improving the economic stability of agriculture" and vested FCIC with authority to carry out this general purpose.[1] The Department of Agriculture's Risk Management Agency ("RMA") administers the Federal Crop Insurance Program on behalf of FCIC. It reinsures private crop insurers, called approved insurance providers ("AIPs"), and subsidizes a percentage of the risk premium.

Crop insurance policies, such as a Multiple-Peril Crop Insurance policy, are specialized forms of federally regulated and taxpayer-subsidized insurance available to farm producers under FCIA authority, 7 U.S.C. § 1501 *et seq*., and attendant regulations published in Title 7, Subtitle B, Chapter IV of the Code of Federal Regulations. Crop insurance policies are fully reinsured by the FCIC so long as the insurance companies use the standard policy guidelines, including terms and conditions, established by the FCIC. FCIC also reviews and approves applications from AIPs, such as ProAg. In turn, the AIPs contract with agents, which are the companies that market and sell the subsidized crop insurance directly to farmers. Agents work directly with farmers to evaluate their circumstances and assist in choosing specific policies to fit their financial needs.

AIPs generally pay agents a percentage of the premium, as well as ongoing payments (residuals) as farmers renew policies each year. AIPs establish their own agent rates that vary by crop, region, and any other considerations on which the AIP and the agent agree. Plaintiff does not, and cannot, allege that RMA has ever dictated the rate at which AIPs must compensate their agents or evaluated agent contracts with AIPs. Rather, as the FCIA states, RMA must generally

---

[1]        7 U.S.C. §§ 1502(a), 1503.

ensure, to the "to the maximum extent possible" that agents are "reasonably compensated."[2] In

full, the FCIA states:

> In the administration of this subtitle [7 U.S.C. §§ 1501 *et seq*.], the Board shall, to the maximum extent possible, (1) establish or use committees or associations of producers and make payments to them to cover the administrative and program expenses, as determined by the Board, incurred by them in cooperating in carrying out this subtitle [7 U.S.C. §§ 1501 *et seq*.], (2) contract with private insurance companies, private rating bureaus, and other organizations as appropriate for actuarial services, services relating to loss adjustment and rating plans of insurance, and other services to avoid duplication by the Federal Government of services that are or may readily be available in the private sector and to enable the Corporation to concentrate on regulating the provision of insurance under this subtitle [7 U.S.C. §§ 1501 *et seq*.] and evaluating new products and materials submitted under section 508(h) or 523 [7 U.S.C. § 1508(h) or 1523], and reimburse such companies for the administrative and program expenses, as determined by the Board, incurred by them, under terms and provisions and rates of compensation consistent with those generally prevailing in the insurance industry, and (3) encourage the sale of Federal crop insurance through licensed private insurance agents and brokers and give the insured the right to renew such insurance for successive terms through such agents and brokers, in which case the agent or broker shall be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect.[3]

FCIC has never set rates for agents because it lacks authority to do so. Plaintiff alleges that

the FCIA "determines the manner in which AIPs and crop insurance agents are compensated."

Compl. at ¶ 8. This vague language does not assert that the FCIA sets the rate that AIPs pay crop

insurance agents, and Altman does not allege that it does.

In contrast, statutory language in the FCIA compels FCIC to engage in other specific

actions. For example, as part of program compliance and integrity, the FCIA states that FCIC

"shall work actively with approved insurance providers to address program compliance and

---

[2]     7 U.S.C. § 1507(c).

[3]     *Id.*

integrity issues as such issues develop."[4] The language "shall work actively" is very different from the general language that appears in section 1507, which is qualified by use of the words "to the maximum extent possible" and "encourage." Indeed, two examples of how FCIC actively worked with AIPs, as directed by 7 U.S.C. 1515, can be seen in the bulletins Plaintiff cites in the Complaint that FCIC issued under this authority: "Product Management Bulletin: PM-23-064" and "Manager's Bulletin MGR-24-003: Notice to Cease and Desist Agent/Agency Contract Termination." *See* Compl. at ¶¶ 98-101.

