UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE ALTMAN GROUP, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 25-2193 |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL CROP INSURANCE CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO THE DEFENDANT
PRODUCER AGRICULTURE INSURANCE COMPANY'S
<u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION</u>**

**TABLE OF CONTENTS**

Table of Contents…………………………………………………………………………..i

Table of Authorities……………………………………………………………………….ii

Introduction…………………………………………………………………………..1

Background…………………………………………………………………………….2

Argument……………………………………………………………………………..2

    I.      Plaintiff Can Establish that ProAg is

           Subject to the Personal Jurisdiction of This Court…………………………………2

    II.    Venue is Proper……………………………………………………………….6

    II.    The Claims Against FCIC Should Not be Dismissed

           Against Defendant ProAg for Failure to State a Claim………………………9

        A.  FCIC has a Duty to Ensure ProAg is Compliant with the FCIA…………………….10

        B.  Plaintiff is Not Relying on the FCIA to Create a

            Private Right of Action against AIPs……………………………………………16

    IV.   The Court Has Subject Matter Jurisdiction Over All Claims…………………………18

    V.    This Case Presents Proper Use of Declaratory Judgment……………………………21

    VI.   This Court Should Not Compel Arbitration………………………………………29

Conclusion……………………………………………………………………………30

## TABLE OF AUTHORITIES

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967)…………………………………………………………..……..12

*Acceptance Ins. Companies, Inc. v. US,*
    583 F. 3d 849, 851 (Fed. Circuit 2009)…………………………………………….14

*Aetna Life Ins. Co. v. Haworth,*
    300 U.S. 227 (1937)…………………………………………………………………14

*Alkanani v. Aegis Defense Services, LLC,*
    976 F.Supp.2d 13 (D.D.C. 2014)…………………………………………………….3

*Arent v. Shalala,*
    866 F.Supp. 6 (D. D.C. 1994)……………………………………………………..23

*Artis v. Greenspan,*
    223 F.Supp.2d 149 (D.D.C. 2002)………………………………………………...4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)………………………………………………………………8, 27

*Ausmus v. Perdue,*
    908 F.3d 1248 (10th Cir. 2018)…………………………………………………….15

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.,*
    793 F. Supp. 2d 124 (D.D.C. 2011)……………………………………………….26

*Brooks v. Harris,*
    808 F.Supp.2d 206 (D.D.C.2011)…………………………………………………3

*Bueno v. La Compania Peruana,*
    375 A.2d 6 (D.C.App 1977)………………………………………………………..3

*California v. Texas,*
    593 U.S. 659 (2021)…………………………………………………………11, 12, 18

*Citizens for Responsibility and Ethics in Washington v. Federal Election Commission,*
    380 F.Supp.3d 3, 40 (D. D.C. 2019)………………………………………………24

*Coltrane v. Lappin,*
    885 F.Supp.2d 228 (D. D.C. 2012)………………………………………………….8

*Dorothy K. Winston & Co. v. Town Heights Development, Inc.,*
    376 F.Supp. 1214 (D.D.C.1974)……………………………………….………...3, 5

*Edison Electric Institute v. U.S. EPA,*
 996 F.2d 326, 333 (D.C.Cir.1993)………………………………………………...…23

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
 547 U.S. 677 (2006)………………………………………………………………1..9, 20

*Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,*
 355 A.2d 80 (D.C. 1976)……………………………………………………….3, 18

*Federal Crop Ins. Corp. v. Merrill,*
 332 U.S. 380, 384 (1947)………………………………………………………..14, 17

*FiberLight, LLC v. Nat'l R.R. Passenger Corp.*,
 81 F. Supp. 3d 93 (D.D.C. 2015)……………………………………………..…...25

*Flynt v. LFP, Inc., 245 F.Supp.2d 94 (D.D.C.2003), aff'd sub nom.,*
 *Flynt v. Rumsfeld, 355 F.3d 697 (D.C.Cir.2004)*…………………………………..…25

*Founding Church of Scientology v. Verlag,*
 536 F.2d 429 (D.C.Cir.1976)……………………………………………………….3

*Gibson v. Liberty Mut. Grp., Inc.,*
 778 F. Supp. 2d 75 (D.D.C. 2011)…………………………………………………...26

*Gilda Marx, Inc. v. Wildwood Exercise, Inc.,*
 85 F.3d 675 (D.C.Cir.1996)…………………………………………………………10

*Glenn v. Thomas Fortune Fay,*
 222 F. Supp. 3d 31, 36 (D.D.C. 2016)………………………………………………21

*Gonzalez v. Internacional De Elevadores, S.A.,*
 891 A.2d 227 (D.C.2006)……………………………………………………...……6

*Gunn v. Minton*,
 568 U.S. 251 (2013)………………………………………………………….……...19

*Harris v. Bessent,*
 775 F.Supp.3d 16 (D.D.C. 2025)……………………………………………………11

*Heckler v. Chaney*,
 470 U.S. 821 (1985)………………………………………………………………..23, 24

*ICC v. Bhd. of Locomotive Engineers,*
 482 U.S. 270 (1987)…………………………………………………………………23

iv

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)……………………………………………………………...5

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock,*
    783 F.2d 237, 245–46 (D.C.Cir.1986)……………………………………………23

*Jones Bros. Bakery v. United States,*
    411 F.2d 1282 (Ct. Cl. 1969)………………………………………………………28

*Kirwa v. United States Department of Defense,*
    285 F. Supp. 3d 257 (D. D.C. 2018)………………………………………………24

*Land v. Dollar,*
    330 U.S. 731 (1947)………………………..……………………………………4

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007)………………………………………………10, 11, 12, 18, 29

*Milliken v. Meyer,*
    311 U.S. 457 (1940)………………………………………………………..…5

*Moore v. U.S. House of Representatives,*
    733 F.2d 946, 956 (D.C.Cir.1984)……………………………………….……..25

*Mwani v. bin Laden,*
    417 F.3d 1 (D.C. Cir. 2005)……………………………………………….…..4

*Nabong v. Paddayuman,*
289 F.Supp.3d 131 (D. D.C. 2018)…………………………………………..…8

*National Wildlife Federation v. U.S. E.P.A.,*
    980 F.2d 765, 773 (D.C. Cir. 1992)……………………………………………23

*Olsen v. U.S. ex rel. Federal Crop Insurance Corp.,*
    334 Fed.Appx. 834 (9ᵗʰ Cir. 2009)…………………………………………...30

*Pub. Affairs Press v. Rickover,*
    369 U.S. 111 (1962)……………………………………………………….21

*Rainbow Val. Citrus Corp. v. Federal Crop Ins. Corp.,*
    506 F.2d 467 (9ᵗʰ Cir. 1974)……………………………………………14

*Reuber v. United States,*
    750 F.2d 1039 (D.C.Cir.1984)…………………………………………….8, 10

*Sierra Club v. Johnson,*
  623 F.Supp.2d 31 (D. D.C. 2009)……………………………………………………………8

*Sparrow v. United Air Lines, Inc.,*
  216 F.3d 1111 (D.C. Cir. 2000)………………………………………………………27

*Texas Neighborhood Servs. v. United States Dep't of Health & Hum.* Servs.,
  875 F.3d 1, 6 (D.C. Cir. 2017)……………………………………………………..27

*Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.,*
  482 F.3d 1330 (Fed. Cir. 2007)……………………………………………………..12

*United Therapeutics Corp. v. Vanderbilt Univ.,*
  278 F. Supp. 3d 407 (D.D.C. 2017)…………………………………………………....3, 4

*U.S. S.E.C. v. e-Smart Technologies, Inc.,*
  926 F.Supp.2d 231 (D.D.C. 2013)………………………………………………...……..9

