**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Case No. 1:25-cv-2193 (SLS)

PLAINTIFF ALTMAN GROUP, INC.'S RESPONSE TO
PRODUCERS AGRICULTURE INSURANCE COMPANY'S MOTION
TO DISMISS OR IN THE ALTERNATIVE COMPEL ARBITRATION

# Exhibit A

# APPENDIX II
# PLAN OF OPERATIONS

The Plan of Operations (Plan) filed by the Company shall contain the information stated herein and the Company shall certify the accuracy and completeness of the Plan. Information, documents, or forms, are to be identified in the Plan as Exhibits to correspond with each section and paragraph. The Company shall file all Exhibits required herein annually, and, as necessary, file any addition or revision to specific Exhibits during the reinsurance year. Any Exhibit not filed when required may delay approval of the Plan. The Company may be required to provide additional information as may be necessary to clarify or provide further detail in support of the Company's or MGA's financial or operational capacity.

## SECTION I. INSURANCE COMPANY GENERAL

(a)     The name, address, phone number, web site address, and tax identification number of the Company. (Note: If the Company's Plan is approved, information from this Exhibit other than tax identification number will be released on RMA's public web site.)

(b)     The names, address, and tax identification numbers of all PICs and, upon request, a copy of agreements between the Company, or its MGA, and PICs.

(c)     If the Company elects to use an MGA:

(1)     The name, phone number, address, web site address, and tax identification number of the MGA; (Note: If the Company's Plan is approved, information from this Exhibit other than tax identification number will be released on RMA's public web site.)

(2)     A copy of all agreements between the MGA and the Company that relates to eligible crop insurance contracts reinsured under this Agreement; and

(3)     A letter from an officer of the Company that empowers the entity identified in subparagraph (c)(1) to act as the MGA for the Company for the reinsurance year. The officer must be listed in the Company's Annual Statement filed with the State in which the Company is domiciled and have the authority to act on behalf of the Company.

## SECTION II. CERTIFICATIONS

The Company shall provide a certification statement referencing each item in this section, signed by the person authorized to sign the Agreement on behalf of the Company, unless otherwise specified.

(a)    In accordance with section I of Appendix I, the Company shall submit its certification regarding procurement integrity.

(b)    In accordance with section II of Appendix I, the Company shall submit its certification regarding a drug free workplace.

(c)    In accordance with section III of Appendix I, the Company shall complete and submit OMB Form LLL, Disclosure of Lobbying Activities, and specify the period of time to which such completed form applies.

(d)    In accordance with section IV(p) of the Agreement, the Company shall submit its certification regarding compliance with discrimination laws.

(e)    The Company shall submit its certification that the Company, its MGA as applicable, its affiliates, and its PICs are properly licensed under the insurance laws or regulations of all States in which the Company sells and services eligible crop insurance contracts reinsured under this Agreement.

(f)    The Company shall submit its certification regarding the Company's ability to meet its obligations under the current and any prior Agreement, as applicable.

(g)    The Company shall submit its certification regarding non-disclosure, as specified in section XV(a)(9) of Appendix I.

(h)    The Company shall submit its certification that the information required by US Federal Contractor Registration (www.sam.gov) has been provided. This information will be used to process payments.


## SECTION III. FINANCIAL INFORMATION

(a)    Upon specific request by FCIC, the Company shall provide the following:

(1)    The Statutory Annual Statement for the most recent reporting year.

(2)    The Statutory Quarterly Statements for the most recent quarter and throughout the reinsurance year, within 10 days after such statements are filed with the State.

(3)    The Statutory Management Discussion and Analysis, within 10 days of making the filings in subparagraph (c).

(4)    Actuarial Opinion of Reserves for the most recent reporting year, by June 1 preceding the start of the reinsurance year.

(5)    Insurance Regulatory Information System (IRIS) Ratios.

(6)     The Statutory Insurance Expense Exhibit.

(b)     The Company shall provide the following:

(1)     If prepared in the normal course of business, annual audited GAAP financial statements for the previous reporting year, by June 1 preceding the start of the reinsurance year.

