UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ALTMAN GROUP, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>FEDERAL CROP INSURANCE<br>CORPORATION, *et al.*,<br><br>   Defendants. | Civil Action No. 25-2193 (SLS) |

**FEDERAL DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

Table of Contents ..................................................................................................................... i

Table of Authorities ................................................................................................................ ii

Background ............................................................................................................................. 1

I.       FCIC's Relevant Responsibilities ................................................................................. 2

II.     Altman's Complaint ...................................................................................................... 3

I.       Plaintiff Fails to Establish that this Court has Subject Matter Jurisdiction. ........... 4

     A.    Where a Federal Law is Unenforceable, the Declaratory Judgment Act
          Does Not Supply Jurisdiction. ................................................................... 4

     B.    The FCIA Does Not Unequivocally Express a Waiver of Sovereign
          Immunity for Agent Suits Against FCIC. ................................................... 6

     C.    Altman Fails to Demonstrate Standing to Bring Suit. ................................ 7

     D.    The Court May Not Issue Advisory Opinions. ......................................... 11

II.     Plaintiff Fails to Demonstrate that its Complaint Complies with Rule 8's Pleading
       Standard. ...................................................................................................................... 12

III.    The Complaint Does Not Allege a Cognizable Cause of Action.......................... 12

Conclusion ........................................................................................................................... 15

# TABLE OF AUTHORITIES

*Acceptance Ins. Co. v. United States*,
    583 F.3d 849 (Fed. Cir. 2009) ................................................................................. 10

*Ace Property & Cas. Ins. Co. v. Fed Crop Ins. Corp.*,
    517 F.Supp.2d 391 (D.D.C. 2007) ............................................................................. 6

*Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*,
    532 F.3d 797 (8th Cir. 2008) .................................................................................... 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 10

*California v. Texas*,
    593 U.S. 659 (2021) ............................................................................................. 4, 5

*Chang v. D.C. Dep't of Regulatory & Consumer Affairs*,
    604 F. Supp. 2d 57 (D.D.C. 2009) ........................................................................ 9, 13

*Hewitt v. Helms*,
    482 U.S. 755 (1987) ................................................................................................ 11

*Hipage Co., Inc. v. Access2Go, Inc.*,
    589 F. Supp. 2d 602 (E.D. Va. 2008) ......................................................................... 5

*Lane v. Pena*,
    518 U.S. 187 (1996) .................................................................................................. 7

*National Trust for Historic Preservation v. Blanck*,
    938 F. Supp. 908 (D.D.C. 1996) ........................................................................... 9, 13

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) .................................................................................................. 13

*R & R Farm Enters., Inc. v. Fed. Crop Ins. Corp.*,
    788 F.2d 1148 (5th Cir. 1986) .................................................................................... 6

*Schilling v. Rogers*,
    363 U.S. 666 (1960) .................................................................................................. 6

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) .................................................................................................. 5

*Transmission Agency of N. Cal. v. FERC*,
    495 F.3d 663 (D.C. Cir. 2007) ................................................................................... 7

*Westinghouse Elec. Co. LLC v. Korea Elec. Power Corp.*,
    694 F. Supp. 3d 48 (D.D.C. 2023) ......................................................................... 6, 13

**Statutes**

7 U.S.C. § 1501 ........................................................................................................................ 1, 2

7 U.S.C. § 1506 ........................................................................................................................ 7, 11

7 U.S.C. § 1507 .......................................................................... 2, 3, 4, 5, 7, 8, 9, 10, 13

7 U.S.C. § 1515 ........................................................................................................................ 10, 13

28 U.S.C. § 2201 ...................................................................................................................... 4

