**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

The Altman Group, Inc.,

        Plaintiff,

v.

Federal Crop Insurance Corporation, et al.,

        Defendants.

Case No. 1:25-cv-2193 (SLS)

**REPLY BRIEF IN SUPPORT OF DEFENDANT**
**PRODUCERS AGRICULTURE INSURANCE COMPANY'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

## TABLE OF CONTENTS

**Page**

ARGUMENT...................................................................................................................... 2

  I. Plaintiff Cannot Establish that ProAg is Subject to the Personal Jurisdiction of This Court  2

    A.   Plaintiff Abandons Its Pleaded Jurisdictional Theory and Relies on Unpled Contacts That Describe Only a Relationship with FCIC—Which D.C. Law Forecloses as a Basis for Personal Jurisdiction................................................................................................ 3

    B.   Plaintiff's "Partnership" Characterization of the SRA Does Not Alter the Analysis .... 7

  II. Venue is Improper for All of Plaintiff's Claims .................................................................. 9

    A.   FCIC's DC Activities Cannot Establish Venue Against ProAg ................................... 9

    B.   Plaintiff's Pendent Venue Theory Fails as a Matter of Law and Fact ......................... 10

  III.   The Claims Specifically Against FCIC Should Be Dismissed As to ProAg for Failure to State a Claim, Pursuant to Rule 12(b)(6) ............................................................................ 12

    A.   The Declaratory Judgment Act Does Not Provide a Right of Action Against ProAg. 12

    B.   Pendent Jurisdiction Does Not Supply the Missing Cause of Action Against ProAg. 14

  IV.   The Court Lacks Subject Matter Jurisdiction as to All Contractual Claims..................... 16

  V.   The Court Should Exercise its Discretion to Dismiss the Matter as an Improper Use of Declaratory Judgment ............................................................................................................ 18

    A.   Plaintiff Fails to Satisfy Either Prong of the D.C. Circuit's Declaratory Judgment Test .................................................................................................................................. 18

    B.   Plaintiff's Agency-Action Theory and "Nationwide Importance" Argument Fail ...... 21

  VI.   In the Alternative, the Court Should Compel Arbitration Based on the Claims Against ProAg and Stay Proceedings.............................................................................................. 23

CONCLUSION.................................................................................................................. 25

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Fin. Corp. v. AARP Fin., Inc.*,
794 F. Supp. 2d 117 (D.D.C. 2011), *aff'd,* 468 F. App'x 4 (D.C. Cir. 2012)...........................24

*Artis v. Greenspan*,
223 F.Supp.2d 149 (D.D.C. 2002) .................................................................................................3

B*azarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*,
793 F. Supp. 2d 124 (D.D.C. 2011) ..............................................................................................20

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)........................................................................................................................5, 8

*C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*,
310 F.3d 197 (D.C. Cir. 2002) .......................................................................................................12

*California v. Texas* ...........................................................................................................................12, 13

*Cameron v. Thornburgh*,
983 F.2d 253 (D.C. Cir. 1993) .......................................................................................................10

*Citizens for Responsibility & Ethics in Wash. v. FEC*,
892 F.3d 434 (D.C. Cir. 2018)........................................................................................................22

*D.C. Ret. Bd. v. United States*,
657 F. Supp. 428 (D.D.C. 1987).....................................................................................................16

*Dorothy K. Winston & Co. v. Town Heights Dev., Inc.* ....................................................................6

*Dougherty v. United States*,
156 F. Supp. 3d 222 (D.D.C. 2016).................................................................................................14

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
547 U.S. 677 (2006)...........................................................................................................16, 17, 18

*Est. of Abtan v. Blackwater Lodge & Training Ctr.*,
611 F. Supp. 2d 1 (D.D.C. 2009).....................................................................................................9

*FiberLight, LLC v. Nat'l R.R. Passenger Corp.*,
81 F. Supp. 3d 93 (D.D.C. 2015).....................................................................................................22

*Fox v. Am. Airlines, Inc.*,
389 F.3d 1291, 1294 (D.C. Cir. 2004).............................................................................................23

*Fuentes-Fernandez & Co., PSC v. Caballero & Castellanos, PL,*
    770 F. Supp. 2d 277 (D.D.C. 2011) ................................................................6

G*ibson v. Liberty Mut. Grp., Inc.,*
    778 F. Supp. 2d 75 (D.D.C. 2011) ...............................................................20

*Glenn v. Thomas Fortune Fay,*
    222 F. Supp. 3d 31 (D.D.C. 2016) ................................................16, 19, 21

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005) ....................................................................................17

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ....................................................................................22

*International Union, United Automobile, Aerospace & Agricultural Implement*
    *Workers of America v. Brock,*
    783 F.2d 237 (D.C. Cir. 1986) ....................................................................21

*Jones Bros. Bakery v. United States,*
    411 F.2d 1282 (Ct. Cl. 1969) ................................................................17, 20

*Joyner v. Morrison & Foerster LLP,*
    140 F.4th 523 (D.C. Cir. 2025) ...................................................................15

*Kaempe v. Myers,*
    367 F.3d 958 (D.C. Cir. 2004) ......................................................................8

*Lamont v. Haig,*
    590 F.2d 1124 (D.C. Cir. 1978) ..................................................................11

*Little v. King,*
    768 F. Supp. 2d 56 (D.D.C. 2011) ..............................................................11

*Lozano v. Civiletti* ...........................................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,*
    473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ..............................24

*Moghaddam v. Pompeo,*
    424 F. Supp. 3d 104 (D.D.C. 2020) ..............................................................3

*Moore v. Motz,*
    437 F. Supp. 2d 88 (D.D.C. 2006) ................................................................3

*Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) .......................................3

*Reuber v. United States,*
    750 F.2d 1039 (D.C. Cir. 1984) ..................................................................14

*Rollins v. Wackenhut Servs. Inc.*,
  703 F.3d 122 (D.C. Cir. 2012) .................................................................................8

*Royal Canin U.S.A., Inc. v. Wullschleger*,
  604 U.S. 22 (2025) ...................................................................................................15

*Sheet Metal Workers' Int'l Ass'n v. United Transp. Union*,
  767 F. Supp. 2d 161 (D.D.C. 2011) ...................................................................21, 23

*Sierra Club v. Johnson*,
  623 F. Supp. 2d 31 (D.D.C. 2009) ...........................................................................11

*United Therapeutics Corp. v. Vanderbilt Univ.*,
  278 F. Supp. 3d 407 (D.D.C. 2017) ...................................................................3, 6, 8

*US Dominion, Inc. v. Powell*,
  554 F. Supp. 3d 42 (D.D.C. 2021) ...........................................................................10

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009) ...................................................................................................24

