UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| THE ALTMAN GROUP, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 25-2193 |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL CROP INSURANCE CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
ON THE SCOPE OF THE WAIVER OF SOVEREIGN IMMUNITY**

This Court has asked the parties to provide a supplemental memorandum addressing the

scope of the waiver of sovereign immunity in 7 U.S.C. § 1506(d). This Court requested that the

parties address the significance, if any, of the decisions in *New Heights Farm I, LLC v. Great Am.

Ins. Co.*, 119 F.4th 455 (6th Cir. 2024); *FDIC v. Meyer*, 510 U.S. 471 (1994); *Fed. Hous. Admin.,

Region No. 4 v. Burr*, 309 U.S. 242 (1940), and *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306

U.S. 381 (1939). As demonstrated more fully below, the Supreme Court cases are significant and

support the position that waivers of sovereign immunity for government corporations must be

construed liberally and, while the waiver of sovereign immunity in § 1506(d) has limitations on

its scope, none of those limitations apply in this case. *New Heights Farms* can be distinguished on

the law and the facts, so it is not significant to the case before this Court.

*Keifer & Keifer v. Reconstruction Finance Corporation et al.,* 306 U.S. 381, 392 (1939) involved a case where Congress had created the Reconstruction Finance Corporation and provided it the authority to "sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal". The issue involved the authority given to the Reconstruction Finance Corporation to create regional agricultural credit corporations who were empowered to make loans to farmers and stockmen for agricultural purposes. *Id.* at 387. A regional agricultural credit corporation entered a contract to provide sufficient feed and water for livestock but was negligent in its care, causing damage to the livestock. *Id.* The farmer sued both the Reconstruction Finance Corporation and the regional agricultural credit corporation. *Id.* The lower court dismissed the suit against the regional agricultural credit corporation on the grounds it was immune from suit. *Id.* at 388.

The question was whether Congress granted immunity to the regional agricultural credit corporation when there was no express language regarding sovereign immunity involving the regional agricultural credit corporation. *Id.* The court looked at the 40 government corporations created by Congress and found that all had the authority to sue and be sued, including FCIC. *Id.* at 390, note 3. The Supreme Court found the current climate <u>disfavored</u> governmental immunity and that waivers should be read with "hospitable scope." *Id.* 391. The Supreme Court also found that Congress knew how to restrict its consent to suits and when the consent to suit is without qualification, limitations on consent should not be implied. *Id.* at 395-396.

Section 1506(d) states "Subject to section 508(j)(2)(A), the Corporation, subject to the provisions of section 508(j), may sue and be sued in its corporate name, but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Corporation or its property." Under *Keifer*, this provision must be liberally construed. However,

unlike *Keifer,* Congress placed limitations on the waiver of immunity provided by § 1506(d), but they are limited to attachment, injunction, garnishment, or other similar process, mesne or final. Under *Keifer,* this means sovereign immunity is waived except for the specified limitations. In this case, Plaintiff has sought declaratory judgments, which simply seek to determine the rights of the parties or request an opinion from the court on a question of law <u>without ordering anything to be done</u>. This is different from attachment[1], injunction,[2] or garnishment,[3] or similar process, which requires an action by or against the agency or involve seizing property or money to satisfy a debt. Plaintiff has not sought any money or property or asked this Court to order Defendants to do anything. Plaintiff is only requesting this Court to establish the obligations and duties of FCIC to regulate and enforce the FCIA and SRA and the meaning of § 1507(c)(3). Therefore, declaratory judgment is not a "similar process" to attachment, injunction, or garnishment and should not be included in the limitations on the scope of § 1506(d).

In addition, *Keifer* makes clear that Congress knew how to restrict its consent to suits, including when it restricted § 506(d), and if Congress wanted to restrict the waiver of sovereign immunity to other actions, such as declaratory judgments, it knew how to do so. *Id.* at 395-396. This is reinforced under the negative implication doctrine, which states where certain terms have been explicitly set forth in a statute, that statute may be interpreted not to apply to terms that have been excluded from the statute. *See N.L.R.B. v. SW General, Inc.,* 580 U.S. 288, 302 (2017), SCALIA & GARNER, *supra* note 5, at 107. Applied to this case, the fact that Congress did not

---

[1] Attachment is a court order that seizes or places a claim on a defendant's property to secure a debt or enforce a judgment.