Thus, while FCIC encourages the sale of Federal crop insurance through agents, such encouragement does not extend to setting rates AIPs pay agents in private contracts. FCIC has no contractual relationship with agents or privity with them. Any privity is between the AIP and the agent. FCIC's contractual relationship with AIPs is governed by the Standard Reinsurance Agreement ("SRA").[5] The SRA establishes the amount RMA will reimburse AIPs for administrative and operating expenses to sell eligible crop insurance contracts.[6] Importantly, agents are not parties to this contract and cannot change the reimbursement amount RMA pays AIPs. For the same reason, RMA cannot alter the amount AIPs negotiate to pay their agents. There is no authority, and Plaintiff points to none, that allows RMA to change a term to a contract to which it is not a party. AIP compensation is governed by the SRA, while agent compensation is governed by contracts between AIPs and agents.

---

[4]      7 U.S.C. § 1515 (emphasis added).

[5]      https://old.rma.usda.gov/-/media/RMA/Regulations/Appendix-2024/24sra.ashx?la=en.

[6]      SRA Section III(a). Subject to certain exclusions, Congress capped the total amount of reimbursement RMA can pay to "persons involved in the direct sale and service of any eligible crop insurance contract." 7 U.S.C. § 1508(k)(4)(A). See also SRA Section III(a)(4).

## II.  Plaintiff's Allegations Regarding Commission Payments and Cancelled Contracts

ProAg's contract with Altman dated December 9, 2021 specified, among other things, a specific rate dependent on the "final Agency Loss Ratio for Texas Crops."  Compl. ¶ 77. Altman alleges that ProAg's payment based on the formula in this provision reduced its commission rate by 50 percent. *Id.* ¶ 78. Altman further alleges that a number of exceptions to the 80 percent commission rate "significantly reduced the commissions for agents." *Id*. ¶ 81. Additionally, Altman alleges that ProAg representatives advised Altman that they preferred it to move certain policies to another AIP. *Id*. ¶ 84.

Altman also alleges that for the 2024 and succeeding crop years, ProAg provided Altman with a new commission schedule that only ProAg signed, *id*. ¶ 88, and that in August 2023, ProAg notified agents that it was cancelling numerous policies for the fall 2024 sales closing date. *Id*.  In describing the financial impact, Altman alleges:

> Even though AIPs continued to get paid by RMA on average 18-20 of the premium for the administrative and operating expenses for each policy, agent commissions have dropped from 80 percent of that 18-20 percent to as low as **1** percent of that 18-20 percent. The practical effect of this is that if an agent has $1,000,000 premium on its book of business, prior to 2022, it used to receive 80% of the [administrative and operating subsidy], or about $160,000 a year, under an even 5 percent commission rate, the agent will be paid $10,000 a year.  The AIPs are pocketing the $150,000 difference to pad their already large profits.  *Id.* ¶ 113 (emphasis in original).

In sum, Altman asserts that ProAg reduced its agent commissions below the amount historically paid to agents, including agents in other States. Altman alleges that it notified FCIC of these circumstances, *id*. ¶ 92, and that it subsequently contacted FCIC to communicate its concerns several times.  *Id*. ¶¶ 96, 107-109, 112, 125.

## III.  Plaintiff's Claims

In this matter, Altman, an agent that has contracted with ProAg, sues FCIC and ProAg. It alleges that ProAg—an insurance company approved by FCIC to sell federally subsidized policies

to farmers—unilaterally modified its Crop Insurance Agency Agreement ("CIAA") with Altman without Altman's consent, which allegedly resulted in a lower compensation for the agent work Altman performed.

Altman styles its claim as eight causes of action, asking that this Court issue approximately twenty-six separate declaratory judgments, spanning the following:

(1) Whether the ProAg/Altman CIAA is a valid contract;

(2) Whether FCIC must take actions to force compliance if any AIP continues to fail to comply with the Act or SRA;

(3) Whether ProAg has violated the SRA by selectively accepting certain policies, to the detriment of other policyholders;

(4) Whether FCIC must take actions to ensure that ProAg is not circumventing a requirement to accept applications from all eligible farmers, preclude ProAg from requiring agents to move policies to another AIP based on the loss ratio, or preclude ProAg from refusing to accept new applications;

(5) Whether AIPs are barred from reducing commissions below the amount historically paid to agents in other States in specific instances;

(6) Whether FCIC must:

    a. ensure that the Multiple Peril Commission Schedule complies with the requirements of the SRA during a specific time period;

    b. require that ProAg pay Altman agent compensation in legally compliant amounts during the relevant time period;

    c. force ProAg to pay agent compensation in an amount of 80 percent of the A&O as stated in the relevant Multiple Peril Commission Schedule;

    d.  ensure that in the future ProAg pays Altman agent commissions comparable to those it pays other agents;