*Wilton v Seven Falls Co.,*
  515 U.S. 277 (1995)…………………………………………………………...………21

**Statues**

7 U.S.C. §§ 1501-1524………………………………………………2, 10, 12, 14, 15, 22, 25, 26, 27

7 U.S.C. § 1506………………………………………………….………………….7, 13, 19, 20

7 U.S.C. § 1507………………1, 2, 7, 10, 12, 13, 15, 16, 17, 18, 19, 20, 22, 24, 25, 26, 27, 28, 29

7 U.S.C. § 1508………………………………………………………………………15, 19

7 U.S.C. § 1515………………………………………………………………………10, 13

28 U.S.C. § 1331……………………………………………………………..…...18

28 U.S.C. § 1391(b)………………………………………………………………….6

28 U.S.C. § 2201(a)…………………………………………………………10, 29

Declaratory Judgment Act…………………………………………9, 11, 13, 16, 18, 19, 29

Article III of the Constitution………………………………………11, 18, 21, 22, 26

**Other**

D.C. Code § 13–334(a)………………………………………………………....3

D.C. Code § 13–423(a)(1)………………………………………………………...3

7 C.F.R. part 400……………………………………………………………….5, 29, 20

About RMA | Risk Management Agency, Public-Private Partnerships | Risk Management Agency………………………………………………………………......5

Agent Compensation - Schemes or Devices | Risk Management Agency…………….………6, 18

Federal Crop Insurance: A Primer | Congress.gov | Library of Congress, Assessment of Risk

Management Agency's Oversight of High-Dollar Indemnities……………………………..14

Final Agency Determinations | Risk Management Agency………...…………………………..5

GAO-09-445 Crop Insurance: Opportunities Exist to Reduce the
    Costs of Administering the Program……………………………………………17

GAO-04-517 Crop Insurance: USDA Needs to Improve Oversight of
    Insurance Companies and Develop a Policy to
    Address Any Future Insolvencies…………………………………………………17

Informational Memorandums | Risk Management Agency………………………………...…..5

Manager's Bulletins | Risk Management Agency………………………………………...…..5

MGR-24-003: Notice to Cease and Desist Agent/Agency Contract Terminations | Risk Management Agency………………………………………………………………..19

Risk Management Agency Org Chart………………………………………………………..5

Risk Management Agency: Policyholder Bill of Rights…………………………………….19

Renegotiation of the Standard Reinsurance Agreement (SRA) for Federal Crop
Insurance, report, June 10, 2010; Washington D.C..
(https://digital.library.unt.edu/ark:/67531/metadc809282/m1/5/: ……………………..…….4, 5

Who We Are | Risk Management Agency……………………………………………………4

**INTRODUCTION**

Plaintiff, the Altman Group, Inc. ("Plaintiff"), respectfully submits this Response to Defendant, Producer Agriculture Insurance Company's ("Defendant ProAg") Motion to Dismiss or, in the Alternative Compel Arbitration. Defendant ProAg makes a series of incorrect assertions regarding this action. Defendant Pro claims this is an action to sidestep the binding contractual terms between Plaintiff and Defendant ProAg. *See* Memorandum, page 8. This is not a breach of contract case.

As argued more fully below, a vast majority of the conflict in this case revolves around Defendant FCIC's duty to ensure that all program participants comply with statutory, regulatory and contractual requirements and that, after being informed of specific violations, Defendant FCIC failed to take any action, resulting in significant financial harm to Plaintiff. To resolve these issues, Plaintiff asserts that 7 U.S.C. § 1507(c)(3) requires approved insurance providers ("AIP") to reasonably compensate agents based on the functions they perform in the sale and service of the policy. Plaintiff asserts this provision is incorporated into the Standard Reinsurance Agreement ("SRA") and Plaintiffs agency contract with Defendant ProAg. *See* Exhibits B and C to Defendant ProAg's Motion to Dismiss. Plaintiff asserts that Defendant ProAg's contracts with agents performing the same function as Plaintiff received 80 percent of the administrative and operating expense reimbursement ("A&O") but Plaintiff had its agent commissions cut to 40 percent starting in 2021 and then to 5 percent from 2024 to present. *See* Plaintiff's Exhibits A and B. Plaintiff alleges that these cuts, which are based on loss ratio and not the function of the agent in the sale and service of the policy, are in violation of § 1507(c)(3).

All the declarations sought are intertwined and predicated on each other. Plaintiff is entitled to declarations of the meaning of the contracts, statutes, and contracts as they relate to it. This is

the purpose of declaratory judgment, to determine the rights and other legal relations of any interested party seeking such declaration. Defendant ProAg also asserts that: (i) this Court lacks personal jurisdiction; ii) venue is improper; iii) the Complaint fails to state a claim against ProAg for causes 2, 4, 6, and 8; and iv) the Complaint fails to establish subject matter jurisdiction as to causes 1, 3, 5, and 7. *See* Memorandum, page 8. Defendant ProAg states that Plaintiff is improperly seeking to circumvent the arbitration clause in its contract with Plaintiff. *Id.* As stated more fully below, these claims are without merit.

## BACKGROUND

Defendant ProAg's recitation it its Background claims that 7 U.S.C. § 1507(c)(3) and other statutory provisions are inapplicable to its contracts with Plaintiff. *See* Memorandum, page 10. This assertion is false. Defendant ProAg's contracts with Plaintiff expressly state that the Federal Crop Insurance Act ("FCIA")(7 U.S.C. §§ 1501-1524) is incorporated by reference and if there is a conflict between the contract and the FCIA, the FCIA controls. *See* Complaint ¶ 74, Exhibit C, Article IV.S., to Defendant ProAg's Motion to Dismiss. Therefore, § 1507(c)(3) has been incorporated by reference into the contract between Plaintiff and Defendant ProAg and that statutory provision controls. In addition, section III(a)(4) of the SRA expressly regulates the compensation paid to agents. *See* Exhibit B, Section III(f) to Defendant ProAg's Motion to Dismiss.

## ARGUMENT

### I. Plaintiff Can Establish that ProAg is Subject to the Personal Jurisdiction of This Court

Defendant ProAg claims that "D.C. Courts have long held that "[e]ntry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a

basis for the assertion of in personam jurisdiction." *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 417 (D.D.C. 2017) (quoting *Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (holding that the exception applies even when maintaining an office in the District for the purposes of contacting the government). *See* Memorandum, page 12. Plaintiff is not asserting that Defendant ProAg's entry into the District of Columbia ("DC") provides personal jurisdiction.

For personal jurisdiction, the connection must be such that the exercise of jurisdiction will comport not only with the statute's requirements, but with those of the due process clause as well. *Founding Church of Scientology v. Verlag,* 536 F.2d 429, 432 (D.C.Cir.1976). District of Columbia courts have clarified that the Due Process Clause presents no additional hurdle for a plaintiff who can demonstrate that the defendant meets either the "transacting business" test of D.C. Code § 13–423(a)(1) or is "doing business" in the District for the purpose of § 13–334(a). *Alkanani v. Aegis Defense Services, LLC,* 976 F.Supp.2d 13, 21-22 (D.D.C. 2014).

The courts have held that general jurisdiction permits the plaintiff to bring any sort of claim against a foreign corporation in D.C. regardless of whether the defendant's contacts gave rise to the claim in the particular case so long as the defendant has sufficiently systematic and continuous contacts with the forum state such that it is fair for the forum's courts to entertain any claim against the entity. *Brooks v. Harris,* 808 F.Supp.2d 206, 208 (D.D.C.2011). To fall within the purview of s 13-423(a)(1), a nonresident defendant need not have been physically present in the District. *Dorothy K. Winston & Co. v. Town Heights Development, Inc.,* 376 F.Supp. 1214, 1216 (D.D.C.1974) (Telephone calls). Under certain circumstances, a single act may be sufficient to constitute transacting business. *Bueno v. La Compania Peruana*, 375 A.2d 6, 9 (D.C.App 1977).