(2)     If prepared in the normal course of business, Quarterly GAAP financial statements throughout the reinsurance year, within 45 days of the end of each quarter.

(3)     If prepared in the normal course of business, annual Securities and Exchange Commission filings (i.e. 10K), if applicable, within 30 days of making such filings.

(4)     If prepared in the normal course of business, quarterly Securities and Exchange Commission filings (i.e. 10Q) within the reinsurance year, if applicable, within 30 days of making such filings.

(5)     Controls or management recommendations received from an independent auditor regarding the Company, by June 1 preceding the start of the reinsurance year.

(6)     The most recent State Insurance Department Examination Report, within 30 days of receipt by the Company of such report.

(c)     If an MGA is designated, the MGA shall provide the following:

(1)     Annual audited GAAP financial statements for the previous calendar or fiscal year, as applicable, by June 1 preceding the start of the reinsurance year.

(2)     Quarterly GAAP financial statements throughout the reinsurance year, within 45 days of the end of each quarter.

(3)     If prepared in the normal course of business, annual Securities and Exchange Commission filings (i.e. 10K), within 30 days of making such filings.

(4)     If prepared in the normal course of business, Quarterly Securities and Exchange Commission filings (i.e. 10Q) within the reinsurance year, within 30 days of making such filings.

(5)     Internal controls or management recommendations received from an independent auditor regarding the MGA, by June 1 preceding the start of the reinsurance year.

(d)     The Company shall provide an explanation for any ratio falling outside the requirements of 7 C.F.R. §§ 400.162.

(e)     Upon request the Company shall provide a description of all financial relationships that pertain to crop insurance business reinsured under this Agreement.

(f)     The Company shall provide Agent Compensation Reports, itemizing agent commissions and other agent compensation for eligible crop insurance contracts reinsured by FCIC as specified in the Agent Compensation Template and completed for the:

(1)     Previous reinsurance year's actual data certified by a financial officer, authorized by the Company, as being in compliance with FCIC procedures;

(2)     Current reinsurance year's estimated data; and

(3)     Upcoming reinsurance year's projected data.

(g)     The Company shall provide Loss Adjustment Expense Reports, itemizing loss adjuster expenses for eligible crop insurance contracts reinsured by FCIC, as specified in the Loss Adjustment Expense Template and completed for the:

(1)     Previous reinsurance year's actual data certified by a financial officer, authorized by the Company, as being in compliance with FCIC procedures;

(2)     Current reinsurance year's estimated data; and

(3)     Upcoming reinsurance year's projected data.

(h)     The Company shall submit Total Expense Reports, itemizing total expenses for all eligible crop insurance contracts reinsured by FCIC, prepared according to the National Association of Insurance Commissioners Annual Statement Instructions, as specified in the Total Expense Template, and to be completed for the:

(1)     Previous reinsurance year's actual data certified by a financial officer, authorized by the Company, as being in compliance with FCIC procedures;

(2)     Current reinsurance year's estimated data; and

(3)    Upcoming reinsurance year's projected data.

(i)    Posted reserves for which estimated liability exceeds five percent of policyholder surplus for:

(1)    All open contingent liabilities; and

(2)    All pending arbitration, mediation, or litigation.

(j)    Upon request, the Company, and MGA if applicable, shall provide one or more of the following:

(1)    Actual and estimated cash flow documentation;

(2)    Copies of all line of credit agreements with financial institutions used to fund any expenses, including amounts due FCIC; or

(3)    Any other financial information related to the Company or the MGA that would assist FCIC in determining the financial capacity to perform under the terms of this Agreement.

## SECTION IV. INSURANCE OPERATIONS

The Company's Plan shall include:

(a)    The name, title, mailing address, e-mail address, office telephone numbers, and fax telephone numbers of the officer or employee authorized by the Company to sign and certify the Monthly Settlement Report. Any changes regarding the officer or employee shall be provided to FCIC in writing prior to the submission of the next Monthly Settlement Report.

(b)    The names, titles, mailing addresses, e-mail addresses, office telephone numbers, and fax telephone numbers of at least two officers or employees authorized by the Company, and two officers or employees authorized by the MGA, if an MGA is designated by the Company, as managers of the eligible crop insurance contracts reinsured under the Agreement. Each person will act as liaison or contact between the Company and FCIC regarding this Agreement.