Defendant, the Federal Crop Insurance Corporation ("FCIC" or the "Federal Defendant"), respectfully submits this reply in support of its motion to dismiss the Complaint (ECF No. 1) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In this suit, Plaintiff The Altman Group, Inc. ("Altman"), a crop insurance agent, is suing FCIC in an attempt to increase its compensation from an insurance company for selling federally subsidized crop insurance. But federal law does not provide a basis to sue the Federal Defendant. First, the Declaratory Judgment Act does not provide a basis for jurisdiction. Second, Altman fails to identify a waiver of sovereign immunity that would allow it to sue the Federal Defendant. Third, Altman lacks standing to bring this suit because it does not show an injury fairly traceable to the allegedly unlawful conduct challenged. Fourth, Altman seeks advisory opinions that are outside of the Court's subject matter jurisdiction. In its opposition to FCIC's motion to dismiss, Altman provides no legal authority specific to crop insurance agents supporting its arguments and wholly fails to establish that the Court has subject matter jurisdiction over this suit. In any event, the Court should dismiss the complaint because of its failure to comply with Rule 8 and because it is not grounded in any recognized cause of action. Altman's opposition did not demonstrate adherence to Rule 8 or provide any legal basis for the asserted cause of action.

## BACKGROUND

Altman is an insurance agent that sells crop insurance directly to farmers under the Federal crop insurance program. Compl. ¶ 22. Producers Agriculture Insurance Company ("ProAg"), the private Defendant, is an insurer that issues crop insurance policies subject to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501 *et seq*. The FCIC reinsures these policies. The Department of Agriculture's Risk Management Agency ("RMA") administers the Federal Crop Insurance Program on behalf of FCIC.

In the crop insurance marketplace, Approved Insurance Providers ("AIPs") such as ProAg establish their own agent rates that vary by crop, region, and any other considerations on which the AIP and the agent agree. The Standard Reinsurance Agreement ("SRA") governs FCIC's contractual relationship with AIPs, establishing the amount RMA will reimburse AIPs for administrative and operating expenses to sell eligible crop insurance contracts (called the "A&O subsidy"). Compl. ¶ 4 (citing SRA Section III(a)). AIPs then enter into separate contracts with agents that establish agent compensation. *See id.* ¶¶ 24, 62. Altman signed a contract of this type with ProAg on June 21, 2017, and the contract remains in effect. *Id.* ¶¶ 71, 72. The SRA, as well as Altman's agency contract with ProAg, reference the FCIA, stating that AIPs agree they will comply with it, and that the agreements are "subject to" the FCIA. *Id.* ¶¶ 5, 74.

## I.      FCIC's Relevant Responsibilities

The FCIA sets out a structure for FCIC's program administration, but it does not give FCIC or RMA rulemaking or enforcement authority as to agent compensation. Rather, it states that the Board of Directors of FCIC, through RMA ("Board"), must generally ensure, "to the maximum extent possible" that the insured have the right to renew insurance through agents, "in which case" agents "shall be reasonably compensated." 7 U.S.C. § 1507(c)(3). In full, the relevant FCIA provision states:

> In the administration of this subtitle [7 U.S.C. §§ 1501 *et seq.*], the Board shall, to the maximum extent possible, (1) establish or use committees or associations of producers and make payments to them to cover the administrative and program expenses, as determined by the Board, incurred by them in cooperating in carrying out this subtitle [7 U.S.C. §§ 1501 *et seq.*], (2) contract with private insurance companies, private rating bureaus, and other organizations as appropriate for actuarial services, services relating to loss adjustment and rating plans of insurance, and other services to avoid duplication by the Federal Government of services that are or may readily be available in the private sector and to enable the Corporation to concentrate on regulating the provision of insurance under this subtitle [7 U.S.C. §§ 1501 *et seq.*] and evaluating new products and materials submitted under section 508(h) or 523 [7 U.S.C. § 1508(h) or 1523], and reimburse such companies for the administrative and program expenses, as determined by the Board, incurred by

them, under terms and provisions and rates of compensation consistent with those generally prevailing in the insurance industry, and (3) encourage the sale of Federal crop insurance through licensed private insurance agents and brokers and give the insured the right to renew such insurance for successive terms through such agents and brokers, in which case the agent or broker shall be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect.

7 U.S.C. § 1507(c).

## II.    **Altman's Complaint**

Altman claims that FCIC has violated its obligations as program regulator under the FCIA and SRA to ensure that ProAg has acted lawfully under the FCIA, SRA, and FCIC's regulations. Compl. ¶ 171. Altman further alleges that the FCIA "determines the manner in which AIPs and crop insurance agents are compensated" and that "FCIC has a duty to ensure that agents are paid in compliance with the requirements of section 507(c)(3) of the FCIA." *Id.* ¶¶ 8-9.