*Wisey's #£1 LLC v. Nimellis Pizzeria LLC*,
  952 F. Supp. 2d 184 (D.D.C. 2013) ..........................................................................15

*Wolff v. Westwood Mgmt., LLC*,
  503 F. Supp. 2d 274 (D.D.C. 2007), aff'd, 558 F.3d 517 (D.C. Cir. 2009)...............23

**Rules and Statutes**

7 U.S.C. § 1506(d) ..............................................................................................................9

9 U.S.C. §§ 3–4......................................................................................................... 2, 25

28 U.S.C. § 1367.........................................................................................................15, 16

28 U.S.C. § 1391(b) ............................................................................................................9

28 U.S.C. § 1391(e) .............................................................................................1, 9, 11, 23

28 U.S.C. § 2201...............................................................................................................24

Declaratory Judgment Act .................................................... 2, 12, 14, 16, 21, 23, 24

Rule 12(b)(1)......................................................................................................................18

Rule 12(b)(6).................................................................................................................12, 21

Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil
  Procedure .............................................................................................................1

**Other Authorities**

U.S. Dep't of Agric., Risk Mgmt. Agency, 2024 Explanatory Notes at 28-3
(2024), *https://www.usda.gov/sites/default/files/documents/28-2024-RMA.pdf*........................5

Defendant Producers Agriculture Insurance Company ("ProAg" or "Defendant"), by and through counsel, hereby submits this Reply Memorandum in Support of its Motion to Dismiss the Complaint of Plaintiff The Altman Group, Inc. ("Altman" or "Plaintiff") pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, and in response to Plaintiff's Opposition to Defendant Producers Agriculture Insurance Company's Motion to Dismiss, or in the alternative, to Compel Arbitration ("Opposition").[1] In the alternative, ProAg renews its motion to compel arbitration and stay proceedings.

## **INTRODUCTION**

Plaintiff opens its Opposition by insisting that this "is not a breach of contract case." That refrain, repeated throughout its brief, does not make it so. This is a dispute over the commission rates ProAg paid Altman under the 2021 and 2023 commission schedules. Plaintiff believes it was not paid enough and wants this Court to say so—while simultaneously refusing to bring the breach of contract claim that its position requires, in the contractual forum it agreed to, because it knows it cannot prevail there. Every argument in Plaintiff's Opposition is a product of that strategic choice, and none of it withstands scrutiny.

Plaintiff's Opposition does not cure a single one of the five independent grounds for dismissal ProAg identified. Instead, Plaintiff abandons the jurisdictional theory actually pleaded in the Complaint and substitutes, for the first time, an entirely new theory of "systematic and continuous contacts" consisting entirely of federally mandated regulatory compliance with a government agency. It invokes new doctrines that appear nowhere in the Complaint and that, in

---

[1] *See also* Memorandum in Support of Defendant Producers Agriculture Insurance Company's Motion to Dismiss or, in the Alternative, to Compel Arbitration, *Altman Grp., Inc. v. Fed. Crop Ins. Corp.*, No. 1:25-cv-02193 (SLS), ECF No. 15-1 (D.D.C. Jan. 15, 2026) [hereinafter Memorandum].

any event, do not support retaining this action against ProAg. Further, Plaintiff simply ignores several of ProAg's most significant arguments entirely, including the requirement to exhaust administrative remedies, the inapplicability of 28 U.S.C. § 1391(e) as to venue for ProAg, the legislative history of § 1507(c)(3), and the legal significance of Plaintiff's continued business placement after receiving the commission schedule it now calls unlawful.

The Complaint fails for lack of personal jurisdiction, improper venue, failure to state a claim,[2] and lack of subject-matter jurisdiction[3]. The Declaratory Judgment Act does not transform a private compensation dispute into a federal case, and the Opposition does not cure these defects. All claims against ProAg should be dismissed with prejudice, or alternatively, pursuant to Plaintiff's agreement with ProAg, compelled to arbitration and stayed under 9 U.S.C. §§ 3–4.

## ARGUMENT

### I.  Plaintiff Cannot Establish that ProAg is Subject to the Personal Jurisdiction of This Court

Plaintiff acknowledges that D.C. courts have long held that "[e]ntry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." Opp'n at 2. Rather than dispute this well-established rule, Plaintiff now states that it "is not asserting that Defendant ProAg's entry into the District of Columbia provides personal jurisdiction," and then proceeds to argue personal jurisdiction on a new theory—one nowhere pleaded in the Complaint, nowhere supported by the Complaint's allegations, and one that, upon examination, reduces entirely to contacts with FCIC that the D.C. exception was specifically designed to exclude.

---

[2] Plaintiff's claims 2, 4, 6, and 8 are directed at FCIC and do not allege any duty, conduct, or basis for relief as to ProAg. Memo. at 16–17.

[3] Plaintiff's claims 1, 3, 5, and 7 are the only claims directed at ProAg and concern ProAg's alleged contractual and underwriting conduct. Memo. at 16–17.

Plaintiff's sleight of hand fails. The government contacts exception controls, Plaintiff offers no basis to depart from it. ProAg is not incorporated, does not maintain a presence within, and has not purposefully availed itself of the benefits of conducting business in the District. The Court should dismiss Plaintiff's claims for lack of personal jurisdiction.

**A.      Plaintiff Abandons Its Pleaded Jurisdictional Theory and Relies on Unpled Contacts That Describe Only a Relationship with FCIC —Which D.C. Law Forecloses as a Basis for Personal Jurisdiction**

Plaintiff's primary allegation in the Complaint for establishing general or specific personal jurisdiction against ProAg was that "ProAg has executed a Standard Reinsurance Agreement with FCIC, so it is doing business with a District of Columbia entity and, therefore, subject to the personal jurisdiction of the District Court for the District of Columbia." Compl. ¶ 19. That was the entirety of Plaintiff's jurisdictional theory, and ProAg addressed it directly—the execution of the SRA with a federal agency is not a basis for personal jurisdiction under controlling D.C. authority. *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 417 (D.D.C. 2017).

Confronted with the inadequacy of that pleading, Plaintiff now abandons it entirely. Plaintiff argues that "the court is permitted to consider material outside of the pleadings in ruling on a motion to dismiss for lack of personal jurisdiction" including "affidavits and other written materials." Opp'n at 4 (citing *Artis v. Greenspan*, 223 F.Supp.2d 149, 152 (D.D.C. 2002) and *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)). Plaintiff uses this to import into the record a series of new contacts unsupported by the Complaint. However, Plaintiff ignores that it is a well-established rule that any materials must be "documents attached as exhibits or incorporated by reference in the complaint" or "documents in the public record of which the court may take judicial notice." *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 115 (D.D.C. 2020). As such, Plaintiff cannot manufacture jurisdiction in its opposition by supplying facts it omitted from its Complaint. Plaintiff's support of its Complaint "must allege specific facts on which personal jurisdiction can

3

be based; it cannot rely on conclusory allegations." *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006). Accordingly, each of Plaintiff's new contacts not alleged or incorporated into the Complaint should not be considered by the Court at this stage of proceedings.