[2] An injunction is an equitable remedy in the form of a special court order compelling a party to do or refrain from doing certain acts.

[3] Garnishment is a court order directing that money or property of a third party (usually wages paid by an employer) be seized to satisfy a debt owed by a debtor to a plaintiff creditor

provide any other limitations on the waiver of immunity in § 1506(d), when it knew how, means that it did not intend to do so.

Under, *Keifer* and *SW General, Inc.,* § 1506(d) provides a waiver of sovereign immunity for all actions not restricted in that section. Declaratory judgment is not one of the actions restricted so this Court should liberally construe the waiver of sovereign immunity contained in § 1506(d) to apply to the declaratory judgments sought in Plaintiff's Complaint.

In *Federal Housing Administration, Region No. 4 v. Burr,* 309 U.S. 242, 243 (1940)*,* the case involved whether the Federal Housing Administration is subject to garnishment for moneys due an employee. All powers of the Federal Housing Administration were granted to the Administration who was "authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." *Id.* at 244. The issue before the court was whether garnishment came within the scope of the authorization. *Id.* The court stated:

> As indicated in *Keifer & Keifer v. Reconstruction Finance Corporation*, supra, we start from the premise that such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. *Keifer & Keifer v. Reconstruction Finance Corporation*, supra. Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued', it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme,[3] that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued', that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

*Id.* at 245. Therefore, like *Keifer, Burr* requires the waiver of sovereign immunity to be liberally construed. The court in *Burr* went a step further and held that limitation on the waiver of immunity cannot be implied unless there is a <u>clear</u> showing by the government that: 1) the suit is inconsistent with the statutory or constitutional scheme; 2) it would gravely interfere with a governmental function; or 3) Congress clearly meant the clause to operate narrowly. *Id.*

The case before this Court is not inconsistent with the statutory scheme. Under 7 U.S.C. § 1507(c), Congress clearly intended policies to be sold and serviced by agents and 7 U.S.C. § 1508(k)(3) specified the reimbursement rates for administrative and operating ("A&O") expenses for approved insurance providers ("AIPs") <u>and agents</u>. Under 7 U.S.C. §§ 1516(a)(2)(A) and (b)(2)(B), Congress expressly authorized the payment of agent commissions from the insurance fund. Lastly, under 7 U.S.C. § 1507(c)(3), Congress expressly stated that agents "shall be reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect." Given the ambiguity regarding "reasonably compensated" it is not inconsistent with the statutory scheme that an interpretation of this provision be sought. Further, even if specific action had been sought against FCIC, given that Congress expressly authorized the use of agents in the crop insurance program, provided funding for the commissions paid to agents, and required that they be reasonably compensated based on their function in the sale and service of the policy, it is consistent with the statutory scheme that agents bring suit when one of these provisions have been violated.

In addition, there is no evidence that this suit would gravely interfere with a governmental function. First, this is a declaratory judgment action so Plaintiff is simply asking this Court to establish the rights of the parties and the meaning of § 1507(c)(3) within the context of the FCIA,

SRA, the Federal crop insurance program, and Defendant ProAg's established contracts with respect to compensation paid to other agents performing the same functions as Plaintiffs. These declaratory judgments would not gravely interfere with FCIC's governmental function.