(7) Whether:

    a.  the specific exception in the Multiple Peril Commission Schedule dated December 9, 2021, complies with the FCIA's agent compensation provisions;

    b.  the general terms of the Multiple Peril Commission Schedule dated December 9, 2021, were effective for the 2022 and 2023 crop years;

    c.  Altman is entitled to the same agent commission paid under Multiple Peril Commission Schedule dated December 9, 2021, as other agents outside of Texas who sell and service the same policies and plans;

(8) Whether FCIC:

    a.  failed in its duty to ensure that the Multiple Peril Commission Schedule, dated December 9, 2021, complies with the FCIA;

    b.  failed in its duty to require that ProAg pay Altman agent compensation in amounts required by the FCIA from 2022 to the current crop year after FCIC was made aware of the actions of ProAg that comprised the violations of section 507(c)(3) of the Act;

    c.  must take all actions necessary under the Act and SRA to force ProAg to pay agent compensation based on a specific formula in the Multiple Peril Commission Schedule, dated December 9, 2021;

    d.  must take actions to ensure that for all future crop years, ProAg pays Altman agent commissions in the same amounts as other agents are paid who sell and

service the same policies and plans of insurance and perform the same functions; and

e. must ensure that, for all future crop years, ProAg does not use loss ratios as a basis for adjustment of agent commissions.[7]

Plaintiff also requests reasonable costs and attorneys' fees.[8]

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction, *Gunn v. Minton*, 568 U.S. 251, 256 (2013), with the power to adjudicate only genuine "Cases" and "Controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Thus, a court must presume that an action "lies outside [its] limited jurisdiction, and the burden of establishing the contrary rests upon" the party invoking federal jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). A court's subject matter jurisdiction refers to its "statutory or constitutional power to adjudicate the case" before it. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (citation omitted).

As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper*, 568 U.S. at 408 (internal quotation marks and citations omitted). "The law of Article III standing, which is built on separation-of-powers

---

[7]    Compl.  ¶¶ 138, 139, 153-155, 169, 183, 240-243, 276-279, 317-319, and 347-351.

[8]    *Id*. at 67.

principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.*

Standing ensures that the plaintiff has a "personal stake in the outcome of [a] controversy" that "justif[ies] [the] exercise of the court's remedial powers on [its] behalf." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 438 (2017) (citation omitted). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The "threatened injury must be certainly impending to constitute injury in fact;" "[a]llegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citation omitted). In addition, a "theory of standing [that] relies on a highly attenuated chain of possibilities[] does not satisfy" this requirement. *Id.* at 410. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (citation omitted).

## II.      <u>Rule 12(b)(6)</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of a

cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678

(citing *Twombly*, 550 U.S. at 555).

### III.    Rule 8

Rule 8(a) mandates that a complaint "must contain . . . a short and plain statement of the

claim showing that the pleader is entitled to relief." Rule 8(a)(2). Rule 8(d)(1) further states that

"[e]ach allegation must be simple, concise, and direct." "Taken together, Rules 8(a) and [8(d)(1)]

underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky v.*

*CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004) (internal quotation marks and citation omitted). It is well

established that Rule 8 "sets out a minimum standard for the sufficiency of complaints" in order

"to give fair notice of the claim[s] being asserted" and the grounds upon which they rest. *Brown*

*v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (citations omitted). This permits "the adverse party

the opportunity to file a responsive answer, prepare an adequate defense and determine whether

the doctrine of res judicata is applicable." *Id.; see also Twombly*, 550 U.S. at 555 (explaining that

the requirements of Rule 8 are meant "to give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests" (alteration in original) (internal quotation marks and citation

omitted)).

### ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction.

The Court lacks subject matter jurisdiction over this suit because: (1) the Declaratory

Judgment Act provides no independent cause of action, and no alternative source of jurisdiction

exists; (2) the United States has not waived sovereign immunity; (3) Plaintiff lacks standing, and

(4) Plaintiff improperly seeks a series of advisory opinions.