3

Defendant ProAg claims "Plaintiff's only allegation for establishing personal jurisdiction over ProAg is that "ProAg has executed a Standard Reinsurance Agreement with FCIC, so it is doing business with a District of Columbia entity and, therefore, subject to the personal jurisdiction of the District Court for the District of Columbia." *See* Memorandum, page 14. However, the court is permitted to consider material outside of the pleadings in ruling on a motion to dismiss for lack of personal jurisdiction. *Artis v. Greenspan,* 223 F.Supp.2d 149, 152 (D.D.C. 2002) (citing *Land v. Dollar,* 330 U.S. 731, 735 n.4 (1947)). The court held that allegations may be bolstered by affidavits and other written materials. *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). Factual discrepancies appearing in the record must be resolved in favor of the plaintiff. *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 411-412(D.D.C. 2017).

Contrary to Defendant ProAg's assertions, publicly available information establishes Defendant ProAg's systematic and continuous contacts with DC. Negotiations of the 2011 SRA[1] were conducted primarily in DC. *See* Renegotiation of the Standard Reinsurance Agreement (SRA) for Federal Crop Insurance, report, June 10, 2010; Washington D.C. (https://digital.library.unt.edu/ark:/67531/metadc809282/m1/5/. Additionally, Defendant ProAg signed the SRA, but it was not executed until approved by Defendant FCIC in DC. *See* Exhibit A to Defendant ProAg's Motion to Dismiss. Each year, Defendant ProAg enters a new SRA by filing a Plan of Operation that is sent and must be approved by Defendant FCIC in DC. *See* Section IV(f)(2) of Exhibit B to Defendant ProAg's Motion to Dismiss. Defendant FCIC assigns a representative from the Reinsurance Services Division in DC to assist Defendant ProAg and other AIPs in the administration and operation of the SRA. *See* Who We Are | Risk Management Agency;

---

[1] The SRA has not been renegotiated since the 2011 reinsurance year so the same terms and conditions remain in effect through the present except those financial provisions that are subject to inflation increased. For the purposes of this litigation, Plaintiff is willing to use the 2023 SRA appended to Defendant ProAg's motion to Dismiss as Exhibit B.

4

*Risk Management Agency Org Chart*. This means all questions or concerns regarding the SRA are directed to Defendant FCIC in DC. Telephone calls can be sufficient contact. *Dorothy K. Winston & Co.,* 376 F.Supp. at 1216. If Defendant ProAg has any questions regarding claims, such questions are directed to Defendant FCIC's Risk Management Services Division located in DC. *Id.* Manager's Bulletins and other directives that are binding on the conduct of Defendant ProAg are issued from DC. *See* Manager's Bulletins | Risk Management Agency. Informational Bulletins governing the conduct of Defendant ProAg are issued from DC. *See* Informational Memorandums | Risk Management Agency. Final Agency Determinations that are binding on Defendant ProAg are issued from DC. *See* 7 U.S.C. § 400.767; *Final Agency Determinations | Risk Management Agency*. Defendant ProAg has systematic and continuous contact with Defendant FCIC in DC.

The constitutional test is met if the defendant's "minimum contacts" with the District are such that subjecting it to suit would "not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940). The SRA is not like other government contracts. The SRA itself states "This is a cooperative financial assistance agreement between FCIC and the Company to deliver eligible crop insurance contracts under the authority of the Act." As stated publicly, there is a partnership between Defendants ProAg and FCIC and they work collaboratively to deliver the crop insurance program. *See* About RMA | Risk Management Agency, Public-Private Partnerships | Risk Management Agency. As stated above, most of that collaboration occurs in or through DC.

This is not the case of Defendant ProAg having a single contact with Defendant FCIC. Defendant ProAg elected to enter a partnership with Defendant FCIC through an SRA that is administered and regulated from DC and contacts between the two are systematic and continuous. Therefore, this Court has personal jurisdiction over Defendant ProAg.

5

Contrary to Defendant ProAg's assertions, specific jurisdiction also applies. Specific jurisdiction requires a nexus between a foreign corporation's particular contact with the forum state and the claim that the plaintiff asserts. *Gonzalez v. Internacional De Elevadores, S.A.,* 891 A.2d 227, 232 (D.C.2006). While Defendant ProAg's contract with Plaintiff was executed outside of DC, it remains under the authority of Defendant FCIC. *See* Section III(a)(4) of the SRA. Defendant ProAg is required to annually send its agent contracts to DC. *See* Section III(f) of the Plan of Operation Plaintiff's Exhibit A. Defendant FCIC monitors and controls the amount of compensation paid to agents from DC. *Id.* Further, Defendant FCIC issues its guidance and practices regarding agent compensation from DC. *See* Agent Compensation - Schemes or Devices | Risk Management Agency. The conduct complained of is that Defendant ProAg's contracts with Plaintiffs are not in accordance with the FCIA or the SRA, both of which are administered by Defendant FCIC in DC. Therefore, there is a nexus between Defendant ProAg's particular conduct and the claims asserted by Plaintiff sufficient to assert personal jurisdiction. Defendant ProAg's motion to dismiss should be denied.

## II.    <u>Venue is Proper</u>

Pursuant to the Federal Rules of Civil Procedure, venue is proper in either "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

6

Defendant ProAg claims that venue in this Court is improper because neither 28 U.S.C. §§ 1391(c) or (e) apply and that 7 U.S.C. § 1506(d) only provides venue against FCIC. *See* Memorandum page 16. Defendant ProAg also alleges that Plaintiff is unable to demonstrate that a substantial part of the events or omissions occurred in DC. This is incorrect. Plaintiff alleges that a substantial part of the actions giving rise to Plaintiff's causes of action occurred in DC. *See* Complaint ¶¶ 94-128. Plaintiff's primary declarations are that Defendant FCIC had a duty to enforce the provisions of the FCIA, including § 1507(c)(3), its regulations, and SRA (Complaint ¶¶ 140-154) and failed in that obligation when it did not require Defendant ProAg's agent contracts provide reasonable compensation recognizing the function of the agent and stop Defendant ProAg from cherry-picking policies. *See* Complaint ¶¶ 170-183, 244-279, 320-351. Plaintiff directed its concerns to Defendant FCIC in DC because they are responsible for the administration of the FCIA and SRA and the crop insurance program. *See* Complaint ¶¶ 92, 94, 96, 107-109, 112, 123-124, 126, 127. In addition, Plaintiff seeks an interpretation of § 1507(c)(3), which is administered by Defendant FCIC from DC. *See* Complaint ¶¶ 184-243. Therefore, a substantial part of the events or omissions occurred in DC, making this Court the correct venue.

In addition, Plaintiff's claims are also predicated on contracts between Plaintiff and Defendant ProAg that, although they were executed outside of DC, are sent to Defendant FCIC in DC each year with the Plan of Operation. *See* Sections III(a)(4) of the SRA Defendant ProAg's Exhibit B and Section III(f) of the Plan of Operation Plaintiff's Exhibit A; Complaint ¶¶ 70, 260. Further, as stated above, that contract is regulated by Defendant FCIC from DC to ensure that it is compliance with the FCIA and SRA, including agent commissions and cherry picking. A substantial part of Plaintiff's claims against Defendant ProAg are predicated on these contracts and any violation would be handled by Defendant FCIC from DC.

Even if this Court has questions regarding venue, the courts have held that when venue lies for *some* of a plaintiff's claims, the doctrine of pendent venue may allow the court to entertain other claims that are not properly venued in the court. *Coltrane v. Lappin,* 885 F.Supp.2d 228, 234 (D. D.C. 2012). "Pursuant to pendent venue, federal courts may exercise their discretion to hear claims as to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued *and* the interests of judicial economy are furthered by hearing the claims together." *Sierra Club v. Johnson,* 623 F.Supp.2d 31, 37 (D. D.C. 2009) (emphasis in original). There are three factors to consider in reviewing the propriety of pendent venue: 1. whether the claims originate from a common nucleus of operative fact; 2. the existence of common issues of proof; and 3. the existence of similar witnesses. *Reuber v. United States,* 750 F.2d 1039, 1048 (D.C.Cir.1984), *Nabong v. Paddayuman,* 289 F.Supp.3d 131 (D. D.C. 2018)(Accepted pendent venue).