(c)    The names, mailing addresses, e-mail addresses, office telephone numbers, and fax telephone numbers of the office of the Company, or any entity, that qualifies as a service provider and a description of the services it provides.

(d)    The names, mailing addresses, e-mail addresses, office telephone numbers, and fax telephone numbers of all regional offices and service centers operated by the

Company or its MGA that provides a service related to eligible crop insurance contracts reinsured under this Agreement and a description of the services they provide.

(e)    An organizational chart showing the names and positions of individuals performing the following functions with respect to Federal crop insurance operations: chief executive officer, chief operations officer, chief financial officer, and the highest ranking individuals responsible for information technology, underwriting, claims, quality control, training and development, sales and marketing, compliance, and reinsurance. If an individual performs more than one of the foregoing functions, the chart shall so indicate. Any changes to the information contained in this chart shall be reported within 30 days to FCIC in writing.

(f)    The name and address of the Company or MGA, if applicable, and the bank that will make Electronic Funds Transfer payments to FCIC for the Company.

(g)    The name, street address, city, county, state, country, city code, county code, state code, country code, (codes can be obtained from http://www.itl.nist.gov and http://www.itl.nist.gov/itl) and Congressional District for the organization to whom payments from FCIC should be remitted for amounts due on Monthly and Annual Settlement reports.

(h)    A declaration as to the Company's intention to use the Escrow Agreement and associated procedures, for reimbursement by FCIC to cover losses paid by the Company. If the Company elects to use the Escrow Agreement, the Company shall provide the following (a copy may be provided if the required documents were provided in a prior reinsurance year and no changes have been made):

    (1)    An executed copy of the agreement regarding the Reinsurance Escrow Arrangement between the Company and FCIC; and

    (2)    An executed copy of the Escrow Agreement between the Bank and FCIC.

(i)    The Training and Performance Evaluation Plan (TPEP) and the Training and Performance Evaluation Report (TPER) required in section II of Appendix IV. The TPEP will be approved if all elements identified in Appendix IV are contained therein. Approval of the TPEP in the Plan of Operations is not a determination of the sufficiency of the Company's training and evaluation program.

(j)    The Company's quality control information required in section I(a) of Appendix IV. The quality control information provided by the Company will be approved if all elements identified in section I(a) of Appendix IV are contained therein and such approval with the Plan of Operations is not a determination of the sufficiency of the Company's quality controls.

(k)    With respect to section II(a)(5) of the Agreement:

(1)    The Company shall review its contract arrangements with any affiliate that is also a cooperative or trade association (or any affiliate that, in turn, has a contractual arrangement with a cooperative or trade association) to determine whether the cooperative or trade association seeks to qualify for payments to producers under section 508(b)(5)(B) of the Act (7 U.S.C. § 1508 (b)(5)(B)). If a cooperative or trade association seeks to qualify under section 508(b)(5)(B) of the Act, the Company shall submit the items listed below and receive written FCIC approval before the cooperative or trade association will be deemed to qualify under section 508(b)(5)(B) of the Act.

(A)    The names, addresses, and telephone numbers of each cooperative association or trade association with which the Company or its affiliates intends to enter into a licensing or other financial agreement or contract authorized by sections 508(b)(5)(B) , or has entered into such agreements;

(B)    A copy of the agreement or contract with the cooperative association or trade association and a list of the states where the cooperative association or trade association will return all or part of the CAT administrative fee received from the Company to its producers; and

(C)    For each State listed in subparagraph (B), a letter from the State Insurance Department stating whether the payment of all or a portion of the CAT administrative fees on behalf of producers is in compliance with the rebating laws of such State.

(2)    For those cooperative or trade associations previously determined by FCIC to have qualified under section 508(a)(9)(B)(iii) of the Act, the Company shall provide a current certification from an officer of the cooperative or trade association that it will make any payments to its producers during the reinsurance year under the same terms and conditions under which it received original approval from FCIC.