Altman asks this Court to impose a series of declaratory judgments, essentially demanding that FCIC take affirmative actions to set an agent compensation rate higher than the one ProAg currently pays to it by contract. Altman styles its claim as eight causes of action, asking that this Court issue approximately twenty-six separate declaratory judgments, some that would apply to FCIC and others to ProAg. As to FCIC, Plaintiff seeks:

- a declaration that "FCIC has an affirmative duty to ensure that AIPs, including ProAg, are, at all times, acting in conformation of [sic] the Act [FCIA]" and that if any AIP fails to comply, that "FCIC must take such actions as are necessary to force compliance." Compl. ¶¶ 153-55 (Second Cause of Action);

- a declaration that "FCIC has violated its obligation to ensure that ProAg is in compliance with the Act [FCIA]" and that "FCIC must take such affirmative actions … as are necessary to ensure that ProAg is not circumventing the

- 3 -

requirement that AIPs accept applications." Compl. ¶¶ 181-83 (Fourth Cause of Action);

- a declaration that "FCIC failed in its duty to require that ProAg pay Altman agent compensation in amounts that are compliant with section 507(c)(3)" and must take all actions to enforce compliance. Compl. ¶¶ 277-79 (Sixth Cause of Action); and

- a declaration that "FCIC has failed in its duty to ensure that the Multiple Peril Commission Schedule, dated December 9, 2021, is in compliance with the requirements of section 507(c)(3)" and ensure that the loss ratio is not used in future crop years. Compl. ¶¶ 347-48 (Eighth Cause of Action).

## ARGUMENT

### I. Plaintiff Fails to Establish that this Court has Subject Matter Jurisdiction.

This Court does not have subject matter jurisdiction to hear Altman's claims, for four reasons. First, the Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide a basis for jurisdiction. Second, the United States has not waived sovereign immunity for a suit of this type. Third, Altman does not have standing to bring this suit. Fourth, the requested relief is outside of the Court's subject matter jurisdiction.

#### A. Where a Federal Law is Unenforceable, the Declaratory Judgment Act Does Not Supply Jurisdiction.

In its motion to dismiss, FCIC established that although the Declaratory Judgment Act provides a form of relief when the case is already properly before the Court, it does not itself provide a cause of action. Def.'s Mem. at 10-11. Altman's response regarding the Declaratory Judgment Act is unavailing. Altman puts forward the uncontested principle that the Declaratory Judgment Act confers jurisdiction if the action satisfies Article III's case-or-controversy requirement, citing *California v. Texas*, 593 U.S. 659, 672 (2021), but does not cite any authority

supporting jurisdiction in the *absence* of a case or controversy. In *California,* the Supreme Court evaluated the Affordable Care Act's individual mandate to obtain health insurance, after Congress had removed the individual tax penalty that was originally part of the law. *Id.* at 666. The Court held that where a federal law was unenforceable, the only injunctive relief possible in response to a suit was a declaration that the statutory provision was unconstitutional, which "cannot alone supply jurisdiction otherwise absent." *Id.* at 673. The Court dismissed the plaintiffs' complaint, *id.* at 680, and the case does not support Altman's assertion of subject matter jurisdiction here, where the relevant FCIA provision is similarly unenforceable. Specifically, the provision states that the agency "shall, to the maximum extent possible . . . encourage the sale of Federal crop insurance through licensed private insurance agents and brokers . . . in which case the agent or broker shall be reasonably compensated." 7 U.S.C. § 1507(c). This language is not an enforceable mandate to determine "reasonable" agent compensation.