Nevertheless, even setting that threshold deficiency aside, Plaintiff's newly identified contacts are, examined individually and collectively, unavailing. Plaintiff now claims that ProAg's "systematic and continuous contacts" with DC consist of: (1) negotiations of the 2011 SRA, conducted primarily in DC; (2) ProAg signing the SRA, which was not executed until approved by FCIC in DC; (3) ProAg annually filing a Plan of Operation that must be approved by FCIC in DC; (4) FCIC's assignment of a D.C.-based representative, meaning that any SRA questions or unspecified telephone calls are directed to FCIC in D.C.; (5) Manager's Bulletins, Informational Bulletins, and Final Agency Determinations being issued from FCIC are binding on ProAg. *See* Opp'n at 4-5. None of these contacts sustains personal jurisdiction.

Contact No. 1—Plaintiff cites negotiations of the 2011 SRA allegedly conducted "primarily in D.C." That contact is stale and irrelevant. It occurred fifteen years before this suit, predates the 2017 and 2020 Agency Agreements, and involved industry-wide renegotiations with a federal agency—not conduct by ProAg directed at D.C. residents. A one-time participation in such negotiations does not constitute purposeful availment. Nor does the Complaint allege ProAg's participation in the negotiations or any causal connection to Plaintiff's claims.

Contact No. 2—Plaintiff alleges that ProAg "signed the SRA," but that it was not executed until FCIC approved it in D.C. This is not factually true. ProAg and any other AIP requesting an annual SRA must submit a signed SRA to FCIC on April 1, preceding the beginning of the applicable reinsurance year (July 1). FCIC's approval regularly is communicated just prior to July 1 at which time FCIC executes the Agreement and sends the fully executed SRA to the AIP. Even

4

if FCIC's execution and approval do come from D.C., as opposed to any remote locations,[4] the location of FCIC's approval is not a contact by ProAg with the forum. A federal agency's internal processing of documents reflects the government's operations, not ProAg's conduct.

Contact No. 3—Plaintiff argues that ProAg "enters a new SRA" each year by submitting a Plan of Operation that must be approved by FCIC in D.C. However, the Complaint never alleges where the plan is submitted nor where it is reviewed.[5] Even so, submitting a federally mandated regulatory filing is not voluntary, forum-directed commercial activity. Every AIP must file a Plan of Operation with FCIC, and such required submissions to a federal agency are paradigmatic "government contacts" excluded from the personal-jurisdiction analysis. Accepting this theory would subject every AIP—and indeed anyone doing business with the federal government—to suit in D.C., precisely the result the government-contacts exception is designed to prevent.

Contact No. 4—Plaintiff points to FCIC's assignment of a D.C.-based representative to assist ProAg and other AIPs, the direction of SRA-related questions to FCIC in D.C., and unspecified telephone calls to FCIC. However, the assignment and location of government personnel are acts of FCIC, not ProAg, and ProAg does not control where FCIC employees are stationed (nor does the Complaint allege which FCIC office—among many nationwide—from which ProAg allegedly receives assistance). Receiving regulatory assistance from a government-assigned employee, or communicating with a federal agency in the course of regulatory compliance, is not conduct ProAg "purposefully directed" at the District. *Cf. Burger*

---

[4] "RMA had 397 full-time permanent employees…: 30 in Washington, D.C. Headquarters; 144 in Kansas City, MO national office; with the remaining 223 located throughout the ten Regional Offices (ROs) and six Regional Compliance Offices (RCOs)" U.S. Dep't of Agric., Risk Mgmt. Agency, 2024 Explanatory Notes at 28-3 (2024) [hereinafter RMA Explanatory Notes], *https://www.usda.gov/sites/default/files/documents/28-2024-RMA.pdf*.

[5] ProAg's Plan of Operations are primarily reviewed by financial staff in the Kansas City Area.

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Plaintiff's reliance on *Dorothy K. Winston & Co. v. Town Heights Dev., Inc.*, is misplaced: that case involved voluntary commercial calls to D.C.-based businesses, not regulatory communications with a federal agency. 376 F. Supp. 1214, 1215-16 (D.D.C. 1974). Any alleged calls here are quintessential government contacts falling within the exception, and Plaintiff identifies no specific call, recipient, timing, or subject matter sufficient to supply the "specific facts" required to establish personal jurisdiction.

Contact No. 5—Plaintiff points to Manager's Bulletins, Informational Bulletins, and Final Agency Determinations being issued from D.C., each an act of FCIC exercising regulatory authority—not conduct by ProAg. ProAg neither controls nor directs these communications; it receives them, and receiving regulatory directives cannot support personal jurisdiction. *See Fuentes-Fernandez & Co., PSC v. Caballero & Castellanos, PL*, 770 F. Supp. 2d 277, 281 (D.D.C. 2011) (holding that the government's authority over a defendant "fall[s] into the 'government contacts' exception to the long-arm statute and do not establish personal jurisdiction").

The threshold problem with Plaintiff's theory is not merely that its individual contacts fail—it is that every single contact Plaintiff identifies, without exception, is a contact between ProAg and FCIC. There is not one contact Plaintiff identifies that is directed at a D.C. resident, a D.C. business, or the D.C. forum itself. This is precisely the scenario that the government contacts exception forecloses. As D.C. courts have long recognized, contacts with the federal government in D.C. cannot form the basis for general or specific personal jurisdiction over a non-resident defendant. *United Therapeutics*, 278 F. Supp. 3d at 417. The rule reflects a deliberate policy choice: subjecting private parties to suit in D.C. merely because they comply with federal regulatory requirements administered from D.C. would impair the "unfettered access to federal departments and agencies" that the rule was designed to preserve. *Id.* Plaintiff offers no response

6

to this rule, no authority departing from it, and no basis for finding that ProAg's regulatory compliance contacts with FCIC fall outside it. Plaintiff has waived any argument to the contrary.