Second, even if this case had sought for this Court to require FCIC to take any particular action, it would not gravely interfere with a governmental function. The courts have held that "The Federal Crop Insurance Corporation ("FCIC") is a wholly owned government corporation within the Department of Agriculture, established by Congress in 1938 <u>to regulate</u> the crop insurance industry. *In re 2000 Sugar Beet Crop Ins. Litigation,* 228 F.Supp.2d 992, 996 (D. Minn. 2002); *see also, Acceptance Ins. Companies Inc. v. U.S.,* 503 F.3d 1328 (Fed. Cir. 2007); *see also In re Peanut Crop Ins. Litigation,* 524 F.3d 458 (4th Cir. 2008); *Conrad v. Ace Property & Cas. Ins. Co.*, 532 F.3d 1000, 1001 (9th Cir. 2008); *Adkins v. Silverman,* 899 F.3d 395, 398 (5th Cir. 2018). The Federal Crop Insurance Act ("FCIA") itself states that FCIC is responsible for the enforcement of the FCIA. 7 U.S.C. § 1515(j)(1). Therefore, Plaintiff is seeking for this court to recognize FCIC's obligation to regulate the crop insurance program and that FCIC has an obligation to enforce compliance with the FCIA, including §1507(c)(3), and the SRA, an existing governmental function.

Further, paying reasonable compensation based on the function of the agent in the sale and service of the policy is the responsibility of the AIP, including Defendant ProAg, not FCIC. There should be no financial impact on the crop insurance program because the FCIA has expressly provided funding for agent commissions through the A&O expense reimbursement paid by FCIC to the AIPs, including Defendant ProAg. 7 U.S.C. §§ 1508(k)(4) and 1516(a)(2) and (b)(2). In addition, section III(a)(4)(B) of the SRA expressly contains provisions allowing for up to 80 percent of the A&O to be paid to agents for compensation. Plaintiff has not sought any declarations

except what has been expressly authorized under the SRA and FCIA. Plaintiff is simply asking this Court to clarify FCIC's obligations and duties to regulate and enforce the FCIA and SRA and establish the meaning of "reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the function of the agent or broker to provide continuing services while the insurance is in effect" in § 1507(c)(3).

Lastly, while there is evidence that Congress plainly meant the § 1506(d) to operate narrowly, as stated above, the limitations contained therein do not apply to the case before this Court. By virtue of its plain language, that narrow operation only applies to "attachment, injunction, garnishment, or other similar process, mesne or final." 7 U.S.C. § 1506(d). As stated above, the case before this Court does not involve any of these or similar actions. Further, as stated above, the fact that Congress did not provide any other limitations on the waiver of immunity in § 1506(d) means that it did not intend to do so. *See Keifer* and *SW General, Inc.,* 580 U.S. at 302.

Therefore, FCIC cannot meet its burden under *Burr* of <u>clearly</u> showing that there is an implied limitation on the waiver of immunity that would preclude this case. This Court should liberally construe the waiver of sovereign immunity contained in § 1506(d) to apply to the declaratory judgments sought in Plaintiff's Complaint.

*F.D.I.C. v. Meyer,* 510 U.S. 471, 471 (1994), involved an employee who was fired by a special representative of the F.S.L.I.C.[4] and sued the F.S.L.I.C. for allegedly firing the employee in violation of due process. The employee brought suit under *Bivens*, which held that an individual injured by a federal agent's alleged violation of the Fourth Amendment may bring an action for damages against the agent. *Id.* at 484. The Supreme Court recognized its previous analysis that sue-and-be-sued waivers are to be liberally construed and that such clauses cannot be limited by

---

[4] F.D.I.C. is the statutory successor to F.S.L.I.C.

7

implication unless the three standards cited in *Burr* have been met. *Id.* at 480. The Supreme Court stated that "Absent such a showing, agencies "authorized to 'sue and be sued' are presumed to have fully waived immunity," citing *International Primate Protection League v. Administrators of Tulane Ed. Fund,* 500 U.S. 72, 86, n. 8 (1991). *Id.* at 481.