A.      **The Declaratory Judgment Act Does Not Provide the Court with Jurisdiction, and No Alternative Source of Jurisdiction Exists.**

Plaintiff invokes the Declaratory Judgment Act, 28 U.S.C. § 2201, as the basis for its claim that the Court should order a series of judgments interpreting private contracts as well as technical aspects of federal law. Compl. at ¶17. But as the Supreme Court has held, the Declaratory Judgment Act "alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. 659, 672 (2021) (citations omitted). The Declaratory Judgment Act "provides neither jurisdiction nor a cause of action, but rather a form of relief when the case is already properly before the Court." *Harris v. Bessent*, 775 F. Supp. 3d 164, 178 (D.D.C. 2025); *see also Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (citing *C&E Servs., Inc. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) ("It is a 'well-established rule that the Declaratory Judgment Act 'is not an independent source of federal jurisdiction.'")).

The Declaratory Judgment Act merely provides an additional procedural remedy where another statute creates substantive rights. The availability of relief under the Declaratory Judgment Act "presupposes the existence of a judicially remediable right," *Schilling v. Rogers*, 363 U.S. 666, 677 (1960), and no such right exists here. The Declaratory Judgment Act does not expand a court's jurisdiction or create any substantive rights. *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 21 (D.D.C. 2014) (citing *B. Braun Med., Inc. v. Abbott Labs.,* 124 F.3d 1419, 1428 (Fed. Cir. 1997)). Therefore, those seeking relief under the Declaratory Judgment Act must ground their claims elsewhere, as the Declaratory Judgment Act simply "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950); *see* 28 U.S.C. § 2201(a).

In addition to the Declaratory Judgment Act (28 U.S.C. § 2201), the Complaint asserts that the Court has federal question jurisdiction (28 U.S.C. § 1331) and jurisdiction under the FCIA (7

U.S.C. § 1506(d)). Compl. ¶ 17. Yet the Complaint provides no basis for federal question jurisdiction, as Plaintiff fails to anchor this action with a recognized cause of action. It is well established that, in order to support subject matter jurisdiction under section 1331, a plaintiff must identify a federal right of action. Altman has not done so here. "To bring a case within the statute [28 U.S.C. § 1331], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936).

Plaintiff claims that FCIC has violated its obligations as program regulator under the Act and SRA to ensure that ProAg has acted lawfully under the Act, SRA, and FCIC's regulations. Compl. ¶ 171. However, neither the FCIA nor any other statute imposes such obligations. The mere fact that the Complaint implicates an issue of federal law is insufficient on its own to establish federal-question jurisdiction. Indeed, the FCIA provision that Plaintiff cites merely establishes that FCIC may sue and be sued in its corporate name.[9] It does not establish a private cause of action under which agents may sue the FCIC when they disagree with its actions or decisions. In contrast, the FCIA explicitly establishes other rights, such as rights for private crop insurers to sue the FCIC as well as an administrative procedure available to a private crop insurer if it believes that FCIC has taken an action that violates the SRA.[10]

The Court should not consider Plaintiff's claims in this action because it has not availed itself of the right of review over certain agency actions provided by the Administrative Procedure Act, 5 U.S.C. § 702 ("APA"), which is the appropriate process for challenging agency actions. But Plaintiff does not plead an APA claim, and, as discussed above, the Declaratory Judgment Act

---

[9]     7 U.S.C. § 1506(d).

[10]    7 C.F.R. § 400.169.

merely provides an additional procedural remedy; it creates no new substantive rights. *Compare* 5 U.S.C. § 702 ("Right of review . . . A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof") with 28 U.S.C. § 2201 ("Creation of remedy," presupposing the existence of "a case of actual controversy within [the Court's] jurisdiction"). Indeed, Altman cannot circumvent the APA by pleading claims as statutory violations rather than availing itself of the APA. In any event, an APA claim based on these facts would fail as well, as Altman appears to be attacking broadly the FCIC's program as to AIP responsibilities in the context of crop insurance payments. In *Norton v. Southern Utah Wilderness Alliance*, the Supreme Court set out the "limits the APA places upon judicial review of agency inaction." 542 U.S. 55, 61 (2004). Relevant here, the Court held that an APA claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take," and cannot be used "to enter general orders compelling compliance with broad statutory mandates." *Id*. at 64-66. It explained that the "discrete agency action" limitation "precludes . . . broad programmatic attack[s]" and the "required agency action" limitation "rules out judicial direction of even discrete agency action that is not demanded by law." *Id*. If, for example, "an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id*. at 65.