All the claims in this case arise from a common nucleus of facts. For the years at issue, Defendant ProAg's contracts with its agents nationwide provided for an 80 percent agent commission with a few exceptions. *See* Complaint ¶ 76; Plaintiff Exhibit B. One exception affected Plaintiff and reduced its agent commissions by 50 percent based on the loss ratio to 40 percent of the A&O. *See* Complaint ¶ 78; Plaintiff Exhibit A. Effective for 2024 through present, Defendant ProAg reduced Plaintiff's agent commissions to 5 percent of the A&O for most policies. *See* Complaint ¶¶ 90, 137; Plaintiff Exhibit C. Plaintiff claims Defendant ProAg came into its office and required it to move policies to other AIPs. *See* Complaint ¶ 83-87, 108, 112, 156-169.[2] Plaintiff reported all this to Defendant FCIC (Complaint ¶¶ 92, 94, 96, 107-109, 112, 123-124, 126, 127) and

---

[2] While Defendant ProAg may contest these facts, for the purpose of this motion to dismiss, they must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)(quotations and citation omitted)

it effectively did nothing. *See* Complaint ¶¶ 111, 115, 119, 125, 128. This common nucleus of facts underpins all of Plaintiffs requests for declarations in this case.

Since this action is under the Declaratory Judgment Act, there exists common issues of proof for all Plaintiff's claims. Further, since this is an issue of statutory and contractual interpretation, the documents speak for themselves, so witnesses are likely unnecessary. Interests of judicial economy are also furthered by hearing these claims together. The case against Defendant FCIC cannot be resolved without first resolving the issues regarding Defendant ProAg's reducing agent commissions and cherry-picking policies and whether such actions are in accordance with the FCIA, regulations, SRA, and Plaintiffs contracts with Defendant ProAg.

Given the intertwining of these same facts and claims, judicial economy is best served by resolving these issues in one case and the primary conduct complained of, Defendant FCIC's failure to require Defendant ProAg comply with the FCIA and SRA, occurred in DC. Instead, Defendant ProAg is suggesting a piecemeal approach by separating the claims regarding its contract with Plaintiff from the conduct of Defendant FCIC. Pendent venue is intended to prevent this piecemeal litigation when cases are so intertwined. *U.S. S.E.C. v. e-Smart Technologies, Inc.*, 926 F.Supp.2d 231, 237 (D.D.C. 2013). Therefore, this Court is the proper venue to hear all the claims in this case and Defendant ProAg's Motion to Dismiss should be denied.

### III.   The Claims Against FCIC Should Not be Dismissed Against Defendant ProAg for Failure to State a Claim

Defendant ProAg claims that causes of actions 2, 4, 6, and 8 are declarations against Defendant FCIC and not Defendant ProAg. *See* Memorandum page 16-17. Plaintiff has brought a declaratory judgment action. The purpose of declaratory judgment is to determine the rights and

other legal relations of any interested party seeking such declaration. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007); 28 U.S.C. § 2201(a). This is what Plaintiff is seeking.

Most claims in Plaintiff's Complaint against Defendant FCIC are predicated on Defendant ProAg's actions of cherry-picking policies and reducing agent commissions. Even though the declarations referenced by Defendant ProAg are directed at Defendant FCIC, without this alleged conduct of Defendant ProAg, there would be no case or controversy. Like pendent venue, this Court can exercise pendent jurisdiction when there are the same operant facts, the same standard of proof, witnesses are the same and the interests of judicial economy are served. *Reuber*, 750 F.2d at 1048. If pendent review will likely terminate the entire case, sparing the district court from further proceedings and giving the parties a speedy resolution then the exercise of pendent jurisdiction is favored. *Gilda Marx, Inc. v. Wildwood Exercise, Inc.,* 85 F.3d 675, 679 (D.C.Cir.1996)*.* This Court assuming jurisdiction over all Plaintiff's claims will likely terminate this case, making the exercise of pendent jurisdiction favored. Further, as demonstrated above, all claims are predicated on the same operant facts, the same standard of proof, witnesses are the same and the interests of judicial economy are served Therefore, Defendant ProAg's Motion to Dismiss should be denied.

### A. Plaintiff Stated a Valid Claim Against Defendant FCIC that it has a Duty to Ensure ProAg is Compliant with the FCIA

Defendant ProAg claims that 7 U.S.C. §§ 1507(c)(2) and 1515 do not create a private right of action against FCIC to enforce the FCIA. *See* Memorandum, page 18. Plaintiff is not claiming these statutory provisions give rise to a private cause of action. Plaintiff simply states these statutory provisions demonstrate Defendant FCIC's duty as a regulator of the Federal crop insurance program. *See* Complaint ¶¶ 32, 35-39, 142.

The right of action in this case is a declaratory judgment. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc., Inc.,* 549 at 127. *Medimmune* held that for jurisdiction, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.*

The courts have stated that the Declaratory Judgment Act confers jurisdiction of the court if the declaratory judgment actions satisfies Article III's case-or-controversy requirement. *California v. Texas,* 593 U.S. 659, 672 (2021); *see also Harris v. Bessent,* 775 F.Supp.3d 16 (D.D.C. 2025). Plaintiff's Complaint alleges that there is a substantial dispute and that the interests between the Plaintiff and both Defendants are adverse, with Plaintiff claiming that:

1.  Defendant ProAg violated its contract with Plaintiff when Defendant ProAg executed an amendment to the contract effective for 2024 and succeeding years without the required signature of Plaintiff. *See* Complaint ¶¶ 134-139.

2.  Defendant ProAg violated the FCIA, SRA, and regulations when it required Plaintiffs to move policies to other AIPs based on loss ratio when the insureds were still eligible for insurance. *See* Complaint ¶¶ 171-180.

3.  Defendant FCIC had a duty to enforce the terms of the FCIA, SRA, and regulations and failed in its duty when it allowed Defendant ProAg to select which policies it would insure based on loss ratio. *See* Complaint ¶¶ 157-168; 171-181.

4. Defendant ProAg's contracts with Plaintiff are in violation of § 1507(c)(3) because Plaintiff was not reasonably compensated based on the function of the agent in the sale and service of the policies. *See* Complaint ¶¶ 185-197; 213-237; 253-275, 284-316, 345-346.

5. Defendant FCIC had a duty to require that Defendant ProAg comply with § 1507(c)(3) and failed in that duty. *See* Complaint ¶¶141-152, 245-279, 321-351.

Therefore, there is definite and concrete dispute between the parties whose interests are adverse.

Ripeness can be an issue in obtaining anticipatory relief like declaratory judgments. *Abbott Labs. v. Gardner,* 387 U.S. 136, 149-150 (1967). The Supreme Court held that the dispute must "be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *California,* 593 U.S. at 672; *MedImmune,* 549 at 126–127. The doctrine of ripeness focuses on the conduct of the defendant to determine whether the defendants actions have harmed, are harming, or are about to harm the plaintiff. *Teva Pharmaceuticals USA, Inc. v. Novartis Pharmaceuticals Corp.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007).

Plaintiffs' Complaint alleges that it has been harmed since Plaintiff has had their commissions reduced by millions of dollars from 2021 through present by Defendant ProAg. *See* Complaint ¶¶ 202-209, 290, 300. Postponing the decision would result in Plaintiff losing millions of dollars in agent commissions for the present and future years. Plaintiff suffered an injury in fact, that is concrete, particularized and actual.

Further, this harm can be redressed by judicial relief. Plaintiff is seeking for this Court to declare that Defendant FCIC's must ensure that Plaintiff's contracts with Defendant ProAg are in conformance with the FCIA, regulations, and SRA. Resolution of these declarations against Defendant FCIC in Plaintiff's favor will impact Defendant ProAg because Defendant FCIC will

12

be required to ensure that Defendant ProAg is in compliance with the FCIA and SRA and require that Plaintiff receive reasonable compensation based on its function in the sale and service of the policy the same as other agents performing the same functions with respect to all past and future agent commission contracts with Plaintiff. Therefore, Plaintiff has a right of action against Defendant ProAg for all causes of actions under the Declaratory Judgment Act.