(l)    E-Business Implementation Plan: The Company shall include the following information to demonstrate compliance with the Freedom to E-File Act and section 508 of the Rehabilitation Act (29 U.S.C. § 794(d)).

(1)    The process the Company will use to provide and receive electronically all required forms and other information concerning the Federal crop insurance program. The Company shall provide a description of:

(A)    The process the Company will use to allow producers to file electronically all paperwork required for participation in the program.

(B)    The type of electronic signature that will be used by producers.

(C)    The name, address and e-mail address for one contact person with the vendor being used to provide electronic signatures.

(D)     The security measures the Company will use to protect the confidential nature of the data and information submitted by producers from being reviewed, revised or otherwise used by unauthorized persons. A third-party certification of security measures shall be obtained from a recognized security certification firm and shall be provided.

(E)    The process the Company will use to document revisions to data and information submitted by producers.

(F)    The storage, backup and retention procedures being used by the Company for electronically filed documents. Provide the name, address, and phone number for one contact person for the Company who manages the storage and backup procedures for the Company.

(2)    The names, URL's, facsimile numbers, and mailing addresses of each location where producers may electronically access and file the paperwork required for participation in the program.

(3)    Describe the directions being provided with respect to how to access the information and forms, properly completing and submitting them; meeting filing deadlines; obtaining user ID and password, etc.

(4)    The online responsibilities of the crop insurance agent to each producer who files or retrieves required paperwork electronically with the Company.

(5)    The process for obtaining consent from the producer to electronically conduct crop insurance business on a partial or complete basis with the Company.

(6)    Provide the procedures a producer must use to withdraw consent to electronically conduct crop insurance business on a partial or complete basis with the Company.

(7)     Provide the procedures that a producer must use to request a paper copy of an electronic record.

(8)     The statement of the required hardware and software needed by a producer to access, obtain, and retain electronic documents from the Company.

(m)   A general description of the Company's Information Technology architecture and operating environment (e.g., hardware and software) to establish operating capacity and compatibility with RMA systems, including whether these systems are managed in-house or through service providers, and the names of any such service providers. The description should, at a minimum, include the types and major version numbers of operating systems and databases; major programming languages and software products; and the name and major version number, if applicable, of any Company developed system that interacts with RMA systems, including a general description of the network architecture and security capabilities of such systems and industry standards or methodologies used for data exchange and software development.

(n)    A complete description of the process the Company will use to retain all records relative to eligible crop insurance contracts reinsured under this Agreement (e.g. applications, acreage reports, summaries of coverage, claims of loss, etc.).

(1)     The description shall include the office addresses and telephone numbers of the locations where such records are retained.

(2)     If records are retained by sales agencies or sales agents, the Company shall report those records' location(s) in accordance with Appendix III.

(3)     The description shall include a certification that the Company has in place the security measures sufficient to ensure the confidentiality, integrity, and availability of any records in a manner consistent with FISMA.

(4)     If records are kept electronically, the description shall include the processes and procedures for electronic storage and retrieval of such records, including locations of the principal and backup server locations.

(o)    If requested by FCIC, any information related to the Company or MGA that would assist FCIC in determining the operational capacity to perform under the terms of this Agreement.

## SECTION V. FCIC REINSURANCE BUSINESS PLAN

The Plan shall include:

(a)     The maximum reinsurable net book premium volume for which the Company requests reinsurance. (This may be more than the total provided for item (V)(b)).

(b)     A designation as to the States in which the Company seeks to be authorized to sell and service eligible crop insurance contracts and estimates of the net book premium assigned to each fund within each designated State as specified in the Estimated Premium Template.

(c)     A declaration of the percent of the net book premiums and associated liability for ultimate net losses the Company will retain in the Commercial Fund for each State designated in accordance with section V(b), as specified in the Commercial Fund Template.

  (1)     Selling and servicing eligible crop insurance contracts in a State for which no declaration has been made by the Company under this subsection will result in the automatic designated of a retention of 100 percent net book premium and associated liability for ultimate net losses for such State.