Altman also cites *Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008) for the proposition that the Declaratory Judgment Act's purpose is to "allow[ ] the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings." Opp'n at 11. However, this sentence from the *Hipage* decision is only dicta; the court there went on to dismiss the case because the defendant already had sued plaintiff in state court, and sustaining a suit seeking declaratory judgments in federal court was not consistent with the Declaratory Judgment Act. *Id.* at 616. Indeed, the Declaratory Judgment Act provides a potential remedy when there is a cause of action, but it is "procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)), and it supplies neither the subject matter jurisdiction nor the federal cause of action necessary for a

district court to exercise subject matter jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citing *Skelly Oil*, 339 U.S. at 671).

In fact, the availability of declaratory relief "'presupposes the existence of a judicially remediable right.'" *Westinghouse Elec. Co. LLC v. Korea Elec. Power Corp.*, 694 F. Supp. 3d 48, 52 (D.D.C. 2023) (citations omitted). Courts in this Circuit have understood a "judicially remediable right" to require the plaintiff to assert some underlying cognizable claim that arises under the Constitution or federal law. *Id.* Altman has not asserted any cognizable claim here. Therefore, this Court should not sustain Altman's suit, which is based on the Declaratory Judgment Act rather than a cause of action.

**B.    The FCIA Does Not Unequivocally Express a Waiver of Sovereign Immunity for Agent Suits Against FCIC.**

FCIC's motion to dismiss established that the United States has not waived sovereign immunity for a suit by an agent against the FCIC. Def.'s Mem. at 13-14. Altman disagrees, but not a single case that Altman cites in support of its argument for a waiver involves a crop insurance agent suing the FCIC. *See* Opp'n at 12 (citing *Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 532 F.3d 797, 800 (8th Cir. 2008) (insurer alleged that FCIC changed the substance of insurance coverage in a particular year without a corresponding increase in the premium rate the insurer could charge); *Ace Property & Cas. Ins. Co. v. Fed Crop Ins. Corp.*, 517 F.Supp.2d 391, 414 (D.D.C. 2007) (insurers alleged that FCIC violated federal law in implementing statutory directives requiring changes to SRAs); *R & R Farm Enters., Inc. v. Fed. Crop Ins. Corp.*, 788 F.2d 1148, 1152 (5th Cir. 1986) (farmer alleged that FCIC failed to pay a crop insurance claim)).

Although FCIC acknowledges that the FCIA includes a "sue and be sued" clause, the issue here involves a determination of whether agent suits come within the scope of that authorization. Altman has cited no authority whatsoever that they do. The provision's text states that the FCIC:

"may sue and be sued in its corporate name, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property." 7 U.S.C. § 1506(d).[1] A waiver of the Federal Government's sovereign immunity must be "unequivocally expressed in statutory text" and "will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citing *U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 33-34, 37 (1992), *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)). And courts strictly construe the scope of a waiver of the Government's sovereign immunity "in favor of the sovereign." *Id.* (*citing U.S. v. Williams*, 514 U.S. 527, 531 (1995); *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986); *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981)). Here, because Altman does not identify any such unequivocal sovereign immunity waiver, it fails to demonstrate that sovereign immunity is waived for the purpose of this suit.

### C.    Altman Fails to Demonstrate Standing to Bring Suit.

FCIC established in its motion that Altman lacks standing because it has not shown an injury "fairly traceable" to the alleged unlawful conduct, having instead engaged "in a series of speculations" that do not show that the alleged injury is traceable to the Federal Defendant's conduct.  Def.'s Mem. at 14-15; *see, e.g., Transmission Agency of N. Cal. v. FERC,* 495 F.3d 663, 670 (D.C. Cir. 2007). Altman's opposition does not provide any basis to conclude otherwise.

First, Altman claims that FCIC action is not speculative because the statute mandates that FCIC take action setting agent compensation. Opp'n at 13. In conjuring this purported mandate, Altman points to the same provision discussed above, 7 U.S.C. § 1507(c)(3), that states in relevant part: "in which case the agent or broker shall be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide

---

[1]    This provision is subject to an exemption for indemnity claims that the FCIC has denied.

continuing services while the insurance is in effect." *Id*. Although Section 507(c)(3) reflects "the manner" in which agents get paid—that is, "from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect"—it does not mandate that the FCIC ensure that agents are reasonably compensated. 7 U.S.C. § 1507(c).