### B. Plaintiff's "Partnership" Characterization of the SRA Does Not Alter the Analysis

Plaintiff also raises an additional argument to specific jurisdiction, arguing there is a "nexus" between ProAg's DC contacts and Plaintiff's claims because ProAg must "annually send its agent contracts to FCIC in DC" and FCIC "monitors and controls agent compensation from DC." Opp'n at 6. This assertion finds no support in the Complaint, in the operative agreements, or in reality. The Complaint contains no allegation that ProAg affirmatively transmits, sends, or files its agent contracts to FCIC in Washington, D.C., and as a matter of fact, it nor any other AIP does. The closest the Complaint comes is stating that "RMA annually collects agent compensation data in the Plan of Operation under Appendix II of the SRA." *See* Compl. ¶ 260. The subject of that sentence is RMA, a federal agency with offices across the United States, and what RMA is described as doing is collecting compensation data as part of the Plan of Operation process on an aggregate basis by state—not receiving agent contracts individually transmitted by ProAg to D.C.[6] The SRA itself confirms the point: Section III(a)(4)(A) of the SRA states only that compensation records "shall be in writing, and provided to FCIC upon request."[7] That is an "on-request" provision.[8] It imposes no obligation on ProAg to annually send its agent contracts anywhere, let alone specifically to D.C.

Plaintiff's characterization of this as ProAg "annually send[ing] its agent contracts to FCIC in DC" is a new factual assertion, invented for purposes of this Opposition, that is absent from the

---

[6] *See, e.g.*, Agent Compensation Template, FCIC (2025–2027) (attached as Ex. A).

[7] 2023 SRA, Ex. B to ProAg's Mot. to Dismiss, Altman Grp., No. 1:25-cv-2193 (SLS).

[8] Further, while RMA can request contracts at any time, RMA only conducts regular review of a sample of contracts once every three years during its National Financial Operations Review. RMA Explanatory Notes at 28-23.

Complaint Plaintiff filed, unsupported by the agreements Plaintiff attached, contradicted by the SRA's actual text, and simply false. Courts do not permit plaintiffs to supplement or amend deficiencies in the Complaint through "a bare request in an opposition to a motion to dismiss." *Rollins v. Wackenhut Servs. Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (cleaned up); *see also Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (Courts need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint").

In any event, even accepting Plaintiff's recharacterization, the "conduct complained of" in this action is the reduction of Plaintiff's commission schedule and ProAg's alleged cherry-picking of policies—both of which occurred in Texas, involved Texas policies, and were carried out in Texas. That FCIC collects data does not transform ProAg's Texas conduct into a D.C. contact for specific jurisdiction purposes. Specific jurisdiction requires a direct nexus between ProAg's forum contacts and the specific claims at issue. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). No such nexus exists here. Even if Plaintiff's recharacterization were credited, the alleged transmission of materials to FCIC would still fall squarely within the government-contacts exception, which excludes regulatory communications with federal agencies from the personal-jurisdiction analysis. *See United Therapeutics*, 278 F. Supp. 3d at 417.

As ProAg established in its Motion, ProAg is not incorporated, does not maintain a presence within, does not hold a Certificate of Authority to operate as an insurance company, and has not acted in any way within the District of Columbia. Plaintiff's Opposition, despite its length, does not change any of these facts. It supplements the Complaint with contacts that were never pleaded, each of which reduces to a contact with FCIC, and none of which establishes the purposeful availment of the D.C. forum that personal jurisdiction requires. The Court should dismiss all claims against ProAg for lack of personal jurisdiction.

8

## II.  Venue is Improper for All of Plaintiff's Claims

As explained in ProAg's Motion to Dismiss, venue is improper for the following reasons: none of the venue bases set forth in 28 U.S.C. § 1391(b) is satisfied as to ProAg: ProAg does not reside in this District and Plaintiff has not—and cannot—identify a substantial part of the events giving rise to its claims against ProAg that occurred in the District; § 1391(e) applies only to officers or employees of the United States, not to private parties such as ProAg; 7 U.S.C. § 1506(d) is specific to suits against "the Corporation" and does not extend to private defendants; and Plaintiff's Opposition does not cure any of these deficiencies. Instead, it doubles down on a theory that FCIC's D.C.-based regulatory activity establishes venue against ProAg, while newly invoking the doctrine of pendent venue to attach claims that would otherwise be improperly venued here. Neither argument withstands scrutiny.

### A.  FCIC's DC Activities Cannot Establish Venue Against ProAg

Plaintiff argues that "a substantial part of the actions giving rise to Plaintiff's causes of action occurred in DC," stating that "Defendant FCIC had a duty to enforce the provisions of the FCIA" and that it "directed its concerns to Defendant FCIC in D.C. because they are responsible for the administration of the FCIA and SRA." That argument conflates FCIC's conduct with ProAg's conduct and then uses the former to establish venue over the latter. The law does not permit this. As previously discussed, venue must be proper as to each defendant, and a contractual relationship with the U.S. government is insufficient "to render the District of Columbia a suitable venue for any litigation tangentially connected to that relationship." *Est. of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 9 (D.D.C. 2009).

Nevertheless, Plaintiff points to paragraphs 94-128 of the Complaint as establishing D.C.-based events giving rise to its claims. *See* Opp'n at 7. Those paragraphs describe communications between Plaintiff's own counsel and FCIC. That Plaintiff chose to direct its grievances about a

Texas-based commission dispute to a D.C.-based federal agency does not transform ProAg's Texas conduct into D.C. events for venue purposes. The "events or omissions" that § 1391(b)(2) contemplates are the defendant's acts, not a plaintiff's subsequent communications to regulators about those acts. "Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 68 (D.D.C. 2021) (quoting *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993)).

Plaintiff also argues that venue is proper because it "seeks an interpretation of § 1507(c)(3), which is administered by Defendant FCIC from DC," and that its contracts with ProAg are "sent to Defendant FCIC in DC each year with the Plan of Operation." As addressed above in Section I, characterization of ProAg's obligations is factually unsupported and contradicted by the SRA itself, which provides only compensation records "shall be in writing, and provided to FCIC upon request."[9] In any event, Plaintiff's request for statutory interpretation of § 1507(c)(3)—a provision administered by FCIC from D.C.—establishes venue for claims against FCIC, not venue for claims against ProAg. The statute and its administration are FCIC's prerogative. Seeking an interpretation of a federal statute administered by a D.C. agency does not establish venue against a Texas private party that is not responsible for administering that statute.

### B.    Plaintiff's Pendent Venue Theory Fails as a Matter of Law and Fact

Recognizing that venue is likely improper as to ProAg, Plaintiff now attempts to salvage its claims by invoking pendent venue. Plaintiff argues that "when venue lies for some of a plaintiff's claims, the doctrine of pendent venue may allow the court to entertain other claims that are not properly venued in the court," and that "[p]ursuant to pendent venue, federal courts may

---

[9] 2023 SRA § III(a)(4)(A), Ex. B to ProAg's Mot. to Dismiss, Altman Grp., No. 1:25-cv-2193 (SLS) (D.D.C. Jan. 15, 2026).

exercise their discretion to hear claims as to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued and the interests of judicial economy are furthered by hearing the claims together." Opp'n at 8 (quoting *Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 37 (D.D.C. 2009)). This argument ignores clear statutory directives and controlling authority foreclosing the use of pendent venue to hale a private party into this District where venue would not otherwise lie.