The Supreme Court further cited *Burr,* 309 U.S., at 245, stating that "when Congress launche[s] a governmental agency into the commercial world and endow[s] it with authority to 'sue or be sued,' *that agency is not less amenable to judicial process than a private enterprise* under like circumstances would be." 510 U.S. at 481.  The Supreme Court held that not only must it liberally construe the sue-and-be-sued clause, but it must also presume the liability of the agency is the same as any other business. *Id.* However, the Supreme Court also discussed *Burr* and the other cited cases, stating that the claimant in those cases was seeking to hold the agency liable like any other business but the Supreme Court took it further and stated that:

> Moreover, nothing in these decisions suggests that the liability of a private enterprise should serve as the *outer boundary* of the sue-and-be-sued waiver. Rather, those cases "merely involve[d] a determination of whether or not [the particular suit or incident of suit] [came] within the scope of" the sue-and-be-sued waiver. *Burr, supra,* 309 U.S., at 244, 60 S.Ct., at 490. When we determined that the particular suit or incident of suit fell within the sue-and-be-sued waiver, we looked to the liability of a private enterprise as a *floor* below which the agency's liability could not fall. In the present case, by contrast, FDIC argues that a sue-and-be-sued agency's liability should never be *greater* than that of a private entity; that is, it attempts to use the liability of a private entity as a *ceiling.* Again, nothing in *Burr, Franchise Tax Board,* or *Loeffler* supports such a result.

*Id.* at 482-483. The Supreme Court stated that the courts must presume the legislature says in a statute what it means and means in a statute what it says there. *Id.* The Supreme Court held that, because there was no showing made to overcome the presumption, the sue-and-be-sued clause fully waived the immunity including for constitutional tort claims. *Id.*

As stated above, FCIC similarly cannot make a <u>clear</u> showing that the factors in *Burr* have been met so the presumption that the sue-and-be-sued clause fully waives sovereign immunity cannot be overcome. Under *Meyer*, FCIC's sue-and-be-sued clause should similarly be interpreted to fully waive sovereign immunity. In addition, under *Meyer,* the sue-and-be-sued clause cannot be construed to limit the scope of the waiver of sovereign immunity to contract claims. Further, although § 1506(d) does contain limitations on the waiver of sovereign immunity, it is limited to "attachment, injunction, garnishment, or other similar process, mesne or final." As stated above, none of these limitations apply in this case.

The court in *Meyer* did go a step further to determine whether there is a source of substantive law upon which the claimant relies that provides an avenue for relief. *Id.* at 483-484. Plaintiff does not believe this issue is applicable here but to the extent this Court may find it so, Meyer sought an extension of the Supreme Court's decision in *Bivens* to apply to agencies, and the Supreme Court rejected the argument on the basis that *Bivens* was intended to deter officers of the government and allowing Meyer to bypass qualified immunity of the individual officer to claim damages against the agency would make the remedies available under *Bivens* lost. *Id.* at 485.

That is not the case here. Plaintiff is not requesting this Court to extend any decisions beyond their scope in a manner that would render the original decision "lost". Further, declaratory judgments provide for a cause of action provided there exists a ripe case or controversy. As argued previously, Plaintiff has demonstrated that a ripe case or controversy exists and a declaratory judgment will provide the remedy that Plaintiff seeks, namely to clarify FCIC's obligations and duties to regulate and enforce the FCIA and SRA and establish the meaning of "reasonably compensated from premiums paid by the insured for such sales and renewals recognizing the

function of the agent or broker to provide continuing services while the insurance is in effect" in § 1507(c)(3).

In the case of *New Heights Farm I, LLC v. Great American Insurance Company*, 119 F.4th 455, 459 (6th Cir. 2024), a producer sued its AIP and FCIC after the AIP delayed paying a claim because the claim was under investigation by FCIC. The insured claimed the loss adjuster over-reported the amount of corn in storage, resulting in FCIC investigating the claim for suspected fraud. *Id.* The insured waited three years for payment under the policy before the insured brought suit. *Id.* The district court dismissed the complaint for nonpayment of the claim because the policy barred payment until the government finished the investigation. *Id.* at 460. The claims regarding the AIP taking false measurements of stored production were ripe but the court dismissed them against the insurance company for failure to file for arbitration and against FCIC because the claim was barred by sovereign immunity. *Id.*