Since the Declaratory Judgment Act does not provide the Court with jurisdiction, and Plaintiff provides no other basis for federal question jurisdiction, the Complaint should be dismissed.

- 13 -

B.    **The United States Has Not Waived Sovereign Immunity.**

Plaintiff fails to identify, let alone establish, a waiver of sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see Fletcher v. Dep't of Just.*, 17 F. Supp. 3d 89, 93 (D.D.C. 2014) (plaintiffs bear the burden of establishing waiver). Such a waiver must be "unequivocally expressed in statutory text," and "will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996). No waiver of sovereign immunity exists as to Plaintiff's claims. Plaintiff cites to 7 U.S.C. § 1506(d), but this provision merely establishes that FCIC may sue and be sued in its corporate name and does not waive sovereign immunity for a suit an agent brings relating to its compensation. In contrast, the FCIA provides for suits against it in specific circumstances. For example, if a claim for indemnity is denied by the FCIC or an AIP, "an action on the claim may be brought against the [FCIC] or the Secretary only in the United States district court for the district in which the insured farm is located." 7 U.S.C. § 1508(j)(2)(A). Additionally, an insured must seek reconsideration of any determination of "good farming practices" by the RMA and may bring suit after doing so only against the FCIC. 7 C.F.R. § 400.98(e).

The FCIA simply does not provide for suit against the government by an agent dissatisfied with the compensation an AIP pays it. Absent a waiver of sovereign immunity, this Court does not have subject matter jurisdiction.

C.    **Plaintiff Lacks Standing to Challenge FCIC's Activity.**

Plaintiff also lacks standing to sue, and thus, this Court lacks subject matter jurisdiction. To have standing, a plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U. S. 332, 342 (2006). Even assuming that Altman's loss of income from its

agreements with ProAg qualifies as "injury," Altman has not shown that such an injury is "fairly traceable" to the "allegedly unlawful conduct" challenged here, at least as to FCIC.

To connect the "challenged conduct" at issue here (FCIC's failure to take action to regulate agent commission rates and failure to take enforcement action against a particular AIP) to its "concrete and particularized injury" (lower commission rates) Plaintiff must engage in a series of speculations. Specifically, it must speculate that someday, the FCIC will take regulatory action addressing agent commission rates and possibly take an enforcement action against ProAg based on specific commission rates, thus potentially causing Altman to be paid higher amounts. *See, e.g.,* Compl. ¶ 9. Any possibility that FCIC might determine that the activities discussed in the Complaint merited a regulatory action such as rulemaking or enforcement is speculative, especially because the relevant statutory language—that FCIC should "encourage" the sale of crop insurance through private insurance agents, "in which case" those agents "shall be reasonably compensated"—does not mandate such rulemaking or enforcement.[11] Furthermore, in the event FCIC did engage in rulemaking, it is exceptionally speculative whether such rulemaking would address past commission rates or establish commission rates at level high enough to redress any injury Plaintiff alleges.

Even under the most liberal pleading standard, this speculative, attenuated causal chain cannot not be characterized as a "fairly traceable" link between Plaintiff's alleged injury and FCIC's legal responsibilities. *See Transmission Agency of N. Cal. v. FERC*, 495 F.3d 663, 670 (D.C. Cir. 2007) (parties did not have standing where they challenged certain refund amounts the government ordered, but they had not yet sought to participate in the relevant utility organization nor been ordered by the government agency involved to pay refunds to other parties); *Nat'l*

---

[11]    7 U.S.C. § 1507(c).

*Whistleblower Ctr. v. Dep't of Health and Hum. Servs.*, 839 F. Supp. 2d 40, 48 (D.D.C. 2012) (any possibility that the agency's final rule might identify additional circumstances that would inure to plaintiff's benefit was speculative).

To establish standing, Plaintiff would need to show that third-party ProAg's action is linked to the government's activity such that directing the government to take regulatory action will be "reasonably likely to cause" the third party to change course. *Renal Physicians Ass'n v. Dep't of Health and Hum. Servs.*, 489 F.3d 1267, 1276 (D.C. Cir. 2007) (plaintiff did not have standing where it failed to show link between third-party medical clinics' decision to reduce the hourly wage of medical directors and the continuing existence of a regulatory safe-harbor provision, such that invalidating the provision would be reasonably likely to cause the clinics to raise the hourly wage). Moreover, it is not enough simply to plead this causative link. *Id.* Even at the pleading stage, a party must make factual allegations showing that the relief it seeks will be likely to redress its injury. *Id.* Here, Plaintiff does not make any factual allegations establishing that the relief it seeks—that is, a court order directing FCIC to engage in specific regulatory and enforcement activity—will be likely to redress its injury, as the specific government activity that could result is too speculative.