Defendant ProAg also claims that §§ 1507(c)(2) and 1515 do not provide a right of action because Plaintiff is not within any benefited class, no indication of legislative intent, there is no evidence it is consistent with the underlying purpose of the legislation to provide a remedy, and the cause of action traditionally brought under state law. *See* Memorandum page 18. As stated above, Plaintiff never claimed that §§ 1507(c)(2) and 1515 gave rise to its cause of action. Plaintiff brought a declaratory judgment action and has, as stated above, demonstrated that it has met all the requirements to sustain the action.

Further, Defendant ProAg is mistaken because the relevant provision in this case is § 1507(c)(3). That provision is directly related to agent compensation and Plaintiff, as an agent, is part of the class that benefits from the legislation. The plain language of the provision provides the legislative intent as it states that agents "shall be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect." § 1507(c)(3) (Emphasis added). This provision sets the standards for agent compensation, and, given this is mandated, it would create a remedy for agents if AIPs and Defendant FCIC ignored the provision. Lastly, under 7 U.S.C. §1506(l), § 1507(c)(3) preempts state law to the extent that it is in conflict and since this is a declaratory judgment action seeking an interpretation of § 1507(c)(3) and the duties and obligations of Defendant FCIC, state law does not apply.

13

Defendant ProAg also claims "Moreover, nowhere does the FCIA give Plaintiff a right of action against FCIC to enforce compliance of the FCIA under section 515." *See* Memorandum, page 19. First, Plaintiff has not alleged that § 1515 is the basis for its action against Defendant FCIC. Plaintiff alleges that § 1515 creates a duty requiring Defendant FCIC to ensure that all program participants comply with the requirements of the FCIA and contracts. *See* Complaint ¶¶ 36, 37, 142, 258, 329.

Second, this duty to ensure compliance with the FCIA has been recognized by the courts and government oversight bodies. As a government agency relying on taxpayer dollars, Defendant FCIC has a duty to regulate the crop insurance program. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384 (1947)(Agencies may only act in accordance with their statutory authority and all parties are bound even if they are not aware of the statutory limitations). In addition, the courts have held that FCIC has a duty to provide a sound insurance program and comply with its statutory duties. *Rainbow Val. Citrus Corp. v. Federal Crop Ins. Corp.*, 506 F.2d 467, 470 (9th Cir. 1974).

The courts have clearly stated that one of the purposes of FCIC and the Risk Management Agency[3] is to regulate the crop insurance program. *Acceptance Ins. Companies, Inc. v. US*, 583 F. 3d 849, 851 (Fed. Circuit 2009)(An AIP, by voluntarily entering into the <u>federally regulated</u> crop insurance business, relinquished its right to freely insurance policies, in exchange for the benefits of the crop insurance program, such as being reinsured by the government for certain losses"). *Id. at 858*. (Emphasis added). The court held that RMA is not only a reinsurer of the AIPs, but also a regulator of the crop insurance program and that RMA's responsibilities include the administration and oversight of all aspects of the programs authorized under the FCIA. *Id.* at 851. Congress and

---

[3] FCIC and the Risk Management Agency are effectively the same entity whereby the FCIA provides the authority to offer the crop insurance program to FCIC but all employees work for RMA who administers the crop insurance program on behalf of FCIC.

14

the Office of Inspector General also concluded that RMA is responsible for the administration and oversight of programs authorized under the FCIA. *See* Federal Crop Insurance: A Primer | Congress.gov | Library of Congress, Assessment of Risk Management Agency's Oversight of High-Dollar Indemnities.

Therefore, FCIC by its very existence as a government agency, has a duty to administer, oversee, and ensure compliance with the FCIA. *Ausmus v. Perdue*, 908 F.3d 1248 (10th Cir. 2018)("§ 1508(g)(4)(A) imposes an ongoing duty on the FCIC "whenever" it calculates a farmer's actual production history using actual production records. Such an ongoing duty to "apply" § 1508(g)(4) is best understood as a command to implement, not a statement of legal effectiveness.") (Emphasis added). Defendant ProAg would have this Court ignore the role that Defendant FCIC has in the administration, oversight and compliance with the FCIA. Given this duty, it is appropriate for Plaintiff to bring a declaratory judgment action against Defendant FCIC to establish the rights and responsibilities of the parties regarding its duty to enforce compliance with § 1507(c)(3) since that provision is directed at the compensation paid to agents.

Defendant ProAg also claims that since Plaintiffs are not contracted with Defendant FCIC, there is no private right of action. *See* Memorandum page 19. Plaintiff states that agents are not within the class the statute intends to benefit. *Id.* As stated above, Defendant ProAg ignores that § 1507(c)(3) is incorporated into the SRA and into its contracts with Plaintiff and that the SRA requires all policies to be sold and serviced in accordance with the FCIA, including § 1507(c)(3). *See* Sections I and II of the SRA, Defendant ProAg's Exhibit A. Defendant ignores that Defendant FCIC directly regulates agent compensation through the SRA. *See* Section III(f) of the SRA, Defendant ProAg's Exhibit A. While Plaintiff may not contract directly with Defendant FCIC,

15

Defendant FCIC regulates agent compensation that directly affects Plaintiffs. Plaintiff is within the class that § 1507(c)(3) was intended to benefit.

Plaintiff has stated valid claims against Defendant FCIC and Defendant ProAg under the Declaratory Judgment Act. Therefore, Defendant ProAg's Motion to Dismiss should be denied.

**B. Plaintiff is Not Relying on the FCIA to Create a Private Right of Action against AIPs**

Defendant ProAg claims that "Even if Plaintiff did have a valid cause of action against FCIC under these sections, nothing in the sections, nor the identified causes of action, state any request for relief from ProAg—nor could they, as the FCIA does not create a private right of action for Plaintiff." *See* Memorandum, page 20. Again, as stated above, Plaintiff is seeking declaratory judgments and has demonstrated that the Complaint meets the requirements for a valid cause of action against both Defendants under the Declaratory Judgment Act.

The fact that specific damages have not been sought against Defendant ProAg does not preclude a declaratory judgment action. Plaintiff is authorized to seek a declaration of the rights and responsibilities of the parties before filing a claim for damages. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239-241 (1937). The court held that "where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages." *Id*. at 241. As stated above, Plaintiff has alleged valid causes of action against Defendant ProAg under the Declaratory Judgment Act even though it has not sought damages.

Defendant ProAg also claims that § 1507(c)(3) does not set the terms and conditions of relationships between AIPs and agents. *See* Memorandum, page 20. Defendant ProAg claims that

16

§ 1507(c)(3) simply required Defendant FCIC to provide indemnification for agents and that agents will be compensated using premiums paid by farmers. *Id.* Defendant ProAg ignores the language in § 1507(c)(3) that states "in which case the agent or broker <u>shall</u> be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect." (Emphasis added). Defendant ProAg ignores that this provision is incorporated by reference into its contract with Plaintiff. *See* Defendant ProAg's Exhibit C, Article V.S.1. Section 1507(c)(3) is mandatory and expressly addresses the payment of agent commissions and, since agent commission is paid by the AIPs, it sets the terms and conditions of such compensation by AIPs, including Defendant ProAg.