  (2)     In the case of the Company acquiring another AIP, the Company merging with another AIP, or the Company being acquired by another AIP, and the percentage declarations for any State made under section V(c) are different between the Company and the other AIP, the Commercial Fund retention percentage for the combined net book premiums and associated liability in such States will be deemed by FCIC to be the higher percentage.

(d)     The Company's intention to reinsure a portion of its net liability (after FCIC reinsurance) in accordance with section II(b)(11) of the Agreement. The Company shall submit, within 10 days of its receipt of the executed reinsurance documentation, a copy of the reinsurance documentation (agreements or cover notes) related to eligible crop insurance contracts reinsured under this Agreement. The reinsurance documentation shall be executed by all parties and include:

  (1)     The percent subscribed by each reinsurer to each arrangement, treaty, or binder, and the names of each reinsurer, intermediary, or broker; and

  (2)     A description of the type of reinsurance, retentions, attachment points and limits, aggregate limits, minimum deposit, premium rates, and all other applicable terms.

## SECTION VI. RISK ASSESSMENT AND CONTINGENCY PLAN

The risk assessment shall consist of, at a minimum, the following:

(a)     A copy of the latest maximum probable loss risk assessment, whether prepared by or on behalf of the Company. The assessment shall detail the magnitude and frequencies of the risks assessed and include a description of the methodology used.

(b)     For each of the risks listed in subsection (c):

(1)     An estimate of the probability of occurrence;

(2)     A rationale for the estimate;

(3)     An assessment of the impact on the Company; and

(4)     A contingency plan for how the Company will be able to meet the obligations under the Agreement should the event described by such risk occur. The plan shall describe:

(A)     How the Company will ensure that sufficient resources will be available to continue operations and service eligible crop insurance contracts for current and any previous reinsurance years, as applicable;

(B)     How the Company would meet its obligations for continuity of indemnity payments to producers, to accurately calculate premium and indemnities, to bill premium timely, and to prevent data corruption;

(C)     If the Company uses an MGA identify how the Company will obtain or retain sufficient financial and operational capacity to manage a delivery system through resources other than those currently provided by the MGA;

(D)     How the Company will ensure that sufficient cash resources will be retained to continue servicing operations and meet all requirements of the Agreement;

(E)     How the Company will ensure that it retains sufficient expertise in crop insurance sales, underwriting, loss adjustment, quality control, data processing, and all other facets of crop insurance sales and service to continue operations until all requirements of the Agreement have been met; and

(F)     The physical security of current and backup systems; how backup systems will be deployed in the event they are needed; an estimate as to how long before normal operations may be expected to resume in the event the backup system is needed as the primary

2023 SRA—Appendix II                                                    07-01-22

operational system; and how personally identifiable information will be protected in a transition from primary to backup systems.

(c)    Risks:

(1)    Crop insurance expenses exceed the A&O subsidy provided by FCIC.

(2)    Underwriting gains are insufficient to offset any expense deficit identified in paragraph (1).

(3)    Policyholder surplus decreases more than ten percent in any calendar year.

(4)    A significant interruption occurs in computer hardware or software that affects operations or data transfer capabilities (such as due to a computer virus, security breach, communications failure, etc.).

(5)    A rating agency determines the Company's ability to meet its current obligations is marginal and that its financial condition is vulnerable.

(6)    Lines of credit or other financial arrangements become unavailable or is inadequate to meet cash flow needs.

(7)    Commercial reinsurance becomes unavailable or its cost rises (or ceding commissions received decline) significantly.

(8)    If the Company uses an MGA or service providers, the MGA or service provider:

(A)    Is no longer able to perform the requirements of its agreement with the Company;

(B)    No longer has the financial or operational capacity to enable the Company to comply with the requirements of the Agreement; or

(C)    Becomes ineligible to participate in the Federal crop insurance program.

(9)    Any other material threat or risk that the Company may be aware of or have prior knowledge of that should be considered in the selling and servicing of eligible crop insurance contracts reinsured under the Agreement.

(d)    If requested by FCIC, the Company shall submit information that would assist FCIC in determining the capacity of the Company or MGA, if applicable, to continue operations under the terms of this Agreement during and following a pandemic, terrorist, or other catastrophic event.

2023 SRA—Appendix II                                                      07-01-22