Altman's reading ignores both the statutory context and the provision's specific language. As to statutory context, the statute authorizes FCIC to "encourage" private sector actions in offering crop insurance. Section 1507(c)(2) specifically sets forth Congress's direction that the FCIC should contract with private insurers, who will offer insurance to farmers. The subsection at issue here, § 1507(c)(3), then mentions brokers in a dependent clause, stating that in administering the crop insurance program, FCIC:

> shall, to the maximum extent possible … give the insured the right to renew such insurance for successive terms through such agents and brokers, in which case the agent or broker shall be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect.

§ 1507(c)(3). Thus, in context, the language "in which case the agent or broker shall be reasonably compensated from premiums" simply explains the general nature of the compensation arrangements, in that the compensation is taken from farmers' ("the insured") premiums. The language emphasizes the importance of the continuity of Federal crop insurance, which allows farmers to secure loans and stay in business year after year, and recognizes "the function of the agent" in delivering the program. Notably, the statute lacks an express grant of authority to FCIC to define "reasonable" agent compensation. Therefore, it does not create a binding, enforceable duty to issue standards.

The word "shall" in a statute does not necessarily mean that the legislature has directed an agency to take specific actions. In analyzing the National Historic Preservation Act, a court in this District determined that where a provision stated that federal agencies "shall" undertake actions "as may be necessary to carry out this section" and also referred to a separate consultation process, Congress did not create an independent enforceable mandate that the agency must engage in a second process. *National Trust for Historic Preservation v. Blanck*, 938 F. Supp. 908, 920-22 (D.D.C. 1996). In reading the provision "as a whole," the court determined that the section at issue elucidated a separate section of the statute but did not impose "new and independent substantive obligations of a different kind." *Id.* at 920.

Similarly, in *Chang v. D.C. Dep't of Regulatory & Consumer Affairs*, 604 F. Supp. 2d 57 (D.D.C. 2009), the court analyzed a District of Columbia law stating that the building department "shall seek to administer" permits and similar actions "in a manner that is fair, efficient, predictable, readily adaptable to new technologies, consumer-oriented, devoid of unnecessary time delays and other administrative burdens, cost-effective, and directed at enhancing the protection of the public health, welfare, safety and quality of life." *Id.* at 65 (quoting D.C. Code § 6-1405.01(a)). The court determined that this statute created "general standards for the method by which the Director administers building permits rather than a binding, enforceable duty" and that the language did not lend itself to judicial adjudication. *Id.* Similarly, the phrase "shall be reasonably compensated" in § 1507(c)(3) does not create a duty for FCIC to act and does not lend itself to adjudication by the courts. That is true whether the court analyzes the statutory language or the SRA's language incorporating the statute into the contract.

If Congress had wanted the FCIC to get into the business of reviewing agent rates, one would have expected it to equip the agency with the necessary tools to do so, which it did not.

- 9 -

Altman asserts that "Defendant FCIC expressly got involved in agent compensation after the largest AIP failed in 2002." Opp'n at 4. Altman appears to be referring to the 2011 SRA, which did cap agent compensation. At that time, Congress had specifically authorized FCIC to renegotiate the SRA in light of high commodity prices. *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, § 12017, 122 Stat. 1651, 491 (2008). The negotiation between FCIC and the insurers resulted from this legislation and specific market realities at the time, but it does not demonstrate that FCIC is responsible for setting reasonable compensation for agents generally.

Indeed, the FCIA compels FCIC to engage in specific actions as to crop insurers but not agents. The FCIC determines certain coverage levels, prices, and premium rates for insurers. *Acceptance Ins. Co. v. United States*, 583 F.3d 849, 852 (Fed. Cir. 2009). Moreover, as part of program compliance and integrity, the FCIA states that FCIC "shall work actively with approved insurance providers to address program compliance and integrity issues as such issues develop." 7 U.S.C. § 1515. The FCIA contains no similar language as to agents. Instead, the language regarding agents in § 1507(c)(3) is qualified by use of the phrase "to the maximum extent possible" and the verb "encourage." 7 U.S.C. § 1507(c).