Section 1391(e)(1) could not be clearer: "[a]dditional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements **as would be applicable if the United States or one of its officers, employees, or agencies were not a party.**" As *Sierra Club* itself explains, "[w]here a special venue provision places venue in a specific district, such a provision controls venue for that claim." 623 F. Supp. 2d at 37. Plaintiff's claims against FCIC rely on § 1391(e)(1), which expressly requires that venue be independently proper as to any additional parties. Courts in this District have squarely rejected Plaintiff's maneuver here, holding that "if suit is sought to be maintained not only against a federal defendant embraced within Section 1391(e) but also against an '(a)dditional person( ),' there must be proper venue as specified in the pertinent statutes as to each." *Little v. King*, 768 F. Supp. 2d 56, 65 n.7 (D.D.C. 2011) (quoting *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978)).

ProAg raised this exact issue in its Memorandum, citing *Lozano v. Civiletti*, which squarely held that venue was improper as to Texas-private defendants even where venue was proper as to a government defendant. 89 F.R.D. 475, 478 (D.D.C. 1980). Plaintiff neither cites nor attempts to distinguish *Lozano*. That omission is telling. Pendent venue cannot be used to evade venue requirements that Congress expressly imposed on claims against private parties.

11

Even setting aside this dispositive defect, Plaintiff's invocation of pendent venue fails on its own terms. Allowing Plaintiff to proceed in this District—where venue would not otherwise exist—despite the availability of a proper and comprehensive venue in Texas, would be unjust and contrary to the doctrine Plaintiff invokes. Plaintiff's own articulation of a purported "common nucleus of facts" confirms that the operative events are centered in Texas, not Washington, D.C. Plaintiff points to ProAg's agent contracts, commission reductions, an alleged office visit requiring policy movements, and Plaintiff's subsequent reports to FCIC. *See* Opp'n at 8. Every underlying event occurred in Texas. Reporting those Texas events to FCIC in Washington, D.C. does not transform Texas-based conduct into D.C.-based operative facts. Plaintiff's framing only reinforces that the center of gravity of this dispute lies in Texas, not this District.

Accordingly, venue is improper as to all claims against ProAg and should be dismissed.

### III.    The Claims Specifically Against FCIC Should Be Dismissed As to ProAg for Failure to State a Claim, Pursuant to Rule 12(b)(6)

#### A.    The Declaratory Judgment Act Does Not Provide a Right of Action Against ProAg

Plaintiff's principal response to ProAg's Rule 12(b)(6) argument is to assert that "[t]he right of action in this case is a declaratory judgment." Opp'n at 11. That assertion is both Plaintiff's most candid and most damaging concession, as it confirms precisely what the Motion to Dismiss established: Plaintiff has no independent cause of action and relies entirely on the Declaratory Judgment Act as a freestanding jurisdictional hook. However, the Declaratory Judgment Act is a source of remedy and not a source of federal jurisdiction. *C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002). Plaintiff's bald invocation of it as "the right of action" does not transform the absence of an underlying claim into a cognizable one.

Plaintiff's reliance on *California v. Texas* does not cure the Complaint's defect, as the decision itself states that "[t]he Declaratory Judgment Act [] alone does not provide a court with

12

jurisdiction." 593 U.S. 659, 672 (2021). Plaintiff misreads the Court's case or controversy requirement as sufficient to permit declaratory relief, but that is backward: the existence of a case or controversy is required, but it is not sufficient to establish jurisdiction for a declaratory judgment. As the Court explained, the "Act does 'not confe[r] jurisdiction over declaratory actions when the underlying dispute could not otherwise be heard in federal court.'" *Id.* (citations omitted).

Causes 2, 4, 6, and 8 seek declarations only against FCIC: that FCIC has an affirmative duty to ensure compliance; that FCIC violated its obligation to ensure ProAg is in compliance with the Act; that FCIC failed in its duty to require ProAg to pay compliant agent compensation; and that FCIC failed in its duty to ensure that the 2021 commission schedule complies with § 1507(c)(3) of the Act. None of these actions seek relief from ProAg. Plaintiff does not dispute this and concedes that "specific damages have not been sought against Defendant ProAg," but nevertheless contends that it may "seek a declaration of rights and responsibilities" as to these claims, without any of these claims requiring such. Opp'n at 16.

Plaintiff's fallback theory—that § 1507(c)(3) is incorporated into the SRA and, through the SRA, into the Agency Agreements, thereby imposing a federal "reasonable compensation" standard on ProAg's private contracts with Altman—fails at every step. Opp'n at 13. The SRA's sole treatment of agent compensation requires only that compensation be in writing and not exceed 80 percent of A&O subsidy and CAT LAE.[10] The section number "1507(c)(3)," the phrase "reasonable compensation," and any language "recognizing the function of the agent or broker" appear nowhere in the SRA—a deliberate omission in a document this comprehensive. Mem. at 20. Plaintiff's attempt to bridge this gap through the SRA's general order of precedence clause

---

[10] 2023 § III(a)(4)(A)–(B), Ex. B to ProAg's Mot. to Dismiss, Altman Grp., No. 1:25-cv-2193 (SLS) (D.D.C. Jan. 15, 2026).

fares no better: a conflict-resolution provision is not an incorporation by reference of every provision of the FCIA, and it does not expand the SRA's substantive scope to encompass statutory provisions the SRA does not address. More fundamentally, § 1507(c)(3) governs contracts between FCIC's Board and agents—placing the compensation obligation on "the Board," not on AIPs. Plaintiff contracted with ProAg, not FCIC. The statute's subject matters, and Plaintiff cannot rewrite it to reach a private defendant. The conference report confirms this: the obligation to provide reasonable compensation was placed squarely on the Board—FCIC—not on private insurers. Plaintiff's attempt to redeploy a provision governing FCIC's direct contracting authority as a mandate on ProAg's private agreements is a fundamental misreading of the statute and the governing framework, and it fails as a matter of law.

Even so, the right to seek a declaration does not, by itself, create the right to seek that declaration against a party from whom no relief is sought and against whom no independent cause of action exists. The relief requested must establish a cause of action against each defendant separately. *Dougherty v. United States*, 156 F. Supp. 3d 222, 235 (D.D.C. 2016). Plaintiff's failure to identify any independent source of jurisdiction or relief sought from ProAg in Causes 2, 4, 6, and 8 is not a technical pleading error—it is a fundamental defect.