*New Heights Farm* is not significant to the case before this Curt for several reasons. First, it is a Sixth Circuit case and is not binding on this court. Second, *New Heights Farm* can be factually distinguished. That case was bought by an insured farmer against the AIP and FCIC for failure to pay a claim. *Id.* at 459. The farmer argued that FCIC had constructively denied the insured's claim by not closing the investigation. *Id.* at 463. The court found that § 1506(d) did not contain any waiver of immunity regarding constructive claims and that Congress knew how to describe a constructive denial. *Id.* The court held that its conclusions were supported by 7 U.S.C. § 1508(j)(2), which permits a claim against the Corporation or Secretary only when the "claim for indemnity is denied," and § 1508(j)(2)(A), which sets the statute of limitations from one year after the date on which the final notice of the claim is provided, meaning that actual denial is required, not a constructive denial. *Id.* at 463-464.

*New Heights Farm* was decided on the language in § 1508(j)(2)(A), which mandates that claims be denied before suit may be brought. By its very terms, § 1508(j)(2)(A) is limited to the denial of insurance claims against farmers. In the case before this Court, there is no claim by an farmer so the language in § 1508(j)(2)(A) does not apply. Further, § 1506(d) does not contain any similar language regarding denials of claims. The Supreme Court has long held that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Sebelius v. Cloer, 569 U.S. 369, 378 (2013), citing *Bates v. United States,* 522 U.S. 23, 29–30 (1997). Therefore, § 1506(d) is not restricted to waivers of sovereign immunity only when claims have been denied.

*New Height Farms* can also be distinguished on the basis that FCIC was simply fulfilling its regulatory obligation to investigate a claim of fraud. In the present case, FCIC has rejected its regulatory obligation to ensure that Defendant ProAg comply with the provisions of § 1507(c)(3) and the SRA. So even if this Court were to find that *New Height Farms* is applicable to the present case, FCIC should not be rewarded for its decision to ignore its regulatory obligations.

Third, the court applied the incorrect legal standard in *New Heights Farm*. *New Heights Farm* states that the standard for waivers of sovereign immunity "must be expressed, clear and unequivocal". 119 F.4ᵗʰ 455 at 463. In support of its dismissal, the court in cites to *United States v. Sherwood*, 312 U.S. 584, 586 (1941), *United States v. Testan*, 424 U.S. 392, 399 (1976), and R*eed v. Reno,* 146 F.3d 392, 398 (6th Cir. 1998). *Sherwood* involved a judgement creditor who sued the United States under the Tucker Act to recover to recover damages from the United States for breach of its contract with the judgment debtor for the construction of a post office building. *Id.* at 585. *Testan* involved two trial attorneys employed in the Office of Counsel, Defense Personnel Support

Center, Defense Supply Agency, in Philadelphia, who sued to be reclassified at a higher GS level grade in the Court of Claims under the Tucker Act. 424 U.S. at 393-394. *Reed* involved two persons who sued the Bureau of Prisons for age discrimination and veteran preference. 146 F.3d at 394.

None of these cases cited above involved a government corporation and, as stated above, the Supreme Court has set different standards regarding the waiver of sovereign immunity when a government corporation is involved. Therefore, the correct standard for waivers of sovereign immunity for government corporations as enunciated by the Supreme Court is that waivers should be read with "hospitable scope," liberally construed and no limitations implied unless certain standards have been met, and the court must also presume the liability of the agency is the same as any other business. *Keifer*, 306 U.S. at 391; *Burr*, 309 U.S. at 245; *Meyer,* 510 U.S. at 481. As stated more fully above, under the standards enunciated by the Supreme Court, the waiver of sovereign immunity contained in § 1507(c)(3) must be liberally construed to provide a full waiver of sovereign immunity in this case.

Plaintiff respectfully asks this Court to deny FCIC's motion to dismiss.

Dated: May 20, 2026                                  Respectfully submitted,

                                                     /s/ Kimberley Arrigo
Kimberley Arrigo (DC Bar Number 983330)
Arrigo Risk Consulting PLLC
3813 Bayview Dr.
Chesapeake Beach, MD 20732
703-298-6245
*Counsel for Plaintiff Altman Insurance Group, Inc.*