In sum, Plaintiff has not identified any unlawful government action "fairly traceable" to Plaintiff's pocketbook harm. Here, there is no government action—actual or threatened—whatsoever. Thus, Plaintiff's Complaint should be dismissed for lack of standing.

### D.     Plaintiff Seeks Improper Advisory Opinions.

Furthermore, the requested relief sought by Plaintiff would be advisory in nature and therefore outside of this Court's subject matter jurisdiction. "[W]hat makes [a judicial pronouncement]—a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the

plaintiff." *Nat'l Ass'n of Home Builders v. Salazar*, 827 F. Supp. 2d 1, 7 (D.D.C. 2011) (emphasis in original; citing *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)). Thus, a declaratory judgment itself cannot be the relief sought if there is no corresponding relief that would compel a change between the parties. *See Hewitt*, 482 U.S. at 761 ("At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces—the payment of damages, or some specific performance, or the termination of some conduct."). Yet here, no such change in the parties' relations is even sought. All that Plaintiff seeks is an extensive series of judicial pronouncements.

The pronouncements Plaintiff seeks would constitute improper advisory opinions. Plaintiff's primary dispute is with ProAg. Yet, even assuming that the Court were to issue the requested declaratory judgments as to FCIC, Plaintiff still would only obtain relief if discrete, independent events occurred: namely, if FCIC decided to initiate specific regulatory and enforcement actions that increased both backward-looking and forward-looking compensation to Plaintiff. Thus, granting Plaintiff's requested relief would not ameliorate the injuries claimed. Such pronouncements would simply constitute improper advisory opinions, which this Court may not issue, as they are outside of the Court's subject matter jurisdiction.

## II.    The Complaint Fails to Meet Rule 8(a)'s Standards for Short and Plain Statement of the Claims.

Rule 8(a) of the Federal Rules of Civil Procedure requires complaints to contain "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Ciralsky v. CIA*, 355 F.3d 661, 668-71 (D.C. Cir. 2004). The Rule 8 standard ensures that defendants receive fair notice of the claim being asserted

so that they can prepare a responsive answer and an adequate defense and determine whether the doctrine of *res judicata* applies. *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977).

Under Rule 8, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" and allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). This standard requires that the complaint give "fair notice of the claims being asserted and the grounds upon which they rest" so that the defendant can file a responsive answer and prepare its defense. *Est. of Mickens v. U.S. Bank Nat'l Ass'n*, Civ. A. No. 18-928 (KBJ), 2021 U.S. Dist. LEXIS 146470, at *3 (D.D.C. Aug. 5, 2021). A plaintiff flouts that rule, however, "by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (citation modified).

The Complaint in this matter is neither "short" nor "plain." The initial factual allegations span twenty-eight pages and contain numerous irrelevant details. For example, the Complaint includes lengthy narrative about communications with FCIC/RMA, providing voluminous details rather than presenting the key substantive points in a short and plain form. *See, e.g.,* Compl. ¶¶ 112-113 (including detailed quotations from correspondence); ¶¶ 117-18 (including lengthy quotes from a Question and Answer publication). Additionally, the Complaint contains page after page of requests for declaratory relief presented as eight causes of action. *Id.* ¶¶ 133-151. Within these causes of action, Plaintiff implores the court to issue declaratory judgments on no fewer than twenty-six legal topics. *Id.* ¶¶ 138, 139, 153-155, 169, 183, 240-243, 276-279, 317-319, and 347-351. Each cause of action is lengthy and multi-faceted; in fact, the fifth cause of action in and of itself spans nine pages, and the sixth cause of action spans four and a half pages. *Id.* ¶¶ 184-279.