Defendant ProAg suggests that, because the SRA never included the provisions of § 1507(c)(3), it is not applicable. *See* Memorandum page 20. Defendant ProAg ignores that this provision was incorporated into the SRA by reference. *See* Section I of the SRA Exhibit B of Defendant ProAg's Motion to Dismiss; Complaint ¶ 46, 143. Defendant ProAg ignores that the Supreme Court stated that provisions of the FCIA are binding on all parties regardless of whether they are aware of them. *Merrill*, 332 U.S. at 384. Defendant ProAg ignores that when renegotiating the 2011 SRA, Defendant FCIC expressly got involved in agent compensation after the largest AIP failed in 2002 and its oversight was found inadequate and agent compensation at times exceeded the A&O paid to the AIP. *See* GAO-09-445 Crop Insurance: Opportunities Exist to Reduce the Costs of Administering the Program; GAO-04-517 Crop Insurance: USDA Needs to Improve Oversight of Insurance Companies and Develop a Policy to Address Any Future Insolvencies; Agent Compensation - Schemes or Devices | Risk Management Agency. Section III(a)(4) was added to the 2011 and successive SRAs to limit the rate of agent compensation to up to 80 percent

17

of the total amount of A&O subsidy and catastrophic risk protection loss adjustment expense subsidy ("CAT LAE") in the state and this amount may only be exceeded if the AIP has an underwriting gain in the state, which allows payment up to 100 percent of the A&O subsidy and CAT LAE. *See* Defendant ProAg Exhibit B. Prior to this dispute, the issues around agent commissions have always been about overpayment, not underpayment. *See* Agent Compensation - Schemes or Devices | Risk Management Agency.

Lastly, Defendant ProAg claims that even if § 1507(c)(3) did apply to the relationship between it and Plaintiff, Plaintiff still lacks any private right of action. *See* Memorandum page 21. As stated above, Plaintiff's cause of action is a declaratory judgment and Plaintiff has satisfied all the requirements to sustain this action against both Defendant ProAg and Defendant FCIC under the Declaratory Judgment Act, including the issues regarding § 1507(c)(3). Therefore, Defendant ProAg's Motion to Dismiss should be denied.

### IV.    The Court Has Subject Matter Jurisdiction Over All Claims

Defendant ProAg claims this Court lacks subject matter jurisdiction because the Declaratory Judgment Act is not an independent source of jurisdiction. *See* Memorandum pages 21-22. As stated more fully above, the Declaratory Judgment Act does provide subject matter jurisdiction when there is an Article III case of controversy. *California,* 593 U.S. at 672; *MedImmune,* 549 U.S. at 126–127. As stated above, Plaintiff has demonstrated that the requirements for Article III case or controversy have been met.

Defendant ProAg claims that Plaintiff is inappropriately framing causes of action 1, 3, 5, and 7 as declaratory judgment rather than contractual disputes. *See* Memorandum page 22. However, a case arises under federal law, establishing federal question jurisdiction under 28 U.S.C. § 1331, if "a well-pleaded complaint establishes either that federal law creates the cause of

action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (Emphasis added). The federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The federal issue is "substantial" if it is "importan[t] ... to the federal system as a whole." *Id.* at 260.

Defendant ProAg claims that the third cause of action regarding its refusal to accept new policies from agents raise questions of fact, not law. *See* Memorandum page 22-23. However, the Complaint alleges questions of law regarding the meaning of 7 U.S.C. §§ 508(b)(7) and 508(c)(9) and 7 C.F.R. § 457.8(b) as they relate to Plaintiff's allegations that Defendant ProAg violated the SRA by cherry picking policies. *See* Complaint ¶¶ 157-168. These questions of law were raised and disputed. *Id*. Further, these questions are important to a crop insurance program that expressly states that no AIP can deny coverage to any producer unless that producer is ineligible and affects thousands of producers in Texas. *See* Section II(a)(3) of the SRA, Exhibit B to Defendant ProAg's Motion to Dismiss; Risk Management Agency: Policyholder Bill of Rights; MGR-24-003: Notice to Cease and Desist Agent/Agency Contract Terminations | Risk Management Agency. Lastly, the provisions of the FCIA and SRA preempt state law to the extent they are in conflict so there is no disruption of the state-federal balance. 7 U.S.C. § 1506(l); 7 C.F.R. part 400, subpart P. Under the well pleaded complaint rule, Plaintiff has raised a federal question giving rise to the subject matter jurisdiction of this Court regarding the third cause of action.

Defendant ProAg claims that Plaintiff's fifth cause of action case requires a contractual review of its Commission Schedule and whether there was reasonable compensation. *See* Memorandum page 23. Defendant ProAg ignores that reasonable compensation is determined by

19

§ 1507(c)(3). As stated above, the Complaint expressly raises the question of an interpretation of § 1507(c)(3) as it relates to the SRA and Defendant ProAg's contracts with Plaintiff. *See* Complaint ¶¶ 8, 9, 13-15, 186-205, 215-237, 239. Further, Plaintiff's relief is dependent on the resolution of this interpretation, making it a federal question. *Empire Healthchoice Assurance, Inc.,* 547 U.S. at 690. Therefore, a federal question was raised, is disputed, and, as argued above, is important to the crop insurance program because there are hundreds of agents in Texas, and potentially thousands of agents nationwide who are affected by an interpretation of § 1507(c)(3). Further, § 1507(c)(3) preempts state law to the extent that it is in conflict so there is no disruption of the state-federal balance. *See* 7 U.S.C. § 1506(l); 7 C.F.R. part 400, subpart P. Under the well pleaded complaint rule, Plaintiff has raised a federal question giving rise to the subject matter jurisdiction of this Court regarding the fifth cause of action.

Defendant ProAg claims that the seventh cause of action requires a determination of whether the contractual exceptions in the 2021 Commission Schedule were valid. *See* Memorandum page 23. Defendant ProAg ignores that this issue is directly tied to the interpretation of section 1507(c)(3). *See* Complaint ¶¶ 190-237. Plaintiff's right to relief in its seventh cause of action depends on the resolution of this interpretation, making it a federal question. *Empire Healthchoice Assurance, Inc.,* 547 U.S. at 690. Therefore, a federal question was raised, is disputed, and, as argued above, is important to the crop insurance program because there are there are hundreds of agents in Texas, and potentially thousands throughout the country that are in a similar position to Plaintiffs and who have been harmed by the conduct alleged. Further, § 1507(c)(3) preempts state law to the extent that it is in conflict so there is no disruption of the state-federal balance. *See* 7 U.S.C. § 1506(l); 7 C.F.R. part 400, subpart P. Under the well pleaded

complaint rule, Plaintiff has raised a federal question giving rise to the subject matter jurisdiction of this Court regarding the seventh cause of action.

Therefore, Defendant ProAg Motion to Dismiss causes 1, 3, 5, and 7 for lack of subject matter jurisdiction should be denied.[4]

### V.  <u>Case Presents Proper Use of Declaratory Judgment</u>

Plaintiff agrees that whether to accede to Plaintiff's request for declaratory relief under the Declaratory Judgment Act lies within this Court's discretion. *Wilton v Seven Falls Co.,* 515 U.S. 277, 286 (1995); *see also Pub. Affairs Press v. Rickover,* 369 U.S. 111, 112 (1962)("The Declaratory Judgment Act was an authorization, not a command."). However, the court's discretion is not absolute, and it must be exercised wisely. *Pub. Affairs Press,* 369 U.S. at 112 ("[A] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination."). This means that a valid declaratory judgment claim should ordinarily be entertained, except if the circumstances indicate that there is a reason for the court not to do so. *Wilton,* 515 U.S. at 288 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").

Defendant ProAg claims that Declaratory Judgment is inappropriate in this case because it involves a review of Defendant FCIC's discretion in enforcing the FCIA and issues of fact and law. *See* Memorandum pages 24-25. Defendant ProAg provides a lengthy recitation of case law regarding Article III case of controversy but never claims that the Complaint does not meet the standards for an Article III case or controversy. *See* Memorandum page 24. As demonstrated above,

---

[4] Defendant ProAg also asserts that the undersigned counsel may be required to be a witness in this and may be required to recuse herself or amend the Complaint. *See* Memorandum page 23. All references to the undersigned counsel refer to specific exchanges between counsel and Defendant ProAg that are documented. These documents will be placed into evidence and can speak for themselves.

Plaintiff has established valid declaratory judgment claims satisfying Article III requirements and that declaratory judgments are appropriate for this case.