Second, citing only to its Complaint, Altman claims that this injury is fairly traceable to Defendant FCIC because FCIC has an "obligation" to ensure compliance with the FCIA and SRA. Opp'n at 13. Altman's opposition does not cite a single case in support of this proposition. The Court need not take legal conclusions asserted in a complaint as true for purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Altman asserts that a favorable ruling would "directly redress Plaintiff's injury by ensuring that it is compensated in the manner established by Congress," the statement's premise is false. Even though the FCIA describes a "manner" of compensation (agents receiving compensation from insurers), it does not include any

- 10 -

directive that the FCIC establish reasonable amounts of compensation. Thus, redressability of Altman's injury is speculative as to FCIC, because redressing the injury depends on ProAg's actions in negotiating compensation with Altman, not on FCIC's actions in negotiating the SRA with insurers such as ProAg.

In short, because Congress did not direct the FCIC to determine a "reasonable" level of agent compensation, Altman fails in its attempt to show that its injury is "fairly traceable" to FCIC's actions.

### D. The Court May Not Issue Advisory Opinions.

Federal Defendant demonstrated that Altman's requested relief would be advisory in nature and therefore outside of this Court's subject matter jurisdiction. Def.'s Mem. at 16-17. A declaratory judgment itself cannot be the relief sought if there is no corresponding relief that would compel a change between the parties. *See Hewitt v. Helms,* 482 U.S. 755, 761 (1987). The pronouncements Altman seeks would constitute improper advisory opinions. Even if the Court were to issue the requested declaratory judgments as to FCIC, Altman still would only obtain relief if discrete, independent events occurred: namely, if FCIC decided to initiate actions, whether regulatory actions or actions to amend the SRA, that increased both backward-looking and forward-looking compensation to Altman. Thus, granting Altman's requested relief would not necessarily ameliorate the injuries claimed. It is possible that an *injunction* directing FCIC to issue regulations determining a specific level of compensation or directing it to amend the SRA to increase agent compensation would redress the claimed injuries. But the FCIA expressly forbids courts from issuing injunctions, attachments, or similar legal processes against the FCIC, 7 U.S.C. § 1506(d), and thus, Altman is also foreclosed from seeking an injunction binding FCIC. This Court should not allow an end-run around § 1506(d) because Altman pleaded its request for relief as seeking declaratory judgments instead of injunctive relief.

## II.    Plaintiff Fails to Demonstrate that its Complaint Complies with Rule 8's Pleading Standard.

FCIC's motion to dismiss demonstrated that Altman's Complaint does not conform with Rule 8, as it contains numerous redundancies that are inconsistent with a "short and plain statement of the claim." *See* Defs.' Mot. at 17-20 (providing specific examples); Fed. R. Civ. P. 8(a)(2). This standard requires complaints to clearly outline claims and their bases, enabling the defendant to respond and prepare a defense.

The Complaint's factual allegations span twenty-eight pages and contain numerous irrelevant details. Although Altman argues it is necessary to provide a chronological discussion of the interactions between the parties and text of the contracts, Opp'n at 18, Altman's complaint is so cluttered with extraneous information that it unfairly burdens the Court and the Government by making it virtually impossible to identify the actual claims. Additionally, the Complaint contains page after page of requests for declaratory relief presented as eight causes of action. *Id.* ¶¶ 133-151. Within these causes of action, Altman seeks declaratory judgments on no fewer than twenty-six legal topics, many of which overlap with each other rather than setting forth independent requests. *Id.* ¶¶ 138, 139, 153-155, 169, 183, 240-243, 276-279, 317-319, and 347-351. Altman does not explain in its opposition why it needs so many overlapping declarations. *See* Opp'n at 16-18. Thus, the Court should dismiss the Complaint based on its failure to comply with Rule 8.