### B.    Pendent Jurisdiction Does Not Supply the Missing Cause of Action Against ProAg

Because the Declaratory Judgment Act does not provide an independent basis for federal jurisdiction—there is no anchor claim from which supplemental jurisdiction may flow. Plaintiff, nevertheless, invokes pendent jurisdiction, arguing that because "most claims in Plaintiff's Complaint against Defendant FCIC are predicated on Defendant ProAg's actions of cherry-picking policies and reducing agent commissions," the Court may exercise jurisdiction over all claims

14

against ProAg under the test set forth in *Reuber v. United States*, 750 F.2d 1039, 1048 (D.C. Cir. 1984). Opp'n at 10. That argument fails for multiple independent reasons.

First, Plaintiff's reliance on judge-made pendent jurisdiction ignores that Congress has since codified—and limited—supplemental jurisdiction through 28 U.S.C. § 1367. As the Supreme Court recently reaffirmed, § 1367 confers supplemental jurisdiction only over claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 47–48 (2025). Supplemental jurisdiction is, therefore, wholly derivative of original jurisdiction. Where no claim within the Court's original jurisdiction remains, "the leftover . . . claims are supplemental to nothing—and § 1367(a) does not authorize a federal court to resolve them." *Id.* at 34. Here, Plaintiff lacks an independent federal claim against ProAg—and indeed lacks one altogether—so § 1367 provides no jurisdictional basis to keep ProAg in this case.

Second, the factual overlap Plaintiff identifies is insufficient as a matter of law. Supplemental jurisdiction requires that claims "derive from a common nucleus of operative fact," not merely that they share background or contextual facts. *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 536 (D.C. Cir. 2025). Plaintiff's claims against FCIC concern FCIC's alleged regulatory failures under the FCIA. Plaintiff's claims against ProAg concern a private contractual dispute over agent compensation. That ProAg's conduct allegedly prompted Plaintiff to complain to FCIC does not mean the claims share operative facts for jurisdictional purposes. One set of claims turns on FCIC's regulatory duties; the other turns on the terms of a private contract. Minimal factual overlap of this sort does not satisfy § 1367(a). *See, e.g., Wisey's #£1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184 (D.D.C. 2013) (cleaned up) (holding that "[s]tate

15

common law claims that only 'relate generally' to federal claims through a broader dispute and do not share any operative facts are insufficient for supplemental jurisdiction.")

Accordingly, as the Declaratory Judgment Act supplies no jurisdictional basis, pendent jurisdiction cannot be used to retain claims against a private defendant with no independent federal liability, and § 1367 does not authorize supplemental jurisdiction absent an anchor claim within the Court's original jurisdiction. For those reasons, claims 2, 4, 6, and 8 – the only claims asserted against ProAg – must be dismissed.

### IV.    The Court Lacks Subject Matter Jurisdiction as to All Contractual Claims

Plaintiff's argument begins with the assertion that "the right of action in this case is a declaratory judgment." Opp'n at 13. That framing is the problem, not the solution. This is a contract case—a dispute over the commission rates ProAg paid Altman under the 2021 and 2023 commission schedules—that Plaintiff has deliberately recharacterized as a declaratory judgment action in order to circumvent the arbitration clause to which it agreed, avoid the contractual forum by which it is bound, and try to manufacture federal jurisdiction that would not otherwise exist. Courts in this jurisdiction do not permit that maneuver. As the D.C. district court has long recognized, a court must "look beyond the pleadings to the actual nature of the relief they seek"— not the label it has chosen to affix. *D.C. Ret. Bd. v. United States,* 657 F. Supp. 428, 432 (D.D.C. 1987); *see Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016); Mem. at 22–23. What Plaintiff actually seeks is a court order declaring that the commission reductions ProAg imposed were unlawful. That is a retrospective challenge to private contractual compensation decisions. No amount of declaratory judgment labeling changes that reality.

*Empire Healthchoice Assurance, Inc. v. McVeigh* forecloses Plaintiff's position. The Court there refused § 1331 jurisdiction over a reimbursement claim arising in a federally regulated program, holding that the dispute "centered" not on a federal agency's action but on a fact-bound,

16

situation-specific private claim—in contrast to *Grable*, which "presented a nearly pure issue of law, the resolution of which would establish a rule applicable in numerous tax sale cases." *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 681 (2006) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)). The Court note that *Grable* itself "emphasized that it takes more than a federal element 'to open the arising under door." and that only a "slim category" of cases are exemplified by *Grable*. *Id.* at 701. The same is true here for each of Plaintiff's claims:

Cause 1 (validity of the 2023 commission schedule): Plaintiff does not dispute that this turns on whether Altman consented to the amended schedule. Opp'n at 14. That is a question of contract formation—not statutory interpretation. Plaintiff effectively concedes the point by failing to identify any federal statutory question it raises.

Cause 3 (cherry-picking/refusal to accept new policies): Whether ProAg refused to accept new policies from Altman is an archetypal question of fact requiring witness testimony and documentary evidence to resolve. It does not depend on interpreting any federal statute—it depends on what ProAg's agents did or did not do in Texas. That is precisely the kind of "fact-bound and situation-specific" claim that *Empire* held does not support federal question jurisdiction.

Cause 5 (reasonable compensation): Whether the commissions ProAg paid Altman were "reasonable" is a paradigmatic factual inquiry. As previously discussed, reasonableness requires "a comparison between the compensation that is under consideration and the prevailing rates of compensation paid to the holders of comparable positions by comparable companies within the same industry." *Jones Bros. Bakery v. United States*, 411 F.2d 1282, 1285 (Ct. Cl. 1969). That is a factual determination—not a question of statutory interpretation—and it is entirely fact-bound to Altman's specific market, function, and contractual relationship with ProAg.

17

Cause 7 (validity of the loss-ratio exception in the 2021 schedule): Plaintiff argues this requires interpretation of § 1507(c)(3). It does not—and not merely because, as established in Section III above, § 1507(c)(3) does not appear in the SRA or Agency Agreements and does not govern the ProAg-Altman relationship. Setting that aside, for a federal statutory question to support § 1331 jurisdiction, the federal issue must be the dispositive issue in the case. In *Grable*, the statutory question was "an essential element of [the] claim" and "appear[ed] to be the only … issue contested in the case"; in contrast, *Empire*'s reimbursement claim was "poles apart" because it was "triggered, not by the action of any federal department, agency, or service," but by private conduct. *Empire*, 547 U.S. at 700. Here, the dispositive questions for Cause 7 are whether the loss-ratio exception was contractually triggered and properly applied to Altman—factual questions about the parties' contractual performance, not questions of federal law. The statutory gloss Plaintiff applies to these claims does not transform them into federal questions. Plaintiff cites no new authority to the contrary.