The causes of action and requested relief also overlap with one another. For example, the Second, Fourth, and Seventh Causes of Action each seek declarations that FCIC has a statutory duty to ensure that ProAg complies with the FCIA. Specifically, they state:

- Altman is entitled to a declaration that FCIC has an affirmative duty to ensure that AIPs, including ProAg, are at all times, acting in conformation [sic] of the Act and SRA. (Second Cause of Action, ¶ 153)

- Altman seeks a declaration that FCIC has violated its obligation to ensure that ProAg is in compliance with the Act. (Fourth Cause of Action, ¶ 182)

- Altman is entitled to a declaration that FCIC has failed in its duty to ensure that the Multiple Peril Commission Schedule, dated December 9, 2021, is in compliance with the requirements of section 507(c)(3) of the Act from the [sic] 2022 to the current crop year. (Seventh Cause of Action, ¶ 347)

Not only do the causes of action contain duplicative requests, but within the causes of action, Plaintiff includes duplicative factual statements, increasing the length of the Complaint and the resulting burden to respond to it. For example, the Second Cause of Action states, "RMA is a regulator of the Federal crop insurance program,"[12] duplicating a statement in paragraph 30 despite the paragraph incorporating all prior material, *see id*. ¶ 140.[13] As another example, the second cause of action includes nine statements parroting contractual clauses in the SRA. *Id*. ¶¶ 143-147, 149-152. For these reasons, the Court should dismiss the Complaint under Rule 8(a). In *Ciralsky*, the D.C. Circuit affirmed the district court's dismissal of a complaint for its length and redundancy where the complaint contained 367 numbered paragraphs, which is very close to the 356 numbered

---

[12]    Compl. ¶ 141.

[13]    RMA and FCIC are used interchangeably. *Id*. ¶ 3.

paragraphs in the complaint at issue here. 355 F.3d at 669; *see also Nichols v. Holder*, 828 F. Supp. 2d 250, 253-54 (D.D.C. 2011) (dismissing 140-page complaint because it was "prolix, redundant, [and] bloated with unnecessary detail," falling far short of Rule 8(d)'s requirement that each allegation be "simple, concise, and direct").

### III.    Plaintiff Does Not Allege a Proper Cause of Action.

Even if this Court were to conclude that there is no jurisdictional bar to Altman's purported claim for declaratory relief directing regulatory action, Altman does not allege a cause of action to press any such claim. Neither the Declaratory Judgment Act nor the FCIA provides Altman with a cause of action to challenge such a putative ongoing policy. As discussed above, the Declaratory Judgment Act does not provide Altman with a cause of action to raise a claim for declaratory relief resulting from any purported failure to take regulatory action regarding agent commissions. The Request for Relief includes demands for "declaratory judgment pursuant to 28 U.S.C. § 2201(a)"—the Declaratory Judgment Act. Yet it is well established that the Declaratory Judgment Act does not "provide a cause of action." *Ali*, 649 F.3d at 778. *Accord Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007) (Declaratory Judgment Act "creates a remedy, not a cause of action"); *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (same).

The FCIA contains no mandate requiring FCIC to act according to any particular protocol—in fact, the statutory provision addressing agent compensation begins with the phrase "to the maximum extent possible" and uses the non-obligatory term "encourage." 7 U.S.C. § 1507(c). At its core, the Complaint challenges a contracting party's business practices under a series of contracts, and the FCIA simply contains no cause of action to provide the remedies that Plaintiff seeks as to the FCIC. While the FCIA provides for the agency to engage in compliance oversight over AIPs, 7 U.S.C. § 1515, it does not allow for an agent to sue FCIC over an AIP's actions. Since agent compensation is governed by contracts between AIPs and agents to which

- 20 -

FCIC is not a party, Plaintiff's remedy lies in renegotiation of its contract with ProAg rather than bringing a non-existent cause of action against the FCIC.

## CONCLUSION

For these reasons, this Court should dismiss Plaintiff's Complaint as to Federal Defendant FCIC.

Dated: January 15, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _____*/s/ Allison I. Brown*_____
    ALLISON I. BROWN
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 752-7822

*Attorneys for the United States of America*

- 21 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ALTMAN GROUP,

        Plaintiff,

    v.

FEDERAL CROP INSURANCE CORP., et al.,

        Defendants.

Civil Action No. 25-2193 (SLS)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant Federal Crop Insurance Corporation's Motion to Dismiss, and the entire record herein, it is hereby

ORDERED that Defendant Federal Crop Insurance Corporation's Motion to Dismiss motion is GRANTED, and it is further

ORDERED that Defendant Federal Crop Insurance Corporation is dismissed from this action.

SO ORDERED:

_____
Date

_____
Sparkle L. Sooknanan
United States District Judge