Defendant ProAg also simply states that declaratory judgments can be dismissed for equitable, prudential, or policy arguments but never asserts any of these bases in support of its Motion to Dismiss. *Id.* Instead, Defendant ProAg quotes "In the D.C. Circuit, two criteria are ordinarily relied upon: 1) whether the judgment will serve a useful purpose in clarifying the legal relations at issue, or 2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Glenn v. Thomas Fortune Fay,* 222 F. Supp. 3d 31, 36 (D.D.C. 2016). *See* Memorandum page 24. Again, other than this recitation of case law, Defendant ProAg does not provide any argument that these standards are not met in this case.

As stated above, judgment will serve the useful purpose of clarifying: 1) the interpretation of § 1507(c)(3) and its application to the SRA and Plaintiff's contracts with Defendant ProAg; 2) the obligations of AIPs under the FCIA, regulations, and SRA to insure all producers unless they are ineligible; 3) whether loss ratios can be used to reduce agent commissions; and 4) the duties and obligations of Defendant FCIC to ensure that all parties are in compliance with the FCIA, regulations, and contracts. This is the purpose of declaratory judgment.

In addition, Defendant ProAg's reductions agent commission has created uncertainty, insecurity and controversy for Plaintiffs and their ability to continue to adequately service policies after such a drastic reduction in commission. A judgment will end this uncertainty, etc. by establishing the standard § 1507(c)(3) sets for agent commissions, directly affecting the SRA and Plaintiff's contracts with Defendant ProAg. Removing this uncertainty is the purpose of declaratory judgment.

Defendant ProAg also suggests that Defendant FCIC has complete discretion in the enforcement of a statute so it should not be subject to judicial review. *See* Memorandum page 24. Defendant ProAg relies on *Heckler v. Chaney*, 470 U.S. 821, 835 (1985). However, subsequent courts have distinguished *Chaney* and state the courts have the discretion to review an agency's decision regarding enforcement stating "[W]hen a legal challenge focuses on an announcement of a substantive statutory interpretation, courts are emphatically qualified to decide whether an agency has acted outside of the bounds of reason.... Even if a statutory interpretation is announced in the course of a nonenforcement decision, that does not mean that it escapes review altogether." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock,* 783 F.2d 237, 245–46 (D.C.Cir.1986)(Emphasis added); *National Wildlife Federation v. U.S. E.P.A.,* 980 F.2d 765, 773 (D.C. Cir. 1992) *see also ICC v. Bhd. of Locomotive Engineers,* 482 U.S. 270, 289 & n. 1 (1987)("[w]hen an agency denies rehearing on a legal ground, such as when it premises its decision on its reading of the statute, the reviewing court has a significant role to play; it must decide whether that reading can be sustained, or whether it is contrary to law").

The courts have held that though courts are not qualified to assess enforcement strategies, they are uniquely qualified to decide a legal challenge to an agency's substantive statutory interpretation. *Arent v. Shalala,* 866 F.Supp. 6, 13 (D. D.C. 1994). The court further held that when the plaintiff is challenging the interpretation itself and its implementing regulations, this is not the type of discretionary judgment concerning the allocation of enforcement resources that *Heckler* shields from judicial review. *Id.* citing *Edison Electric Institute v. U.S. EPA,* 996 F.2d 326, 333 (D.C.Cir.1993). "While courts should exercise caution when adjudicating claims involving matters of military affairs and national security, that caution does not give DOD carte

23

blanche authority to act in contravention of ... applicable statutes." *Kirwa v. United States Department of Defense*, 285 F. Supp. 3d 257, 265–66 (D. D.C. 2018).

This case rests primarily on the interpretation of § 1507(c)(3) and Defendant FCIC's interpretation that allows it to take no action against Defendant ProAg for alleged violations. The courts are clear that cases involving statutory interpretations provide an exception to *Heckler* and grants this Court the discretion to hear this case.

Further, an exception to *Heckler* exists when an agency has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities. *Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 380 F.Supp.3d 3, 40 (D. D.C. 2019). This case presents such an extreme. This is a case where Plaintiff's commission was first reduced by 50 percent based on loss ratio when other agents performing the same services were still receiving 80 percent of the A&O. *See* Complaint ¶¶ 75-77, 197, 201, 204, 285. However, in 2024, Defendant ProAg further reduced agent commissions from 40 percent of the A&O to 5 percent of the A&O when other agents performing the same function were still receiving 80 percent. *See* Complaint ¶¶ 90, 203. The Complaint puts this into perspective stating that other agents performing the same duties and insuring the same amount of premium ($2,600,000) would receive approximately $416,000 but Plaintiff was paid approximately $26,000, almost 94 percent less than other agents performing the same duties and tasks. *See* Complaint ¶ 207. Plaintiff raised this with Defendant FCIC in Plaintiff's February 5, 2025, letter to Defendant FCIC and it still did nothing. *See* Complaint ¶¶ 124, 207. This reduction in agent compensation is so extreme as to demonstrate Defendant FCIC's abdication of its statutory responsibilities. Therefore, this Court has the authority to review Defendant FCIC conduct in this case.

24

Defendant ProAg also claims that this Court should dismiss Plaintiff's declaratory judgment claims because they raise issues of public importance that are better decided in the context of a fully litigated case. *See* Memorandum page 24. In support, Defendant ProAg cites to *FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 117 (D.D.C. 2015) (declining to use its discretion to hear cases the result of which would significantly implicate Amtrak's current operations). However, *Fiberlight* and the cases cited therein point to much larger issues than raised here. *FiberLight* involves Amtrak's right to control public access to its stations. *Id. Moore v. U.S. House of Representatives,* 733 F.2d 946, 956 (D.C.Cir.1984) involves issues involving the separation of powers. *Flynt v. LFP, Inc.,* 245 F.Supp.2d 94, 109–10 (D.D.C.2003), *aff'd sub nom., Flynt v. Rumsfeld,* 355 F.3d 697 (D.C.Cir.2004) involved a question over an important but "premature" facial First Amendment challenge. These cases involve constitutional issues but the case before this Court simply raises the issues of a statutory interpretation in the context of crop insurance and its effects are limited to the contracts of the parties.

Defendant ProAg also asserts that this case would lead to drastic changes in the relationships between Defendant FCIC, AIPs, and agents. *See* Memorandum page 25. However, Defendant ProAg provides no facts to support this assertion. In fact, Plaintiff is not asking this Court to set the reasonable compensation as a factual matter. Plaintiff is asking this Court to recognize that Defendant ProAg's contracts already set reasonable compensation for agents in Texas whose loss ratio is above .9 and all other agents around the country, with few other exceptions, at 80 percent of the A&O. *See* Plaintiffs Exhibit A; Complaint ¶¶ 75-77, 197, 201, 204, 285. Therefore, a ruling in Plaintiff's favor would not lead to drastic changes in the relationships between the parties or the implementation of the FCIA. It would simply eliminate the uncertainty,

25

insecurity, and controversy regarding the basis for reductions in agent commissions and establish compensation at the current levels set by Defendant ProAg in its existing contracts with agents.

Defendant ProAg claims "in cases including what are essentially contractual claims over compensation, D.C. courts have routinely dismissed declaratory judgment claims. For example, in *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, the plaintiff sought a declaratory judgment regarding its right to feeds under the parties' contract. 793 F. Supp. 2d 124, 125 (D.D.C. 2011)." *See* Memorandum page 25. However, *Bazarian* was dismissed because the case was not yet ripe because the contract depended on a contingency that had not yet occurred, so the case or controversy was not met. *Id.* This is not the case here. As stated above, Plaintiff has met all elements of an Article III case or controversy.