## III.    The Complaint Does Not Allege a Cognizable Cause of Action.

Despite the Complaint's length, nowhere in it does Altman allege a valid cause of action, as explained in FCIC's motion to dismiss. Def.'s Mem. at 19-20. Altman's assertions to the contrary rely on the same faulty statutory construction argument highlighted above. *See* Opp'n at 19. That is, Altman selectively quotes a portion of the statute: agents "shall be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the

function of the agent or broker to provide continuing services while the insurance is in effect." 7

U.S.C. § 1507(c)(3). As discussed above, this quotation disregards the beginning of the provision,

which states:

> the Board shall, to the maximum extent possible, … (3) encourage the sale of Federal crop insurance through licensed private insurance agents and brokers and give the insured the right to renew such insurance for successive terms through such agents and brokers, in which case the agent or broker shall be reasonably compensated from premiums paid by the insured for such sales and renewals….

7 U.S.C. § 1507(c). Rather than imposing a strict mandate, this provision merely addresses the

manner of broker compensation, not the amount, and employs permissive language ("to the

maximum extent possible" and "encourage") rather than mandatory language. *See Norton v. S.*

*Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (an APA claim to compel agency action unlawfully

withheld "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency

action that it is *required to take*"). While the FCIA provides for the agency to engage in compliance

oversight over AIPs, 7 U.S.C. § 1515, it does not have a parallel obligation as to agents and does

not allow for an agent to sue FCIC over an AIP's actions. Although the statute uses the term

"shall," in the phrase "shall be reasonably compensated," the word alone is not determinative. *See*

*Chang*, 604 F. Supp. 2d at 65; *Blanck*, 938 F. Supp. at 920-22. Reading the provision as a whole

makes clear that it does not obligate the FCIC to address agent compensation.

In analyzing whether federal statutes provide for private causes of action, courts consider

(1) whether the plaintiff is a benefited class under the statute, (2) whether there are indications of

legislative intent to create or deny such a remedy, (3) whether implying such a remedy is consistent

with the statute's underlying purpose, and (4) whether the cause of action is traditionally one

relegated to state law. *Westinghouse Elec. Co. LLC*, 694 F. Supp. 3d at 52-53 (citing *Cort v. Ash,*

422 U.S. 66, 98 (1975)). Here, none of the factors apply. First, Altman is not within the benefited

class under the FCIA. The FCIA was enacted to protect farmers, not insurance agents. *See* Government Accountability Office, Publication GAO-09-445, Crop Insurance: Opportunities Exist to Reduce the Costs of Administering the Program 4 (April 2009) ("Through the federal crop insurance program, farmers insure against losses on more than 100 crops. The federal government encourages farmers' participation by subsidizing their insurance premiums and acting as the primary reinsurer for the private insurance companies that take on the risk of covering, or 'underwriting,' losses to insured farmers.")

Second, there is no indication of legislative intent to create a cause of action; as discussed above, the statute does not evince legislative intent to create a cause of action for agents to sue the FCIC. Altman appears to argue that because the SRA includes broad, non-specific language that crop insurance is "sold and serviced in accordance with" the FCIA, federal law creates a cause of action against FCIC if the contract is violated. Opp'n at 3. The language itself contradicts this assertion, however, as the phrase "in accordance with" does not create the private right of action that Altman seeks.

Third, Altman has not pointed to a scheme to create a remedy for its claims. In fact, its opposition repeatedly relies on the fact that the FCIC oversees and negotiates with crop insurers but fails to demonstrate that FCIC has the statutory responsibility to oversee or negotiate with agents. Although Altman asserts that agent compensation is "governed by the FCIA," Opp'n at 5, it is clear that the FCIA refers to agent compensation but does not direct the FCIC to set a compensation level for agents, as discussed above.

Finally, any claims that Altman could properly assert are claims against ProAg traditionally brought under state law, as the underlying dispute is whether ProAg is paying Altman sufficient

amounts under their contract with each other. Therefore, the Court should dismiss the complaint as to FCIC on the grounds that it fails to present a cognizable cause of action.

## CONCLUSION

The Court lacks jurisdiction over this action because the FCIA does not provide for direct suits by agents. And Plaintiff's claims are meritless even if they were justiciable. Therefore, the Court should grant the Federal Defendant's motion and dismiss the complaint as to it.

Dated: March 23, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____ */s/ Allison I. Brown* _____
    ALLISON I. BROWN
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-7822

*Attorneys for the United States of America*