In sum, none of Plaintiff's claims present a "nearly pure issue of law." *See Empire*, 547 U.S. at 701. Each is fact-bound, situation-specific, and turns on the contractual relationship between ProAg and Altman, not on any substantial question of federal law. Subject matter jurisdiction is absent, and all claims against ProAg should be dismissed pursuant to Rule 12(b)(1).

## V. The Court Should Exercise its Discretion to Dismiss the Matter as an Improper Use of Declaratory Judgment

### A. Plaintiff Fails to Satisfy Either Prong of the D.C. Circuit's Declaratory Judgment Test

Plaintiff concedes that this Court has discretion over its declaratory judgment claims. The only question is whether the Court should exercise that discretion. It should not. Plaintiff does not challenge the legal standards ProAg invokes to govern that inquiry. Instead, Plaintiff argues only

that those standards favor declaratory relief here. In doing so, Plaintiff largely ignores ProAg's arguments, misunderstands the standards, and repeatedly contradicts its own positions.

Plaintiff asserts that ProAg "simply states that declaratory judgments can be dismissed for equitable, prudential, or policy arguments but never asserts any of these bases in support of its Motion to Dismiss." Opp'n at 21–22. That assertion is incorrect. ProAg squarely applied the D.C. Circuit's governing framework and demonstrated that none of the criteria for declaratory relief is satisfied. Mem. at 24–25. Under controlling D.C. Circuit precedent, courts consider "(1) whether the judgment will serve a useful purpose in clarifying the legal relations at issue, or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 36 (D.D.C. 2016). Plaintiff cannot satisfy either prong.

First, a declaration would not meaningfully clarify the parties' legal relations. At bottom, Plaintiff seeks a ruling on whether the 2021 or 2023 commission schedules were valid as applied to Altman. That determination would resolve only whether one Texas agent was underpaid under two specific schedules; it "would not lead to any controlling effect in future cases." Mem. at 23. The requested declaration would not establish a generally applicable legal rule—it would merely adjudicate a fact-bound compensation dispute.

Second, declaratory relief would not terminate the controversy. Even if this Court declared that § 1507(c)(3) was relevant and required "reasonable compensation," such a declaration would leave unresolved what that standard means here—whether damages are owed, and what remedy, if any, is appropriate. Furthermore, the Complaint seeks a declaration as to retroactive events, which are more appropriately resolved through full litigation. Those unresolved issues would require the kind of additional proceedings that *Glenn* instructs courts to avoid. Mem. at 24–25.

19

Equitable and prudential considerations further compel dismissal. As the Memorandum explained, allowing Plaintiff's claims to proceed "would lead to significant effect on public issues as it would lead to drastic changes in relationships between FCIC, AIPs, and agents, as well as the implementation of the FCIA." Mem. at 25. Plaintiff never meaningfully engages with this point, despite its own assertion that "this interpretation is important to the crop insurance program because there are hundreds of agents in Texas, and potentially thousands of agents nationwide who are affected by an interpretation of § 1507(c)(3)." Opp'n at 27.

Plaintiff's own response to ProAg's authority confirms that declaratory relief is particularly inappropriate here. ProAg cited *Jones Bros. Bakery v. United States* in its Memorandum for the settled proposition that "reasonable compensation" is "a factual question determined by the finder of fact," requiring assessment "in the light of all the facts and circumstances involved in the case." Mem. at 26 (citing 411 F.2d 1282, 1285 (Ct. Cl. 1969)). In its Opposition, Plaintiff does not meaningfully dispute that principle. Instead, Plaintiff evaluates *Jones* and acknowledges that the inquiry ultimately turns on a factual comparison—arguing that Altman's compensation should be measured against what other agents performing similar functions allegedly received. Opp'n at 28. That framing underscores the point: resolving whether Altman received "reasonable compensation" would require discovery, factual comparisons, and market-based analysis of compensation paid to other agents. Those fact-intensive determinations are precisely the type of inquiries D.C. courts have held unsuitable for declaratory judgment. B*azarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 793 F. Supp. 2d 124, 132 (D.D.C. 2011); G*ibson v. Liberty Mut. Grp., Inc.*, 778 F. Supp. 2d 75, 79 (D.D.C. 2011).

Recognizing that its claims would require factual determinations beyond what declaratory judgment typically addresses, Plaintiff argues that all factual allegations must be "presumed to be

20

true." Opp'n at 27. However, the issue is not whether facts are assumed true at the pleading stage, but that resolution of the requested declaration would necessarily require substantial factual development. The Declaratory Judgment Act does not relax jurisdictional, justiciability, or discretionary requirements—it adds a layer of scrutiny. A court must still assess "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," and even when that threshold is met, "the Act gives courts discretion to determine 'whether and when to entertain an action.'" Glenn, 222 F. Supp. 3d at 35–36. The Rule 12(b)(6) standard does not compel a court to exercise declaratory judgment jurisdiction.

### B. Plaintiff's Agency-Action Theory and "Nationwide Importance" Argument Fail

Plaintiff attempts to recast FCIC's inaction as a reviewable statutory interpretation, citing *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*, 783 F.2d 237, 245–46 (D.C. Cir. 1986). Opp'n at 23. *International Union* is inapposite. Reviewability there was triggered by a single, dispositive feature: the Department of Labor issued a formal, written Statement of Reasons containing affirmative, new statutory interpretations—specifically that two categories of previously reportable employer activities fell within a statutory exception—with "immediate and certain effect" on employers' and consultants' reporting obligations. *Int'l Union*, 783 F.2d at 247–49. The court expressly grounded its holding in the need to prevent agencies from announcing "new interpretations of statutes only in the context of decisions not to take enforcement action" as a mechanism to avoid judicial review. *Id.* at 249.

None of those conditions exist here. FCIC issued no formal Statement of Reasons, no adjudicatory pronouncement, and no affirmative announcement of a new statutory interpretation of § 1507(c)(3). What Plaintiff characterizes as a "statutory interpretation" is FCIC's silence

21

following Plaintiff's complaint letters—a common exercise of enforcement discretion, not a reviewable agency interpretation. As discussed in the Memorandum, that silence is unreviewable. Mem. at 24–25. FCIC's decision not to intervene in a private commission dispute falls squarely within the category of unreviewable enforcement judgments that *Heckler* and *Citizens for Responsibility* foreclose. *International Union* provides Plaintiff no foothold. *See Heckler v. Chaney*, 470 U.S. 821, 831–35 (1985) (agency decisions not to initiate enforcement proceedings are presumptively unreviewable); *Citizens for Responsibility & Ethics in Wash. v. FEC*, 892 F.3d 434, 440–41 (D.C. Cir. 2018) (declining to review agency non-enforcement decisions).