Defendant ProAg also cites *Gibson v. Liberty Mut. Grp., Inc.,* 778 F. Supp. 2d 75, 79 (D.D.C. 2011) for the claim that when the issues are purely factual declaratory judgment is not appropriate. *See* Memorandum page 25. *Gibson* involved a claims dispute between an insurance company and an insured and the payout under the policy. 778 F. Supp. 2d at 79. Defendant ProAg states that several of Plaintiff's allegations require a factual determination. *See* Memorandum page 25. However, the case before this Court involves first, a question of statutory interpretation of § 1507(c)(3) and then the question becomes what the effect of this interpretation has on the SRA and the contract between Plaintiff and Defendant ProAg. There are also questions regarding interpretations of the FCIA, SRA and regulations regarding the ability of an AIP to deny coverage for certain producers and whether those provisions preclude Defendant ProAg from cherry picking policies. These are questions of law, not fact. As argued more fully above, these issues are appropriate for declaratory judgment.

To the extent that factual determinations may be required to resolve these issues, for the purpose of a motion to dismiss, the facts alleged in Plaintiff's Complaint are presumed to be true and any inferences drawn to favor the Plaintiff. *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 678 (2009); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000).

Defendant ProAg also claims that the determination of "reasonable compensation" is a factual question to be determined by the finder of fact. *See* Memorandum page 26. Defendant ProAg seems to suggest that Plaintiff is asking this Court to set the reasonable compensation at some percentage. That is not correct. Plaintiff is seeking an interpretation of "reasonable compensation" "recognizing the function of the agent or broker to provide continuing services while the insurance is in effect." § 1507(c)(3). As stated above, Plaintiff asserts that Defendant ProAg already established such reasonable compensation at 80 percent of the A&O for a vast majority of its agents performing the same function and is simply asking this Court to adopt that compensation for Plaintiffs.

Further, at its heart is the meaning of § 1507(c)(3). Defendant ProAg cites to *Texas Neighborhood Servs. v. United States Dep't of Health & Hum.* Servs., 875 F.3d 1, 6 (D.C. Cir. 2017) to hold that reasonable compensation is factual question. In *Texas Neighborhood Servs.,* the court looked at the question of reasonable compensation whether the Board applied the proper standard, stating the Board "looked principally at the reasonableness of bonus payments as a percentage of total compensation, and failed to consider whether overall compensation was nonetheless reasonable because it was comparable to that paid for similar work in the relevant market. By disregarding a definition that was "still on the books," the Board acted arbitrarily. *Id.* The court concluded that the standard was a legal issue. This is exactly what Plaintiff is seeking, whether Defendant FCIC applied the correct standard when determining the meaning of §

27

1507(c)(3) and whether Plaintiff's contracts with Defendant ProAg are in conformance with this interpretation.

Defendant ProAg also cites to *Jones Bros. Bakery v. United States*, 411 F.2d 1282, 1285 (Ct. Cl. 1969). In that case, the court agreed that the standard was a "comparison between the compensation that is under consideration and the prevailing rates of compensation paid to the holders of comparable positions by comparable companies within the same industry." *Id.* However, the court concluded that the plaintiff did not provide adequate evidence of the comparability. This is distinguished from the case before this Court where Plaintiff alleges Defendant ProAg's contracts with agents show the comparability with other agents performing the same work and receive 80 percent of the A&O as compensation. *See* Plaintiff's Exhibit A; Complaint ¶¶ 75-77, 197, 201, 204. As stated above, Plaintiff is simply asking this Court to recognize that ProAg has already established reasonable compensation as 80 percent of the A&O and apply that to Plaintiffs.

Additionally, Defendant ProAg misunderstands Plaintiff's argument regarding FCIC's 80 percent cap. *See* Memorandum page 26. Plaintiff agrees with Defendant ProAg that this 80 percent is a ceiling on the amount of compensation paid to agents under the SRA. However, Plaintiff also alleges that Defendant ProAg's past and current contracts show that agents performing similar services receive 80 percent of the A&O as agent commission. *See* Plaintiff's Exhibit A; Complaint ¶¶ 75-77, 197, 201, 204. Plaintiff's argument is that Defendant ProAg already set this as the standard for reasonable compensation under § 1507(c)(3).

Defendant ProAg argues that this case is a contractual suit requiring determinations of fact and review of Plaintiff's breach of contract claims and that Plaintiff never alleged a claim of breach of contract. *See* Memorandum page 26. As stated more fully above, Plaintiff's claims are predicated on the interpretation of § 1507(c)(3) and the effect this provision has on the SRA and

28

Plaintiff's contracts with Defendant ProAg. Plaintiff does not allege a breach of contract. Further, as stated above, this Court does not need to make findings of fact regarding reasonable compensation based on the function of the agent in the sale and service of the policy because Defendant ProAg has already established such compensation in its contracts that apply to almost all agents around the country, with just a few exceptions that Plaintiff argues are improper. Plaintiffs claim that the contracts must be consistent with the interpretation of § 1507(c)(3) and actions must be taken by Defendant FCIC to ensure compliance.

This case presents a classic case for declaratory judgment, seeking interpretations of statute, regulation, and contract to determine the rights and other legal relations of any interested party seeking such declaration. *MedImmune, Inc.,* 549 U.S. at 127. Therefore, Defendant ProAg's Motion to Dismiss should be denied.

## VI.    This Court Should Not Compel Arbitration

Defendant ProAg claims that this Court should compel arbitration because the contract with Plaintiff explicitly states they are subject to arbitration. *See* Memorandum page 28. However, the contract states the parties "**will resolve any dispute between them arising under this Agreement by binding arbitration under the rules of the American Arbitration Association**." *Id*. This argument presumes that Plaintiff brought a breach of contract case. Except for the question of the validity of the 2024 amendment to the Commission Schedule, Plaintiff never alleged that it was not paid in accordance with the contract. Plaintiff has not sought any damages under the contract. As argued above, this case is a declaratory judgment action to determine the rights and relationships of the parties with respect to the FCIA, regulations, SRA and Plaintiff's contracts with Defendant ProAg. Only the district courts have the authority to hear Declaratory Judgment

29

Act cases. 28 U.S.C. § 2201. There is no authority for an arbitrator to hear a declaratory judgment claim.

Further, as argued above, the main issues in this case lie against Defendant FCIC for failure to exercise its duty to 1) ensure that agent contracts conform to § 1507(c)(3) regarding agent compensation and 2) preclude Defendant ProAg from cherry-picking Plaintiff's policies.[5] Since Defendant FCIC is not a party to the contract between Plaintiff and Defendant ProAg, the arbitration clause is not applicable to Defendant FCIC. *Olsen v. U.S. ex rel. Federal Crop Insurance Corp.*, 334 Fed.Appx. 834 (9th Cir. 2009). Therefore, Defendant FCIC's request that this order compel arbitration should be denied.

## CONCLUSION

For these reasons, this Court should deny Defendant ProAg's motion to dismiss.

Dated: February 22, 2026     Respectfully submitted,

<u>/s/ Kimberley Arrigo</u>

Kimberley Arrigo (DC Bar Number 983330)
Arrigo Risk Consulting PLLC
3813 Bayview Dr.
Chesapeake Beach, MD 20732
703-298-6245
*Counsel for Plaintiff Altman Group, Inc.*

---

[5] In addition, the claim regarding cherry-picking policies does not arise under the contract between Plaintiff and Defendant ProAg and, therefore, does not fall within the arbitration clause.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE ALTMAN GROUP, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 25-2193 |
| v. | ) ) | |
| FEDERAL CROP INSURANCE CORPORATION, et al., | ) ) ) | |
| | ) ) | |
| Defendants. | ) ) | |

**[PROPOSED] ORDER**

UPON CONSIDERATION of the Defendant Producers Agriculture Insurance Company's Motion to Dismiss or in the alternative Compel Arbitration of Plaintiff's Complaint against Defendant Producers Agriculture Insurance Company in the above captioned matter, and the entire record herein, it is hereby

ORDERED that Defendant Producers Agriculture Insurance Company's Motion to Dismiss or in the alternative Compel Arbitration shall be DENIED.

SO ORDERED:

_____                    _____
Date                                                          Sparkle L Sooknanan
                                                                United States District Judge