Finally, Plaintiff cannot have it both ways. For jurisdiction, Plaintiff asserts that interpretation of § 1507(c)(3) "is important to the crop insurance program because there are hundreds of agents in Texas, and potentially thousands of agents nationwide who are affected." Opp'n at 27. Simultaneously, it claims that "a ruling in Plaintiff's favor would not lead to drastic changes in the relationships between the parties or the implementation of the FCIA." Opp'n at 25–26. Those positions are irreconcilable. If the issue is nationally significant enough to affect thousands of agents, a ruling necessarily carries the program-wide consequences that counsel against declaratory relief—precisely the concern recognized in *FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 117 (D.D.C. 2015) (holding that the "remaining claims raise issues of public importance that are better decided in the context of a fully-litigated case."). If the dispute is limited to Plaintiff's commission schedule, it is a contract dispute subject to arbitration, not a substantial federal controversy warranting declaratory judgment. To the extent this action is properly characterized as a declaratory judgment case, it runs first and only against FCIC: Plaintiff must first obtain declarations defining FCIC's statutory and regulatory obligations under the FCIA and SRA, and only if those declarations establish noncompliance could any downstream dispute

22

with ProAg arise, which would then belong—if at all—in arbitration. Either way, this Court should decline to exercise its discretion and dismiss all claims against ProAg.

As a final note, by failing to address ProAg's arguments regarding the requirement to exhaust administrative remedies, the inapplicability of 28 U.S.C. § 1391(e) as to venue, the legislative history of § 1507(c)(3), and the legal significance of Plaintiff's continued business placement after receiving the commission schedule it now challenges as unlawful, Plaintiff has waived any argument to the contrary. *See Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294-95 (D.C. Cir. 2004) (holding that failure to address an argument constitutes abandonment).

### VI.   In the Alternative, the Court Should Compel Arbitration Based on the Claims Against ProAg and Stay Proceedings

Plaintiff's Opposition raises three arguments against arbitration: (1) that the arbitration clause is restricted to breach of contract cases, (2) that its claims arise under the Declaratory Judgment Act and are, therefore, exclusively within the jurisdiction of district courts, and (3) that the FCIC cannot be forced to arbitrate. Plaintiff cites no authority for any of these propositions.

D.C. Courts have consistently interpreted the terms similar to "any dispute" to broadly encompass claims beyond a breach of contract case. *See, e.g.*, *Sheet Metal Workers' Int'l Ass'n v. United Transp. Union*, 767 F. Supp. 2d 161, 174 (D.D.C. 2011) (cleaned up) ("Courts consider arbitration clauses to be broad if they apply to disputes arising under or concerning the contract"); *Wolff v. Westwood Mgmt., LLC*, 503 F. Supp. 2d 274, 281-82 (D.D.C. 2007), aff'd, 558 F.3d 517 (D.C. Cir. 2009) (cleaned up) ("Where an arbitration clause is broad, arbitration is appropriate whenever a party has asserted a claim, however frivolous, that on its face is governed by the contract."). Recognizing the liberal presumption favoring arbitration, this Court has acknowledged the Supreme Court's articulation that broad arbitration clauses encompass all matters that "touch" upon the contract. *Wolff*, 503 F. Supp. at 282, aff'd, 558 F.3d 517 (D.C. Cir. 2009) (citing

23

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444) (1985) (recognizing that even limited language can have broad impact).

Instead, Plaintiff attempts to argue that arbitrators have no authority to hear declaratory judgment claims. Plaintiff's Opposition claims that "Only the district courts have the authority to hear Declaratory Judgment Act cases" Opp'n at 29-30 (citing 28 U.S.C. § 2201). However, this is a misstatement of the statute, as 28 U.S.C. § 2201 only grants courts the authority to issue declarations, not the exclusive jurisdiction to do so. Plaintiff cannot cite any authority to support its position circumscribing an arbitrator's authority. To the contrary, courts consistently hold that "it is particularly necessary to accord the narrowest of readings to the excess-of-authority provision" *See Affinity Fin. Corp. v. AARP Fin., Inc.*, 794 F. Supp. 2d 117, 120 (D.D.C. 2011), *aff'd,* 468 F. App'x 4 (D.C. Cir. 2012). Further, Plaintiff points to no explicit congressional demand overriding the FAA's mandate favoring the enforcement of arbitration. That is because the Supreme Court has held that the Declaratory Judgment Act is procedural only and does not expand a court's jurisdictional reach. *See Vaden v. Discover Bank,* 556 U.S. 49, 70 (2009) (holding that parties may not ask courts for resolution "when the court would not have federal-question jurisdiction over the controversy as a whole.")

As discussed, the Declaratory Judgment Act provides a form of relief; it does not create a forum immune from arbitration. Courts have uniformly held that a party cannot circumvent an arbitration clause by relabeling contractual claims. *See* Mem. at 27-28. The substance of Plaintiff's claims—whether THE commission schedules were valid and whether Altman was adequately compensated—arises directly from the Agency Agreements. That Plaintiff has disclaimed damages does not change the analysis: a court order declaring Plaintiff's entitlement to higher compensation is, in practical effect, identical to a damages claim and is subject to arbitration.

24

Plaintiff's remaining argument is that because FCIC cannot be compelled to arbitrate, the clause is unenforceable. That is not the law. Arbitration clauses are routinely enforced against contracting parties even in multi-party litigation involving non-signatories, with courts bifurcating proceedings as necessary. FCIC's status as a non-party to the Agreement has no bearing on Plaintiff's own obligations under it. Plaintiff agreed to arbitrate. It must be held to that agreement.

If this Court declines to dismiss Plaintiff's claims, it should compel arbitration and stay proceedings pursuant to 9 U.S.C. §§ 3–4.

## **CONCLUSION**

In conclusion, as to ProAg, this Court should dismiss the Complaint in its entirety and *with prejudice*. In the alternative, this Court should compel arbitration and stay proceedings until such arbitration has concluded.

Dated: March 23, 2026

Respectfully submitted,

PRODUCERS AGRICULTURE
INSURANCE COMPANY

/s/ Thomas A. Coulter

Thomas A. Coulter (DC Bar No. 436423)
Brian W. Stolarz (DC Bar No. 466160)
Ian L. Slingsby (DC Bar No. 90018654)
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001
Telephone: (202) 662-0200
thomas.coulter@nortonrosefulbright.com
brian.stolarz@nortonrosefulbright.com
ian.slingsby@nortonrosefulbright.com

*Counsel for Defendant Producers Agriculture
Insurance Company*

25